IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK L. HENNESSY | : | |
| | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. _____ |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | |
| ALLSTATE PROPERTY AND CASUALTY | : | |
| INSURANCE COMPANY, ALLSTATE FIRE AND | : | |
| CASUALTY INSURANCE COMPANY, | : | |
| KEVIN BROADHEAD, PAUL FRAVER, | : | |
| JOHN RUSSELL, and HENRY R. RICCI, III | : | |
| | : | |
| Defendants | : | |
| | : | |
| | : | |

## **NOTICE OF REMOVAL**

TO:   THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

      Defendant Allstate Fire and Casualty Insurance Company ("Allstate Fire and

Casualty") seeks removal of this civil action pursuant to 28 U.S.C. § 1441, et seq. from the Court

of Common Pleas, Philadelphia County, Pennsylvania to the United States District Court for the

Eastern District of Pennsylvania. In support of this Notice of Removal, Allstate Fire and

Casualty states as follows:

      1.    On October 14, 2013, Plaintiff Patrick L. Hennessy filed a Complaint in

the Court of Common Pleas, Philadelphia County, Pennsylvania captioned Patrick L. Hennessy

v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire

and Casualty Insurance Company, Kevin Broadhead, Paul Fraver, John Russell, and Henry R.

Ricci, III, October Term 2013, No. 001095. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon Defendants in that action are attached hereto as Exhibit "A".

      2.      Plaintiff served a copy of the Complaint on Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, and Allstate Property and Casualty Insurance Company (collectively the "Allstate Entities") on October 18, 2013.

      3.      Plaintiff served copies of the Complaint on Kevin Broadhead and Paul Fraver on October 25, 2013.

      4.      Plaintiff served a copy of the Complaint on John Russell on October 28, 2013.

      5.      Plaintiff has not yet served a copy of the Complaint on Henry Ricci, III. Mr. Ricci has received a copy of the Complaint from undersigned counsel.

      6.      This Notice of Removal is being filed within thirty (30) days after receipt of the Complaint as required by 28 U.S.C. § 1446(b).

      7.      All Defendants consent to the filing of this Notice of Removal as required by 28 U.S.C. § 1446(b).

      8.      The Complaint arises from two automobile accidents that occurred on July 26, 2009:

      a.      The first accident occurred when a vehicle driven by Ryan Caruso collided with a vehicle driven by Bruce Reikow. Plaintiff was a passenger in Mr. Caruso's vehicle. See Compl. ¶ 23. Mr. Caruso was an insured under his parents' Allstate Fire and Casualty policy (the "Policy").[1] Id. at ¶ 31; see also Policy (Compl., Exh. B).

---

[1] Allstate Insurance Company and Allstate Property and Casualty Company are separate Allstate entities that have no relevance to Plaintiff's claims. Accordingly, Defendants will file a motion to dismiss these entities.

b. The second accident followed shortly thereafter. Plaintiff was struck by another vehicle – driven by Shawn Robertson, Jr. – while trying to move Mr. Caruso's vehicle to the side of the road. Id. at ¶¶ 24-26. Mr. Robertson was uninsured.

c. Plaintiff sued Mr. Caruso for injuries he allegedly suffered as a result of the accidents and demanded the $250,000 bodily injury limits of the Policy (the "Underlying Action"). Id. at ¶¶ 56-57.

d. Because Allstate reasonably believed that Plaintiff's injuries were caused by the second accident or some other event, it properly questioned whether the Policy provided coverage for the alleged injuries.

e. Prior to trial in the Underlying Action, however, Allstate offered the full $250,000 policy limits to settle Plaintiff's claim against its insured, Mr. Caruso. Id. at ¶¶ 70-71.

f. Plaintiff rejected Allstate's settlement offer, and the case proceeded to trial.

g. The jury in the Underlying Action awarded Plaintiff $19,145,904.17, with liability apportioned 45% to Mr. Caruso and 55% to Mr. Robertson. Id. at ¶ 83.

h. Following trial, Mr. Caruso purportedly assigned his rights against Allstate to Plaintiff. Id. at ¶ 90.

### There is Diversity Between the Proper Parties

9. The crux of this lawsuit is that Allstate did not properly handle Plaintiff's claim for benefits under Mr. Caruso's insurance policy in the Underlying Action. Plaintiff has asserted against the Allstate Entities the following claims: (1) breach of contract (Count I); (2) bad faith pursuant to 42 Pa. C.S.A. § 8371 (Count II); (3) violations of Pennsylvania's Unfair

Trade Practices and Consumer Protection Law (Counts III and IV); and negligence (Counts IX and X).

10.     According to the Complaint, Plaintiff is an individual residing within the Commonwealth of Pennsylvania and, upon information and belief, is a citizen of the Commonwealth of Pennsylvania (Compl. at ¶ 1), and, upon information and belief, is not a citizen of Illinois.

11.     The Allstate Entities are incorporated under the laws of the State of Illinois, with their principal places of business in the State of Illinois and are citizens of the State of Illinois. See Compl. at ¶¶ 3-5.

12.     The amount in controversy is in excess of $75,000.  Based on allegations in the Complaint, Plaintiff seeks to recover more than $20 million in compensatory damages (i.e., the jury verdict plus interest), plus punitive damages, attorneys' fees, etc.

13.     Thus, the United States District Court for the Eastern District of Pennsylvania has original diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332, and this action may be removed pursuant to 28 U.S.C. § 1441 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the proper parties to this action are citizens of different states.

14.     Plaintiff, though, has tried to evade this Court's jurisdiction by fraudulently joining individual defendants who are citizens of Pennsylvania in an effort to defeat diversity of citizenship.  Plaintiff has named as Defendants three Allstate adjusters who, in their capacity of employment, were involved in handling Ryan Caruso's claim to be defended and indemnified in the Underlying Action: Kevin Broadhead, Paul Fraver, and John Russell

(collectively, the "Adjusters"). Plaintiff also has named Henry R. Ricci, III, an agent who sells Allstate insurance products (the "Agent").

15. There is no reasonable basis in fact or colorable grounds under Pennsylvania law to support any claims by Plaintiff against the Adjusters or the Agent; they have been sued solely in an effort to defeat diversity jurisdiction. This Court should therefore disregard the citizenship of the Adjusters and the Agent for purposes of determining diversity of citizenship. See Selvaggi v. Prudential Prop. & Cas. Ins. Co., 871 F. Supp. 815, 818 (E.D. Pa. 1995).[2]

## The Adjusters Were Fraudulently Joined

16. In Counts V-VII, Plaintiff alleges that the Adjusters violated the UTPCPL. In Counts XI-XIII, Plaintiff asserts a claim of negligence against each Adjuster.

17. Plaintiff's negligence claims fail for at least two reasons:

a. First, negligence claims, which are unliquidated tort claims, are not assignable. See Sensenig v. Pennsylvania R. Co., 78 A. 91 (Pa. 1910) ("A right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment."); Tugboat Indian Co. v. A/S Ivarans Rederi, 5 A.2d 153, 155 (Pa. 1939) ("unliquidated damages in tort cannot be assigned"); Ostroy v. Perry, 44 Pa. D. & C.2d 176, 179 (Pa. C.P. 1967) ("The law of Pennsylvania and of most other jurisdictions has refused to recognize the assignment of unliquidated tort actions."); see also Feingold v. Liberty Mut. Group, 847 F. Supp. 2d 772 (E.D. Pa. 2012) (Feingold I) (analyzing Pennsylvania law and determining that statutory bad faith claims are unliquidated tort claims and thus not assignable); Feingold v. State Farm Mut. Auto Ins. Co., No.11-6309, 2012

---

[2] Further support for Defendants' claim that the Adjusters and the Agent were fraudulently joined will be included in a forthcoming motion to dismiss.

U.S. Dist. LEXIS 46696 (E.D. Pa. Apr. 3, 2012) (same), aff'd, No. 12-2664, 2013 U.S. App. LEXIS 8200, at *3 (3d Cir. Apr. 23, 2013) (Feingold II); Feingold v. Tesone, 2012 U.S. Dist. LEXIS 128233 (E.D. Pa. Sept. 5, 2012) (Feingold III) (holding that emotional distress, fraud, negligent misrepresentation, abuse of process, and civil conspiracy claims are all unliquidated tort claims that cannot be assigned).

        b.      Second, Plaintiffs have failed to identify a legally cognizable duty owed and breached by the Adjusters – essential elements of a negligence claim. See Grossman v. Barke, 868 A.2d 561, 566 (Pa. Super. Ct. 2005) (setting forth the elements of negligence, including duty and breach); see also Sutor v. Fed. Emergency Mgmt. Agency, 2009 U.S. Dist. LEXIS 59152, at *22-23 (E.D. Pa. July 9, 2009) ("traditional insurance law principles require that claims arising out of the handling of insurance claims are properly brought against the insurer").

        18.      Plaintiff's UTPCPL claims against the Adjusters also fail as a matter of law:

        a.      As noted above, unliquidated tort claims are not assignable. See ¶ 17(a), supra. The Feingold I and Feingold II decisions are particularly instructive with respect to Plaintiff's UTPCPL claims. In Feingold I and Feingold II, this Court held that statutory bad faith claims are unassignable because they are unliquidated tort claims. Because the UTPCPL is a fraud prevention statute, claims brought under that statute are similarly unliquidated tort claims. See Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa. 2001); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). Thus, under the reasoning of the Feingold decisions and the cases cited therein, Plaintiff's UTPCPL claims are unassignable and must be dismissed.

b.     Second, Plaintiff's UTPCPL claims are barred by the economic

loss and/or gist of the action doctrines. See Werwinski v. Ford Motor Credit Co., 286 F.3d 661

(3d Cir. 2002).

c.     Third, the UTPCPL claims fail to allege facts sufficient to support

liability under the statute.

### The Agent Was Fraudulently Joined

19.     Plaintiff alleges that the Agent violated the UTPCPL in Count VIII. In

Count XIV, Plaintiff asserts a claim of negligence against the Agent.

20.     Plaintiff's claims against the Agent fail for all of the reasons that the

claims against the Adjusters fail.

21.     In addition, Plaintiff's claims against the Agent fail because:

a.     Plaintiff's claims center around Allstate's handling of the

Underlying Action and the jury award in that case, which exceeded the limits of the Policy.

There are no allegations made against the Agent that are connected to the purported injury – i.e.,

the excess verdict. Instead, Plaintiffs have alleged that the Agent acted improperly *when he sold*

the insurance policy to the Carusos. See Compl. at ¶¶ 34, 94. These allegations have no

relevance to this action and are included only to defeat federal jurisdiction. Accordingly,

Plaintiff cannot sustain his claim against the Agent. See Selvaggi, 871 F. Supp. at 819 (finding

fraudulent joinder where UTPCPL claim against the agent was not connected to the alleged

harm).

b.     Plaintiff alleges that the Agent acted improperly when he sold the

Carusos Allstate insurance by assuring them that they would be in "good hands." See Compl. at

¶ 34. Sales puffery – including Allstate's "Good Hands" slogan – is not actionable. See

Sicherman v. Nationwide Life Ins. Co., 2012 U.S. Dist. LEXIS 47630, at *11 (E.D. Pa. Apr. 4, 2012) (insurance advertising slogan is mere puffery and not actionable under the UTPCPL).

        c.      The Carusos' Policy had a policy period of June 15, 2009 – December 15, 2009. See Policy at p. 3 (attached to Compl., Exh. B). Thus, the Carusos purchased their insurance well over 4 years before Plaintiff filed this litigation. Accordingly, Plaintiff's negligence claim against the Agent is time barred. See 42 Pa.C.S. § 5524(7) (statute of limitations for negligence is 2 years).

        22.      Plaintiff has failed to state any cause of action against the non-diverse Defendants, which was well-known to Plaintiff, or by the exercise of reasonable diligence should have been well-known to Plaintiff, at the time of the institution of this action.

        23.      Once the Adjusters and the Agent are dismissed from this case, as they should be, all the requirements for removal will be met because there will be complete diversity between Plaintiff and the Allstate Entities.

        24.      True and correct copies of this Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Philadelphia County and served upon Plaintiff's counsel of record.

        WHEREFORE, the United States District Court of the Eastern District of Pennsylvania has jurisdiction pursuant to 28 U.S.C. § 1332(a) based on the diversity of citizenship of Plaintiff and the Allstate Entities, and removal pursuant to 28 U.S.C. § 1441 is appropriate.

Dated: November 13, 2013

Respectfully submitted,

Marshall Walthew
Attorney I.D. No. 55329
Kristin H. Jones
Attorney I.D. No. 85725
Sara B. Richman
Attorney I.D. No. 200729
John L. Schweder, II,
Attorney I.D. No. 208595
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I, Marshall Walthew, hereby certify that on November 13, 2013, a true and correct copy of the foregoing Notice of Removal was served via hand delivery upon the following:

> Matthew Casey, Esquire
> Iddo Harel, Esquire
> Ross Feller Casey LLP
> One Liberty Place
> 1650 Market Street, Suite 3450
> Philadelphia, PA  19103
> *Attorneys for Plaintiff*

Marshall Walthew

# EXHIBIT A

**ROSS FELLER CASEY, LLP**
By: Matthew A. Casey, Esquire
    Iddo Harel, Esquire
Attorney ID Nos.: 84443/209830
One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215) 574-2000

Filed and Attested by
PROTHONOTARY
14 OCT 2013 04:02 pm
D. MURPHY
Attorneys for Plaintiff

| | |
|---|---|
| **PATRICK L. HENNESSY** | COURT OF COMMON PLEAS |
| 1403-3rd Street | *PHILADELPHIA COUNTY* |
| Feasterville, PA 19053 | |
|              *Plaintiff* | |
|     vs. | |
| **ALLSTATE INSURANCE COMPANY** | |
| 2775 Sanders Road | TERM, 2013 |
| Northbrook, IL 60062 | |
|     and | |
| **ALLSTATE PROPERTY AND CASUALTY** | |
| **INSURANCE COMPANY** | |
| 2775 Sanders Road | |
| Northbrook, IL 60062 | NO. |
|     and | |
| **ALLSTATE FIRE AND CASUALTY** | |
| **INSURANCE COMPANY** | |
| 3075 Sanders Road H1a | |
| Northbrook, IL 60062 | |
|     and | |
| **KEVIN BROADHEAD** | |
| 145 N. Main Street | **JURY TRIAL DEMANDED** |
| Mount Wolf, PA 17347 | |
|     and | |
| **PAUL FRAVER** | |
| 122 W. Granada Ave. | |
| Hershey, PA 17033 | |
|     and | |
| **JOHN RUSSELL** | |
| 19 Foxwood Blvd. | |
| Mechanicsburg, PA 17050 | |
|     and | |
| **HENRY R. RICCI, III** | |
| 937 New Rodgers Rd | |
| Levittown, PA 19056 | |
|              *Defendants* | |

# NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

# CIVIL ACTION COMPLAINT

Plaintiff Patrick Hennessy, by and through his undersigned counsel, brings this civil action against Defendants Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company, and Allstate employees and agents Kevin Broadhead, Paul Fraver, John Russell and Henry Ricci, III (collectively "Allstate"), and demands statutory, compensatory and punitive damages and other relief in a sum in excess of the local arbitration limits, exclusive of attorneys fees, pre-judgment interest, post-judgment interest and costs.

Case ID: 131001095

## INTRODUCTION

At approximately 2:00 a.m. on July 26, 2009, after leaving a bar, Allstate insured Ryan Caruso rear-ended a vehicle stopped at a red light – due to Mr. Caruso's own admitted negligence. Mr. Hennessy was a passenger in Mr. Caruso's car, and was hit by another vehicle while pushing Mr. Caruso's car out of the road. Mr. Hennessy suffered horrible injuries, resulting in an above-knee amputation of his right leg.

Rather than tender the policy coverage of $250,000 – for the crippling and disfiguring injuries suffered by this 24 year-old young man – Allstate instead chose to embark upon a prolonged and reckless effort to dodge its legal obligations to its insureds. Mr. Caruso did not deny his own negligence, and even Allstate could not deny the catastrophic injuries suffered because of that negligence. Nor could Allstate deny the black-letter legal principle – well known to any first year law student – that Mr. Caruso was responsible for all of the injuries to Mr. Hennessy flowing from the initial act of admitted negligence. Nonetheless, with the overwhelming risk of an excess verdict looming overhead, Allstate recklessly and selfishly refused to comply with its unquestionable legal obligations to its insureds.

On May 23, 2013, a jury rendered a verdict for $19,145,904.17. Molding the verdict for delay damages, the total judgment is $20,193,914.91 – over 80 times the $250,000 that Allstate had refused to pay to settle the case. Post-judgment interest also continues to accrue, at a rate of 6.25%. Mr. Caruso remains legally obligated to pay the entire amount.

And just as Allstate had all along schemed to protect its own financial interests at the expense of its insured, so now after the verdict Allstate still refuses to take responsibility.

On the contrary: Allstate made its own bed – but wants its insured to sleep in it. The law of this Commonwealth, however, allows no such injustice.

3

## PARTIES AND JURISDICTIONAL FACTS

1.     Patrick Hennessy brings this action as plaintiff in his own right, and is an adult individual residing at 1403-3rd Street, Feasterville, PA, 19053.

2.     Plaintiff Patrick Hennessy brings this action as assignee based on a written assignment from Frank D. Caruso, Rosetta Caruso, and Ryan Caruso, a copy of which is attached as **Exhibit A**.

3.     Defendant Allstate Insurance Company is a corporation that is licensed to sell automobile insurance in Pennsylvania, with and/or through places of business located throughout the Commonwealth of Pennsylvania, including Philadelphia County, with its Corporate Headquarters at 2775 Sanders Road, Northbrook, IL 60062, and with a Registered Office Address recorded with the Pennsylvania Department of State as c/o CT Corporation, Philadelphia, PA.

4.     Defendant Allstate Property and Casualty Insurance Company is a corporation that is licensed to sell automobile insurance in Pennsylvania, with and/or through places of business located throughout the Commonwealth of Pennsylvania, including Philadelphia County, with its Corporate Headquarters at 2775 Sanders Road, Northbrook, IL 60062.

5.     Defendant Allstate Fire and Casualty Insurance Company is a corporation that is licensed to sell automobile insurance in Pennsylvania, with and/or through places of business located throughout the Commonwealth of Pennsylvania, including Philadelphia County, and with its Corporate Headquarters at 3075 Sanders Road H1a, Northbrook IL 60062.

6.     Defendants Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company, and their agents and employees, may be referred to collectively as "Allstate."

4

7. Each of the Allstate defendants regularly conducts business in Philadelphia County.

8. Allstate is an "insurer" for purposes of 42 Pa.C.S.A. § 8371.

9. At all relevant times, the Allstate defendant entities engaged as their actual, apparent and/or ostensible agents, servants and/or employees various adjusters and other staff involved in any way in the handling, adjusting, investigation, management, decision-making and other aspects with respect to the claim by Hennessy who at all times were acting within the course and scope of their agency and/or employment.

10. Allstate entity defendants are liable for the negligent and/or reckless acts or omissions of their actual, apparent and/or ostensible agents, servants and/or employees under theories of respondeat superior, master-servant, agency, and right of control. The identities of these agents, servants and employees include each of the named individuals acting with or on behalf of Allstate in the complaint, and in particular the named individual defendants. Such agents also include those actual, apparent and/or ostensible agents, servants and/or employees various adjusters and other staff involved in any way in the handling, adjusting, investigation, management, decision-making and other aspects with respect to the claim by Hennessy, whose identities are not known to plaintiff after reasonable investigation, and will require additional discovery from defendants.

11. The Allstate entity defendants are vicariously liable for the negligent and reckless acts and omissions of these individuals under theories of respondeat superior, master-servant, agency, and right of control.

12. Defendant Kevin Broadhead is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 145 N. Main Street, Mount Wolf, PA 17347, and was at all relevant times a claims adjuster for Allstate.

5

13.     Defendant Paul Fraver is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 122 W. Granada Ave., Hershey, PA 17033, and was at all relevant times a claims adjuster for Allstate.

14.     Defendant John Russell is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 19 Foxwood Blvd., Mechanicsburg, PA 17050, and was at all relevant times a claims adjuster for Allstate.

15.     Defendant Henry R. Ricci, III is an adult individual and resident of the Commonwealth of Pennsylvania, properly subject to service at 937 New Rodgers Road, Levittown, PA 19056. At all relevant times, Mr. Ricci acted individually and through his actual and apparent agent, servant and/or representative, Henry Ricci, Jr. (collectively "Ricci"), with regard to the policy and conduct pleaded herein.

16.     At all times relevant hereto, Mr. Broadhead, Mr. Fraver, Mr. Russell and/or Ricci were agents, servants and/or employees of Allstate, acting within the scope of their status as agents, servants, and/or employees to further the business interests of Allstate. Allstate is vicariously liable for the acts and omissions of these persons under theories of respondeat superior, master-servant, agency, and right of control.

17.     The injuries described herein are a direct result of the acts and/or omissions of all defendants, jointly and severally, including their agents, servants, and/or employees.

18.     This Court has jurisdiction over this dispute pursuant to 42 Pa. C.S.A. § 931, and other statutory and constitutional bases.

19.     This Court has jurisdiction over defendants pursuant to their physical presence in this Commonwealth, the Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. § 5322, and other statutory and constitutional bases.

6

20. Venue in this action is properly laid in Philadelphia County. See Pa.R.C.P. 1006, 2179.

21. The amount in controversy exceeds the amount in controversy requiring submission to arbitration.

22. Plaintiff demands a jury trial on all factual and legal issues to the maximum extent available under the United States Constitution and the law of this Commonwealth.

<strong><u>OPERATIVE FACTS</u></strong>

23. On July 26, 2009, at approximately 2:00 a.m., plaintiff Patrick Hennessy was a passenger in Ryan Caruso's car when Ryan Caruso negligently rear-ended a car driven by Bruce Reikow that was stopped at a traffic light in the middle northbound lane of the inner Roosevelt Boulevard at Conwell Avenue in Philadelphia, Pennsylvania.

24. Following the collision, neither car was operable and both had to be removed from the lanes of traffic.

25. Patrick Hennessy and a passenger from the Reikow car began to push Ryan Caruso's car from the roadway, while Ryan Caruso steered the vehicle.

26. As the Caruso car was being pushed from the roadway, a third car, driven by Shawn Robertson, Jr., struck the Reikow vehicle and careened into Patrick Hennessy, who was pushing from the driver's side rear of the Caruso vehicle car, and the Caruso vehicle, crushing Patrick Hennessy between the vehicles.

27. Shawn Robertson, Jr., was uninsured.

28. As a result of the chain of events caused by Ryan Caruso's negligence, Patrick Hennessy suffered extensive injuries.

Case ID: 131001095

29. Patrick Hennessy was transported by ambulance to Aria Hospital. He had a right knee dislocation and a right comminuted mid tibial diaphyseal fracture and fibula head dislocation. He underwent intramedulary nailing of the right tibia and open reduction with internal fixation of the right proximal tibiofibular joint. He suffered a right ACL tear. He suffered soft tissue injuries and ruptured ligaments in the left leg.

30. Patrick Hennessy was transferred to the Hospital of the University of Pennsylvania on August 17, 2009, and, on August 24, underwent a right above knee amputation.

31. On July 26, 2009, Frank D. Caruso and Rosetta Caruso, husband and wife, had an automobile insurance policy, specifically Policy No. 9 28 415515 06/15, issued by Allstate Property and Casualty Insurance Company ("the Allstate Policy"), under which Ryan Caruso, their son, was an insured. A true and correct copy of the Allstate Policy is attached hereto as **Exhibit B**.

32. Ryan Caruso is an "insured" for purposes of 42 Pa.C.S.A. § 8371.

33. Prior to the Carusos' decision to purchase the subject policy, the Carusos were well familiar with and had viewed countless examples of Allstate's long-standing and world-famous "Good Hands" advertising.

34. Prior to the purchase of the subject policy, and for the purpose of inducing the same, Ricci unfairly, fraudulently and deceptively represented, manifested, advertised and/or warranted that Allstate had internal policies, practices, philosophies and/or mandates that were consistent with its "Good Hands" advertising campaign, and that Allstate would thus place the interests of the insured first (in contrast to exposing insureds for its own benefit). Such conduct, including by way of active concealment of the negative of such purported facts, further created a likelihood of confusion and misunderstanding.

8

35.    The Allstate Policy contractually provided for the indemnity of the insured, Ryan Caruso, against liability for damages incurred up to the monetary limit of $250,000.

36.    The Allstate Policy contractually provided for uninsured motorist insurance up to the monetary limit of $100,000.

37.    The Allstate Policy contractually provided that Allstate had a duty to defend Ryan Caruso in any lawsuit arising out of his use of his motor vehicle.

38.    Allstate, pursuant to the terms of the Allstate Policy, retained the sole right to handle any bodily injury claims made against Ryan Caruso arising out of the July 26, 2009, motor vehicle accident, including the right to make a binding settlement.

39.    By letter dated September 17, 2009, a true and correct copy of which is attached as **Exhibit C**, plaintiff Patrick Hennessy, through counsel, notified Ms. Cassandra Lowe of Allstate of counsel's representation of Mr. Hennessy and requested a copy of the declarations page of the Allstate Policy.

40.    By letter dated September 23, 2009, a true and correct copy of which is attached as **Exhibit D**, plaintiff Patrick Hennessy, through counsel, notified Mr. Terry Davis of Allstate of counsel's representation of Mr. Hennessy and again requested a copy of the declarations page of the Allstate Policy.

41.    Kevin Broadhead, an Allstate claims adjuster and employee, responded with a letter dated November 27, 2009, advising that Allstate's "medical and or wage investigation is continuing." The letter further advised that Allstate would continue to "update [counsel] on the status of the claim until it is resolved." The declarations page was not provided, and in fact was not provided at any time prior to the institution of suit by Mr. Hennessy in the underlying action. A true and correct copy of the letter is attached as **Exhibit E**.

9

42. By letter dated December 3, 2009, a true and correct copy of which is attached as **Exhibit F**, plaintiff Patrick Hennessy responded to a request of Allstate by providing extensive medical records, including the records of the hospitalizations at Aria Health - Torresdale and the Hospital of the University of Pennsylvania, as well as records of a subsequent hospitalization and physical therapy, which records demonstrated the severity of Mr. Hennessy's injuries, including his right above-knee amputation.

43. At all relevant times, Allstate knew or should have known that Patrick Hennessy had sustained severe injuries, including a right above knee amputation as a result of Ryan Caruso's admitted negligence and the chain of events put in motion by that negligence.

44. At all relevant times, Allstate knew or had reason to know that Patrick Hennessy's injuries exceeded the amount of Allstate's available insurance coverage, that Patrick Hennessy was entitled to receive the full $250,000 in liability coverage to settle his bodily injury claim, and that a failure to resolve Patrick Hennessy's claim would expose its insureds to an excess verdict.

45. Allstate made no offer to settle Mr. Hennessy's claims and, instead, took the unreasonable position, through its claims adjusters and otherwise, that the investigation of the incident was continuing.

46. Allstate, through Kevin Broadhead, sent another letter dated January 11, 2010, again advising that its "medical and or wage investigation" was continuing. No offer of settlement was made despite Ryan Caruso's liability for Mr. Hennessy's injuries and verification of Mr. Hennessy's damages in excess of the available insurance coverage. No request for additional information nor explanation of the need for additional investigation was provided. A true and correct copy of the letter is attached as **Exhibit G**.

47. Allstate, through Kevin Broadhead, sent another letter dated February 24, 2010, again advising that its "medical and or wage" investigation was continuing. Again no offer of settlement was made despite Ryan Caruso's liability for Mr. Hennessy's injuries and verification of Mr. Hennessy's damages in excess of the available insurance coverage. No request for additional information nor explanation of the need for additional investigation was provided. A true and correct copy of the letter is attached as **Exhibit H**.

48. On March 2, 2010, plaintiff made a written demand for the full tender of the Allstate Policy within thirty (30) days of the date of the letter in resolution of the claim and delivered that demand to Mr. Broadhead. A true and correct copy of the letter is attached as **Exhibit I**.

49. By that letter, plaintiff advised that, should Allstate fail to act in good faith by tendering the policy, plaintiff would institute suit, obtain an excess judgment, and execute on the insureds' personal assets.

50. Kevin Broadhead responded to the demand letter by letter of March 11, 2010, stating "The medical documentation that you have previously supplied, notes that your client was uninjured in the rear end collision between Mr. Caruso's vehicle and Bruce Reikow's vehicle." The letter continued, "If you have additional documentation in support of your client's claim that you would like me to review, please forward it to me at your earliest convenience." The letter provided no further substance concerning Allstate's position regarding the claim. A true and correct copy of the letter is attached as **Exhibit J**.

51. On April 12, 2010, Mr. Broadhead sent another letter, a true and correct copy of which is attached as **Exhibit K**, advising that Allstate's "medical and or wage investigation" was continuing. This letter, like the prior letters, provided no information as to what was being investigated and contained no request for additional information.

11

52.     On May 5, 2010, Patrick Hennessy, through counsel, further responded to Mr. Broadhead's March 11, 2010, letter. Counsel advised Allstate that failure to tender the policy limits to settle Mr. Hennessy's bodily injury claims was in breach of Allstate's good faith obligations, given that liability was reasonably clear and Mr. Hennessy's injuries were well in excess of the policy limits. Counsel demanded tender of the policy limits within ten days. A true and correct copy of this letter is attached as **Exhibit L**.

53.     Mr. Broadhead responded by letter dated May 10, 2010, a true and correct copy of which is attached as **Exhibit M**. Mr. Broadhead stated, "As I indicated in my March 11, 2010 correspondence, the medical records supplied by your office, appear to indicate that Mr. Hennessy was uninjured when the Reikow vehicle was rear ended by the Allstate insured." He continued, "At this time, I am not in a position to extend a settlement offer, based upon the information you have provided. If you have additional documentation that you would like for me to consider, please forward it to me."

54.     Upon information and belief, at all relevant times, Allstate never advised the Carusos that Patrick Hennessy was willing to settle his claim for the available insurance coverage of $250,000 and release the Carusos from any and all claims arising out of the July 26, 2009, accident, thereby ensuring that the Carusos would not be exposed to an excess verdict.

55.     Upon information and belief, at all relevant times, Allstate dismissed and failed to take action in connection with communications from the Carusos.

56.     On February 2, 2011, Patrick Hennessy instituted suit in the Philadelphia Court of Common Pleas against Ryan Caruso, his parents Frank and Rosetta Caruso, Bruce Reikow, Shawn Robertson, Jr., and his father Shawn Robertson seeking compensatory damages for his personal injuries.

12

57.     In the lawsuit, Patrick Hennessy sought recovery of damages against the Carusos well in excess of the available bodily injury policy limit of $250,000.

58.     Upon information and belief, the insureds told their attorneys that they wanted the case settled and asked Allstate to tender the policy so that they would be protected from personal liability.

59.     Under the terms of the Allstate Policy, Rosalyn Mattingly, Esquire, of the Law Offices of Tawanda Turner-Hawkins was assigned by Allstate to represent the Carusos.

60.     On February 17, 2011, Allstate adjuster John Russell, sent a letter to Patrick Hennessy's undersigned counsel. The letter's stated purpose was to "update you on the status of the claim." The documented current status was, "We are waiting for the completion of the court action." The letter further provided, "We will continue to update you on the status of the claim until it is resolved." A true and correct copy of the February 17, 2011, letter is attached as **Exhibit N**.

61.     On August 19, 2011 (**Exhibit O**), December 26, 2011 (**Exhibit P**), and July 20, 2012 (**Exhibit Q**), Allstate, through its claim representatives John Russell and Paul Fraver sent additional status update letters containing the same content as the February 17, 2011, letter – that Allstate was awaiting completion of the litigation and would continue to provide updates on the status of the claim until it is resolved. True and correct copies of these letters are attached hereto.

62.     On September 7, 2012 (**Exhibit R**), September 11, 2012 (**Exhibit S**), October 1, 2012 (**Exhibit T**), October 19, 2012 (**Exhibit U**), November 12, 2012 (**Exhibit V**), December 5, 2012 (**Exhibit W**), February 5, 2013 (**Exhibit X**), March 1, 2013 (**Exhibit Y**), and March 21, 2013 (**Exhibit Z**), Allstate, through its claims representatives Paul Fraver and Kevin Broadhead sent additional status update letters, copies of certain of which are attached hereto.

Case ID: 131001095

63.     Through such letters, or some of them, Allstate alternatively and irreconcilably provided either the status update that Allstate was awaiting completion of the litigation or that the "medical and or wage investigation is continuing."

64.     Certain of the letters also falsely and misleadingly misrepresented Mr. Broadhead's involvement with regard to the matter.

65.     At no time did Allstate make a settlement offer, nor did it request additional documentation or information concerning the bodily injury claim.

66.     At all relevant times Allstate and its attorneys actively concealed from the Carusos that it was not indeed investigating the claim, and rather – in the context of repeated communications with the Carusos, like in its communications with Mr. Hennessy – falsely represented that it was indeed conducting an investigation.

67.     On information and belief, in or around March or April 2013, Allstate replaced attorney Mattingly and instead assigned Daniel J. Divis, Esquire, of the law firm of Gerolamo, McNulty, Divis & Lewbart to defend the Carusos in the litigation.

68.     At all relevant times, Allstate communicated with and directed attorneys Mattingly and Divis in their handling of the underlying action.

69.     On information and belief, neither Allstate, attorney Mattingly, nor attorney Divis advised the Carusos that attorneys Mattingly and Divis were representing both Allstate's interests and the Carusos' interests while defending the underlying action.

70.     The auto negligence case was scheduled to proceed in Philadelphia County for jury selection on May 17, 2013.

71.     On or about May 14, 2013, Allstate, through attorney Divis, offered $250,000 in full settlement of Mr. Hennessy's claims against the Carusos.  A true and correct copy of the May 14, 2013, letter is attached hereto as **Exhibit AA.**

14

72.     By letter dated May 14, 2013, Patrick Hennessy, through counsel, rejected the Allstate offer.  As stated in the May 14, 2013, letter, a copy of which is attached as **Exhibit BB,** Allstate had frivolously and unreasonably placed its interests ahead of its insureds and forced the case through litigation while knowing the catastrophic damages involved and the clear liability of its insureds.  Allstate had refused, despite requests, to make any offer of settlement.

73.     On or about May 16, 2013, Patrick Hennessy, through counsel, offered to accept $5,000,000 from Allstate in settlement of Mr. Hennessy's claims.  That offer was to remain open until close of jury selection on May 17, 2013.  Counsel further advised that, if plaintiff settled a related and consolidated medical malpractice case that was to be tried with the automobile negligence case, then the offer of settlement would rise to $10,000,000.  Plaintiff's offer was confirmed by email, a true and correct copy of which is attached as **Exhibit CC.**

74.     Allstate did not respond to this offer.

75.     On information and belief, despite knowing that the Carusos would be exposed to an excess verdict, and notwithstanding plaintiff's request to be contacted by the Carusos' personal counsel, Allstate failed at any time prior to May 14, 2013 to advise the Carusos to retain personal counsel.

76.     Allstate knew or should have known well before the case proceeded to trial that Ryan Caruso had already acknowledged, including at his deposition, that he negligently caused the vehicles to become inoperable in the roadway, and that he would admit his negligence at trial.

77.     Following selection of the jury but before commencement of trial, the related medical negligence case was settled.

78. Trial against Ryan Caruso, Bruce Reikow, and Shawn Robertson, Jr., against whom a default judgment had previously been obtained, commenced on May 20, 2013, before the Honorable John Milton Younge in the Court of Common Pleas in Philadelphia County.

79. One or more than one Allstate representative were present for the duration of the trial in Philadelphia.

80. On information and belief, the Carusos retained personal counsel just prior to the commencement of or during the trial.

81. During trial, Ryan Caruso admitted his negligence in striking the Reilow vehicle, causing the Reikow and Caruso vehicles to be stuck in the roadway.

82. Mr. Hennessy's claims against Bruce Reikow were dismissed on a motion for directed verdict at the close of plaintiff's evidence.

83. On May 23, 2013, the jury returned a verdict in favor of Patrick Hennessy in the gross amount of $19,145,904.17, with liability apportioned 45% to Ryan Caruso and 55% to Shawn Robertson, Jr., as joint tortfeasors.

84. Molding the verdict for delay damages, the total judgment is $20,193,914.91, with interest continuing to accrue at a rate of 6.25%.

85. Allstate acted unreasonably in failing to timely and unconditionally tender the $250,000 bodily injury limit for its own economic gain and interests, and furthermore thus permitted the value of the claim to continued to build over time. The unreasonable, negligent, reckless and unlawful conduct of Allstate and the other defendants in this respect and others set forth in this complaint – and the course of conduct relevant thereto – is evidenced in part by the materials attached hereto, and further by other evidence and testimony to be revealed in discovery.

Case ID: 131001095

86. Allstate was wrongfully acting on its own behalf and in furtherance of its own interests, to the detriment of its insureds, the Carusos.

87. As a result of Allstate's conduct, Ryan Caruso is and remains legally obligated for at least $20,193,914.91, with interest continuing to accrue at a rate of 6.25%.

88. To date, this verdict remains unsatisfied and continues to accrue post-judgment interest.

89. Ryan Caruso is presently unable to pay the judgment of at least $20,193,914.91, plus continuing interest, and has sustained economic hardship, including jeopardy to his credit. Ryan Caruso will continue to suffer these damages until the judgment is paid in full.

90. In the setting of his exposure to the judgment, and/or the specter of bankruptcy and/or the risk of having his credit destroyed by the outstanding judgment, and/or other damage, including employment consequences, Ryan Caruso, along with Frank and Rosetta Caruso, agreed to assign all claims they may have against Allstate to Patrick Hennessy.

91. Prior to the subject verdict, defendants were aware of the grave risk of harm to the insureds as a result of the claims by Mr. Hennessy and the admitted negligence of Ryan Caruso.

92. Defendants had actual knowledge of the very substantial risk of an excess judgment, both under the facts and law of the case and further due to prior verdicts in analogous situations.

93. Despite their knowledge and awareness of the grave and catastrophic risks to their insureds, defendants improperly and recklessly performed and neglected their legal obligations to their insureds, as detailed herein – all in furtherance of Allstate's own financial self-interest.

17

94.     In willful, wanton and callous disregard for the interests of their insureds, their legal obligations, the plain facts and law of the case, and their lack of any reasonable basis for their own position and conduct, defendants failed to act to protect their insured, as detailed herein. As also detailed herein, Ricci acted in willful, wanton, callous and reckless disregard for the interests of the Carusos – and his own actual knowledge of contrary facts, including the prior experiences of insureds to whom they had sold Allstate policies – in misleading and inducing the Carusos to enter into the subject policy.

95.     The defendants acted with the goal and motive of monetary gain.

96.     The reckless, willful, wanton and callous conduct of the defendants proximately caused all of the injuries and damages pleaded herein, with regard to each claim and act set forth herein.

## COUNT I
**Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company
(Breach of Contract/Good Faith and Fair Dealing)**

97.     The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

98.     A contract of insurance existed between Allstate and the Carusos, the Allstate Policy No. 9 28 415515 06/15.

99.     Ryan Caruso was an insured under the Allstate Policy and was entitled to receive the benefits of the contract of insurance, including liability coverage for the claims made against him arising from the July 26, 2009 motor vehicle accident.

100.    At all times relevant hereto, the Carusos cooperated with Allstate in the handling of Patrick Hennessy's claims.

101.    The contract imposed certain contractual and other duties on Allstate, including the duties to defend and indemnify the insureds.

18

102. The contract included within it a covenant of good faith and fair dealing.

103. Allstate owed the Carusos, including Ryan Caruso, a duty to reasonably evaluate the claim of Patrick Hennessy in a timely manner.

104. Allstate owed the Carusos, including Ryan Caruso, a duty to timely settle any claims arising out of the motor vehicle accident within the applicable policy limits and to protect the personal assets of the insureds from an excess verdict.

105. Allstate owed the Carusos, including Ryan Caruso, a duty to provide legal representation that would look out for and protect the insureds' best interests.

106. Allstate owed the Carusos, including Ryan Caruso, a duty to advise them of all settlement offers.

107. Allstate owed the Carusos, including Ryan Caruso, a duty to advise them to seek the assistance of independent counsel.

108. Allstate owed the Carusos, including Ryan Caruso, a duty to advise them that settlement offers would be withdrawn if not timely accepted.

109. The Carusos, including Ryan Caruso, relied upon and reasonably believed that Allstate would fulfill its contractual obligations and duties.

110. The Carusos, including Ryan Caruso, reasonably believed that Allstate would protect their interests pursuant to the obligations contained in the Allstate Policy and would not place its interests ahead of its insureds.

111. Given the circumstances of the collision and nature of Patrick Hennessy's injuries and claims, Allstate knew or reasonably should have known that the value of Mr. Hennessy's claims was well in excess of the applicable $250,000 bodily injury policy limit.

Case ID: 131001095

112.	Based upon the facts pleaded above, immediately below, and in the other counts
set forth in this complaint, Allstate breached its contractual obligations under the Allstate Policy
with the Carusos by:

a.	Failing to properly protect Ryan Caruso from personal liability by refusing to settle the claim for the policy limits within a reasonable period of time;

b.	Failing to properly and timely settle the claim for the policy limits when Ryan Caruso's liability was clear and the amount of damages clearly and substantially exceeded the policy limits;

c.	Failing to properly protect its insureds' interests by promptly and properly investigating, evaluating, and handling the claim;

d.	Failing to properly, promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

e.	Failing to properly and adequately advise the Carusos, including Ryan Caruso, of their potential exposure to an excess verdict;

f.	Failing to properly and timely inform the Carusos that a settlement demand had been made for an amount within the policy limit;

g.	Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

h.	Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

i.	Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

j.	Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

k.	Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

l.	Failing to properly give the same faithful consideration to the Carusos' interests that it gave to its own interests;

m.	Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

n.	Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

o.	Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

p.	Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

q.	Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

r.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

s.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

t.  Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

u.  Failure to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

v.  Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

w.  Failing to properly and adequately communicate with the Carusos;

x.  Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

y.  Breaching known legal duties to the Carusos out of financial self-interest;

z.  Making redundant, unnecessary and pretextual requests for documents and other materials.

113.  As a direct and proximate result of Allstate's breach of its contractual duties and legal obligations of good faith, Ryan Caruso became personally liable for a verdict in excess of his available insurance coverage, post-judgment interest, which continues to accrue, attorneys' fees and costs incurred in retaining personal counsel.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

Case ID: 131001095

## COUNT II
### Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company
### (Bad Faith Pursuant to 42 Pa. C.S.A. § 8371)

114. The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

115. Section 8371 imposes a duty on Allstate and its agents to act in good faith toward its insureds in the handling of an action arising under their policy of insurance.

116. Allstate had a duty to consider the good faith interests of its insured as a factor in coming to the decision as to whether to settle Patrick Hennessy's claims.

117. Allstate owed the Carusos, including Ryan Caruso, a duty to give their interests the same faithful consideration that it gave its own interests.

118. Allstate owed a legal duty to properly defend its insureds against suits arising under the policy and related to the negligent operation by Ryan Caruso of a motor vehicle, including the duty to timely investigate, negotiate, and settle claims.

119. Allstate owed a duty to its insureds to properly investigate and timely settle Patrick Hennessy's claims.

120. Allstate breached these duties.

121. Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Allstate lacked a reasonable basis for the following actions and omissions in violation of 42 Pa.C.S.A. §8371, and acted recklessly and in conscious disregard of the facts, law and obligations at issue, including:

    a. Refusing to tender its $250,000 policy limit within a reasonable time when it knew or should have known that evidence in the underlying claim presented significant exposure to the Carusos well in excess of the policy;

    b. Refusing to timely tender the $250,000 policy limit within a reasonable time when it knew or should have known that its insured, Ryan Caruso, admitted negligence;

22

c.      Refusing without proper foundation to timely tender the policy limit, based on the evidence and exposure, when it knew that the failure to tender unnecessarily exposed the Carusos to the risk of an excess verdict;

d.      Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

e.      Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

f.      Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

g.      Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

h.      Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

i.      Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

j.      Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

k.      Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

l.      Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

m.     Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

n.      Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

o.      Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

p.      Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

q.      Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

r.      Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

s.      Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

t.      Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

u.      Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

Case ID: 131001095

| | v. | Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling; |

v.    Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

w.    Failure to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

x.    Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

y.    Failing to properly and adequately communicate with the Carusos;

z.    Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

aa.    Breaching known legal duties to the Carusos out of financial self-interest;

bb.    Making redundant, unnecessary and pretextual requests for documents and other materials;

cc.    Failing to properly defend the Carusos by:

     i.    failing to inform the Carusos of the conflict of interest between them and Allstate;

     ii.    failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

dd.    Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:

     i.    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

     ii.    compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer settlement and by offering less than the amount due and ultimately recovered;

     iii.    failing to promptly settle claims, where liability had become reasonably clear;

     iv.    failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

122.    By not properly investigating the case and then by failing to negotiate a timely settlement in good faith with Patrick Hennessy, Allstate acted in bad faith and breached its duty to defend, investigate, negotiate, and settle the claim.

123.    Allstate knew or recklessly disregarded its lack of a reasonable basis for committing these bad faith acts.

24

124. As a direct and proximate result of Allstate's violation of 42 Pa.C.S.A. §8371, Ryan Caruso became personally liable for the excess judgment in the amount of at least $20,193,914.91, with interest continuing to accrue at a rate of 6.25%, as well as, inter alia, the costs incurred in retaining personal counsel.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

### COUNT III
**Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company**
**(Unfair Trade Practices)**

125. The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

126. Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Allstate violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing the following unfair, fraudulent and deceptive acts of misfeasance in connection with their obligations to their insureds:

      a.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

      b.    Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

      c.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

25

d.     Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to statements by insurance sales personnel at the time of the purchase of the policy, with the purpose and effect of inducing purchase of the Allstate policy, to the effect that Allstate had internal policies, practices, philosophies and mandates consistent with its "Good Hands" advertising campaign, with respect to placing the interests of the insured first, *i.e.*, not exposing insureds to risks for the benefit of Allstate;

e.     Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

f.     Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

g.     Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

h.     Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

i.     Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

j.     Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

k.     Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

l.     Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

m.     Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

n.     Evaluating the amount and probability of damages and exposure under an irrationally restrictive standard as a pretext and contrary to Allstate's own investigation and claims-handling policies and procedures;

o.     Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

p.     Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

q.     Breaching known legal duties to the Carusos out of financial self-interest;

r.     Making redundant, unnecessary and pretextual requests for documents and other materials.

127.     Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

Case ID: 131001095

128. The Carusos, believing and trusting that their insurance company would act in their best interests, cooperated with Allstate and justifiably relied on Allstate to properly evaluate and handle the Patrick Hennessy claims, which Allstate failed to do.

129. The Carusos, including Ryan Caruso, suffered significant damages and harm as a result of their justifiable reliance on Allstate.

130. As a direct and proximate result of Allstate's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

### COUNT IV
**Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company**
**(Unfair Trade Practices)**

131. The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

132. Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, defendants through their agents, employees, servants and/or representatives violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing through such persons, all acting in the course and scope of their employment for the benefit and within the control of the subject defendants, the

27

following unfair, fraudulent and deceptive acts of misfeasance in connection with their

obligations to their insureds:

a. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

b. Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

c. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

d. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to statements by insurance sales personnel at the time of the purchase of the policy, with the purpose and effect of inducing purchase of the Allstate policy, to the effect that Allstate had internal policies, practices, philosophies and mandates consistent with its "Good Hands" advertising campaign, with respect to placing the interests of the insured first, *i.e.*, not exposing insureds to risks for the benefit of Allstate;

e. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

f. Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

g. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

h. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

i. Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

j. Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

k. Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

l. Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

m. Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

n. Evaluating the amount and probability of damages and exposure under an irrationally restrictive standard as a pretext and contrary to Allstate's own investigation and claims-handling policies and procedures;

28

o.   Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

p.   Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

q.   Breaching known legal duties to the Carusos out of financial self-interest;

r.   Making redundant, unnecessary and pretextual requests for documents and other materials.

133.   Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

134.   Defendants are vicariously liable for the conduct of such agents, employees, servants and/or representatives, including both the individual defendants named in the complaint, as well as such other individuals as described above.

135.   The Carusos, believing and trusting that their insurance company would act in their best interests, cooperated with Allstate and justifiably relied on Allstate to properly evaluate and handle the Patrick Hennessy claims, which Allstate failed to do.

136.   The Carusos, including Ryan Caruso, suffered significant damages and harm as a result of their justifiable reliance on Allstate.

137.   As a direct and proximate result of Allstate's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

Case ID: 131001095

## COUNT V
### Plaintiff Patrick Hennessy v. Kevin Broadhead
### (Unfair Trade Practices)

138.    The other paragraphs of the complaint are incorporated herein by reference as

though set forth in full.

139.    Based upon the facts pleaded above, immediately below, and in the other counts

set forth in this complaint, Defendant Broadhead violated Pennsylvania's Unfair Trade Practices

and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing the following

unfair, fraudulent and deceptive acts of misfeasance in connection with the obligations to the

insureds:

   a.    Affirmatively misrepresenting and/or actively concealing material facts
         from their insured, including with regard to the "ongoing" status of their
         purported investigation and the necessity of further investigation;
         Conducting an inadequate and non-objective evaluation of Patrick
         Hennessy's claim against the insureds, the Carusos;

   b.    Affirmatively misrepresenting and/or actively concealing material facts
         from their insured, including that an offer to settle within the policy limits
         had been made;

   c.    Affirmatively misrepresenting and/or actively concealing material facts
         from their insured, including with regard to their potential exposure to an
         excess verdict;

   d.    Conducting an investigation, evaluation and assessment with the purpose
         and effect of protecting and serving Allstate's own interests, rather than
         providing proper and faithful consideration to the Carusos' interests;

   e.    Affirmatively misrepresenting and/or actively concealing material facts
         from their insured, including with regard to the conflict of interest between
         them and Allstate;

   f.    Affirmatively misrepresenting and/or actively concealing material facts
         from their insured, including with regard to the fact that attorneys
         Mattingly and Divis were also acting on behalf of Allstate's interests;

   g.    Conducting an improper, self-serving, inadequate and untimely valuation
         of the potential damages and exposure;

   h.    Conducting an improper, self-serving, inadequate and untimely
         assessment of the probability of a verdict, including in particular an excess
         verdict;

   i.    Conducting and relying upon an improper, self-serving, inadequate and
         untimely legal analysis that baselessly ignored and/or knowingly
         misapplied well-settled principles of law;

Case ID: 131001095

j.  Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

k.  Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

l.  Evaluating the amount and probability of damages and exposure under an irrationally restrictive standard as a pretext and contrary to Allstate's own investigation and claims-handling policies and procedures;

m.  Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

n.  Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

o.  Breaching known legal duties to the Carusos out of financial self-interest;

p.  Making redundant, unnecessary and pretextual requests for documents and other materials.

140.  Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

141.  The Carusos, believing and trusting that their insurance company adjuster would act in their best interests, cooperated and justifiably relied on Mr. Broadhead to properly evaluate and handle the Patrick Hennessy claims, which he failed to do.

142.  The Carusos, including Ryan Caruso, suffered significant damages and harm as a result of their justifiable reliance on Mr. Broadhead.

143.  As a direct and proximate result of Mr. Broadhead's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to

42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

**COUNT VI**
**Plaintiff Patrick Hennessy v. Paul Fraver**
**(Unfair Trade Practices)**

144.    The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

145.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Defendant Fraver violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing the following unfair, fraudulent and deceptive acts of misfeasance in connection with the obligations to the insureds:

    a.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation; Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

    b.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

    c.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

    d.    Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

    e.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

    f.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

    g.    Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

    h.    Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

32

i. Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

j. Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

k. Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

l. Evaluating the amount and probability of damages and exposure under an irrationally restrictive standard as a pretext and contrary to Allstate's own investigation and claims-handling policies and procedures;

m. Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

n. Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

o. Breaching known legal duties to the Carusos out of financial self-interest;

p. Making redundant, unnecessary and pretextual requests for documents and other materials.

146.    Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

147.    The Carusos, believing and trusting that their insurance company adjuster would act in their best interests, cooperated and justifiably relied on Mr. Fraver to properly evaluate and handle the Patrick Hennessy claims, which he failed to do.

148.    The Carusos, including Ryan Caruso, suffered significant damages and harm as a result of their justifiable reliance on Mr. Fraver.

149.    As a direct and proximate result of Mr. Fraver's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs

33

including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

### COUNT VII
### Plaintiff Patrick Hennessy v. John Russell
### (Unfair Trade Practices)

150.	The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

151.	Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Defendant Russell violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing the following unfair, fraudulent and deceptive acts of misfeasance in connection with the obligations to the insureds:

    a.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation; Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

    b.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

    c.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

    d.    Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

    e.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

    f.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

    g.    Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

    h.    Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

    i.    Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

j.  Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

k.  Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

l.  Evaluating the amount and probability of damages and exposure under an irrationally restrictive standard as a pretext and contrary to Allstate's own investigation and claims-handling policies and procedures;

m.  Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

n.  Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

o.  Breaching known legal duties to the Carusos out of financial self-interest;

p.  Making redundant, unnecessary and pretextual requests for documents and other materials.

152.  Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

153.  The Carusos, believing and trusting that their insurance company adjuster would act in their best interests, cooperated and justifiably relied on Mr. Russell to properly evaluate and handle the Patrick Hennessy claims, which he failed to do.

154.  The Carusos, including Ryan Caruso, suffered significant damages and harm as a result of their justifiable reliance on Mr. Russell.

155.  As a direct and proximate result of Mr. Russell's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to

Case ID: 131001095

42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT VIII
### Plaintiff Patrick Hennessy v. Henry Ricci, III
### (Unfair Trade Practices)

156.    The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

157.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Ricci violated Pennsylvania's Unfair Trade Practices and Consumer law, 73 Pa.C.S.A. §201-1 *et seq.*, by affirmatively committing the unfair, fraudulent and deceptive acts of misfeasance pleaded above and below.

158.    Prior to the Carusos' decision to purchase the subject policy, the Carusos were well familiar with and had viewed countless examples of Allstate's long-standing and world-famous "Good Hands" advertising.

159.    Prior to the purchase of the subject policy, and for the purpose of inducing the same, Ricci unfairly, fraudulently and deceptively represented, manifested, advertised and/or warranted that Allstate had internal policies, practices, philosophies and/or mandates that were consistent with its "Good Hands" advertising campaign, and that Allstate would thus place the interests of the insured first (in contrast to exposing insureds for its own benefit).  Such conduct, including by way of active concealment of the negative of such purported facts, further created a likelihood of confusion and misunderstanding.

160.    Upon information and belief, Ricci had actual knowledge and information that this was not the case.

36

161. Ricci thus furthermore actively concealed this knowledge and information from the Carusos.

162. The purported information and facts at issue were material, and induced justifiable reliance, proximately resulting in significant damages and harm.

163. Such conduct violated statutory sections 201-2(4)(v), (vii), (ix), (xiv) and/or (xxi).

164. As a direct and proximate result of Ricci's unfair, fraudulent or deceptive conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

### COUNT IX
**Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company**
**(Negligence)**

165. The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

166. The Allstate entity defendants owed a duty to the Carusos to investigate and handle Patrick Hennessy's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

37

167. Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, the Allstate entity defendants' negligence and/or recklessness in breach of that duty consisted of some or all of the following:

a. Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

b. Refusing to tender its $250,000 policy limit within a reasonable time when it knew or should have known that evidence in the underlying claim presented significant exposure to the Carusos well in excess of the policy;

c. Refusing to timely tender the $250,000 policy limit within a reasonable time when it knew or should have known that its insured, Ryan Caruso, admitted negligence;

d. Refusing without proper foundation to timely tender the policy limit, based on the evidence and exposure, when it knew that the failure to tender unnecessarily exposed the Carusos to the risk of an excess verdict;

e. Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

f. Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

g. Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

h. Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

i. Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

j. Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

k. Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

l. Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

m. Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

n. Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

o. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

p. Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

38

q. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to statements by insurance sales personnel at the time of the purchase of the policy, with the purpose and effect of inducing purchase of the Allstate policy, to the effect that Allstate had internal policies, practices, philosophies and mandates consistent with its "Good Hands" advertising campaign, with respect to placing the interests of the insured first, *i.e.*, not exposing insureds to risks for the benefit of Allstate;

r. Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

s. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

t. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

u. Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

v. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

w. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

x. Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

y. Failure to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

z. Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

aa. Failing to properly and adequately communicate with the Carusos;

bb. Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

cc. Breaching known legal duties to the Carusos out of financial self-interest;

dd. Making redundant, unnecessary and pretextual requests for documents and other materials;

ee. Failing to properly defend the Carusos by:
    i. failing to inform the Carusos of the conflict of interest between them and Allstate;
    ii. failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

ff. Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:

39

    i.  not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

    ii.  compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer settlement and by offering less than the amount due and ultimately recovered;

    iii.  failing to promptly settle claims, where liability had become reasonably clear;

  gg. failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

  168. As a direct and proximate result of such defendants' conduct, the Carusos, including Ryan Caruso, have suffered substantial damages.

  169. In addition to the costs to the Carusos to obtain personal counsel, Ryan Caruso has become personally liable for the excess verdict that he is unable to pay, with attendant damage to his credit and in his professional life.

  WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT X
**Plaintiff Patrick Hennessy v. Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company**
**(Negligence)**

  170. The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

40

Case ID: 131001095

171. The Allstate entity defendants' agents, employees, servants and representatives owed a duty to the Carusos to investigate and handle Patrick Hennessy's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

172. Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, the Allstate entity defendants' agents, employees, servants and/or representatives committed negligence and/or recklessness in breach of such duty, including:

a. Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

b. Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

c. Refusing to tender its $250,000 policy limit within a reasonable time when it knew or should have known that evidence in the underlying claim presented significant exposure to the Carusos well in excess of the policy;

d. Refusing to timely tender the $250,000 policy limit within a reasonable time when it knew or should have known that its insured, Ryan Caruso, admitted negligence;

e. Refusing without proper foundation to timely tender the policy limit, based on the evidence and exposure, when it knew that the failure to tender unnecessarily exposed the Carusos to the risk of an excess verdict;

f. Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

g. Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

h. Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

i. Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

j. Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

k. Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

l. Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

m. Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

n. Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

41

o. Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

p. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

q. Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

r. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to statements by insurance sales personnel at the time of the purchase of the policy, with the purpose and effect of inducing purchase of the Allstate policy, to the effect that Allstate had internal policies, practices, philosophies and mandates consistent with its "Good Hands" advertising campaign, with respect to placing the interests of the insured first, *i.e.*, not exposing insureds to risks for the benefit of Allstate;

s. Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

t. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

u. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

v. Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

w. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

x. Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

y. Creating and implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

z. Failure to create and implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

aa. Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

bb. Failing to properly and adequately communicate with the Carusos;

cc. Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

dd. Breaching known legal duties to the Carusos out of financial self-interest;

ee. Making redundant, unnecessary and pretextual requests for documents and other materials;

Case ID: 131001095

ff.   Failing to properly defend the Carusos by:
- i.   failing to inform the Carusos of the conflict of interest between them and Allstate;
- ii.   failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

gg.   Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:
- i.   not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;
- ii.   compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer settlement and by offering less than the amount due and ultimately recovered;
- iii.   failing to promptly settle claims, where liability had become reasonably clear;

hh.   failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

173.   The Allstate entity defendants are vicariously liable for the conduct of such agents, employees, servants and/or representatives, including both the individual defendants named in the complaint, as well as such other individuals as described above.

174.   As a direct and proximate result of such conduct, the Carusos, including Ryan Caruso, have suffered substantial damages.

175.   In addition to the costs to the Carusos to obtain personal counsel, Ryan Caruso has become personally liable for the excess verdict that he is unable to pay, with attendant damage to his credit and in his professional life.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to

Case ID: 131001095

42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

## COUNT XI
**Plaintiff Patrick Hennessy v. Kevin Broadhead**
**(Negligence)**

176.    The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

177.    Kevin Broadhead owed a duty to the Carusos to investigate and handle Patrick Hennessy's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

178.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Kevin Broadhead's negligence and/or recklessness, in breach of that duty consisted of some or all of the following:

      a.      Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

      b.      Compelling suit to be instituted to recover amounts due under an insurance policy by failing to timely offer a settlement;

      c.      Failing to promptly settle claims, where liability had become reasonably clear;

      d.      Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

      e.      Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

      f.      Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

      g.      Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

      h.      Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

      i.      Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

      j.      Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

      k.      Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

44

l.  Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

m.  Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

n.  Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

o.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

p.  Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

q.  Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

r.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

s.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

t.  Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

u.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

v.  Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

w.  Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

x.  Failure to implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

y.  Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

z.  Failing to properly and adequately communicate with the Carusos;

aa.  Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

bb.  Breaching known legal duties to the Carusos out of financial self-interest;

cc.  Making redundant, unnecessary and pretextual requests for documents and other materials;

dd.  Failing to promptly settle claims, where liability had become reasonably clear;

45

ee. Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

ff. Failing to properly defend the Carusos by:

    i. failing to inform the Carusos of the conflict of interest between them and Allstate;

    ii. failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

gg. Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:

    i. not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

    ii. compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer settlement and by offering less than the amount due and ultimately recovered;

    iii. failing to promptly settle claims, where liability had become reasonably clear;

    iv. failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

179. As a direct and proximate result of Kevin Broadhead's claims handling, the Carusos, including Ryan Caruso, have suffered substantial damages.

180. In addition to the costs to the Carusos to obtain personal counsel, Ryan Caruso has become personally liable for the excess verdict that he is unable to pay, with attendant damage to his credit and in his professional life.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

Case ID: 131001095

# COUNT XII
## Plaintiff Patrick Hennessy v. Paul Fraver
### (Negligence)

181.    The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

182.    Paul Fraver owed a duty to the Carusos to investigate and handle Patrick Hennessy's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

183.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Paul Fraver's negligence and/or recklessness, in breach of that duty consisted of some or all of the following:

a.    Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

b.    Compelling suit to be instituted to recover amounts due under an insurance policy by failing to timely offer a settlement;

c.    Failing to promptly settle claims, where liability had become reasonably clear;

d.    Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

e.    Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

f.    Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

g.    Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

h.    Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

i.    Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

j.    Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

k.    Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

l.    Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

m.    Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

47

n.   Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

o.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

p.   Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

q.   Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

r.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

s.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

t.   Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

u.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

v.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

w.   Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

x.   Failure to implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

y.   Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

z.   Failing to properly and adequately communicate with the Carusos;

aa.   Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

bb.   Breaching known legal duties to the Carusos out of financial self-interest;

cc.   Making redundant, unnecessary and pretextual requests for documents and other materials;

dd.   Failing to promptly settle claims, where liability had become reasonably clear;

ee.   Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

ff.   Failing to properly defend the Carusos by:

    i.   failing to inform the Carusos of the conflict of interest between them and Allstate;

    ii.   failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

48

gg. Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:

    i.     not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

    ii.     compelling suit to be instituted to recover amounts due under an insurance policy by failing to offer settlement and by offering less than the amount due and ultimately recovered;

    iii.     failing to promptly settle claims, where liability had become reasonably clear;

    iv.     failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement.

184.     As a direct and proximate result of Paul Fraver's claims handling, the Carusos, including Ryan Caruso, have suffered substantial damages.

185.     In addition to the costs to the Carusos to obtain personal counsel, Ryan Caruso has become personally liable for the excess verdict that he is unable to pay, with attendant damage to his credit and in his professional life.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to 42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

### COUNT XIII
### Plaintiff Patrick Hennessy v. John Russell
### (Negligence)

186.     The other paragraphs of the complaint are incorporated herein by reference as though set forth in full.

187.    Russell owed a duty to the Carusos to investigate and handle Patrick Hennessy's claim promptly and properly, and otherwise comply with the common law duty of reasonable care applicable to all persons under the circumstances.

188.    Based upon the facts pleaded above, immediately below, and in the other counts set forth in this complaint, Russell's negligence and/or recklessness, in breach of that duty consisted of some or all of the following:

a.    Failing to effectuate prompt, fair and equitable settlement of Patrick Hennessy's claims;

b.    Compelling suit to be instituted to recover amounts due under an insurance policy by failing to timely offer a settlement;

c.    Failing to promptly settle claims, where liability had become reasonably clear;

d.    Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

e.    Failing to promptly and objectively investigate and evaluate the claim made against the Carusos;

f.    Failing to promptly and objectively investigate and evaluate the Carusos' exposure to an excess verdict;

g.    Failing to properly and adequately advise the Carusos of their potential exposure to an excess verdict;

h.    Failing to timely inform the Carusos that a settlement demand had been made for the policy limit;

i.    Failing to give the same faithful consideration to the Carusos' interests that it gave to its own interests;

j.    Failing to properly, objectively and timely conduct a valuation of the potential damages and exposure;

k.    Conducting an improper, self-serving, inadequate and untimely valuation of the potential damages and exposure;

l.    Conducting an improper, self-serving, inadequate and untimely assessment of the probability of a verdict, including in particular an excess verdict;

m.    Conducting and relying upon an improper, self-serving, inadequate and untimely legal analysis that baselessly ignored and/or knowingly misapplied well-settled principles of law;

n.    Reaching and relying upon improper, self-serving and inadequate assumptions regarding the amount and probability of damages and exposure;

o.    Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the "ongoing" status of their purported investigation and the necessity of further investigation;

50

p.   Improperly and pretextually requesting additional evidence regarding the claim as a means to improperly evade the proper and timely performance of its legal obligations in connection with the investigation;

q.   Conducting an inadequate and non-objective evaluation of Patrick Hennessy's claim against the insureds, the Carusos;

r.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including that an offer to settle within the policy limits had been made;

s.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to their potential exposure to an excess verdict;

t.   Conducting an investigation, evaluation and assessment with the purpose and effect of protecting and serving Allstate's own interests, rather than providing proper and faithful consideration to the Carusos' interests;

u.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the conflict of interest between them and Allstate;

v.   Affirmatively misrepresenting and/or actively concealing material facts from their insured, including with regard to the fact that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

w.   Implementing unlawful and inadequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

x.   Failure to implement lawful and adequate policies, guides, procedures and practices with regard to claims investigations and claims handling;

y.   Failure to adhere to Allstate policies, guides, procedures and practices with regard to claims investigations and claims handling;

z.   Failing to properly and adequately communicate with the Carusos;

aa.   Implementing and pursuing a claims handling/litigation policy and strategy with the design and purpose of deterring claims rather than protecting the interests of insureds;

bb.   Breaching known legal duties to the Carusos out of financial self-interest;

cc.   Making redundant, unnecessary and pretextual requests for documents and other materials;

dd.   Failing to promptly settle claims, where liability had become reasonably clear;

ee.   Failing to promptly provide a reasonable explanation of the basis under the insurance policy, in relation to the facts or applicable law, for the failure to timely offer a compromise settlement;

ff.   Failing to properly defend the Carusos by:
    i.   failing to inform the Carusos of the conflict of interest between them and Allstate;
    ii.   failing to inform the Carusos that attorneys Mattingly and Divis were also acting on behalf of Allstate's interests;

gg.   Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Allstate to the detriment and expense of the Carusos by:
    i.   not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy is clear;

51

ii.   compelling suit to be instituted to recover amounts due
      under an insurance policy by failing to offer settlement and
      by offering less than the amount due and ultimately
      recovered;

iii.  failing to promptly settle claims, where liability had
      become reasonably clear;

iv.   failing to promptly provide a reasonable explanation of the
      basis under the insurance policy, in relation to the facts or
      applicable law, for the failure to timely offer a compromise
      settlement.

189.   As a direct and proximate result of Russell's claims handling, the Carusos,
including Ryan Caruso, have suffered substantial damages.

190.   In addition to the costs to the Carusos to obtain personal counsel, Ryan Caruso
has become personally liable for the excess verdict that he is unable to pay, with attendant
damage to his credit and in his professional life.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess
of the arbitration limits for all properly available damages under each and any of the claims set
forth herein, including without limitation, as authorized under the law governing each claim,
compensatory, consequential and other damages, as well as the damages provided for pursuant to
42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs
including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as
the Court may direct.

### COUNT XIV
### Plaintiff Patrick Hennessy v. Henry Ricci, III
### (Negligence)

191.   The other paragraphs of the complaint are incorporated herein by reference as
though set forth in full.

192.   Based upon the facts pleaded above, immediately below, and in the other counts
set forth in this complaint, Ricci negligently, recklessly and/or knowingly committed the conduct
set forth above and below.

52

193. Prior to the Carusos' decision to purchase the subject policy, the Carusos were well familiar with and had viewed countless examples of Allstate's long-standing and world-famous "Good Hands" advertising.

194. Prior to the purchase of the subject policy, and for the purpose of inducing the same, Ricci negligently, recklessly and/or knowingly represented, manifested, advertised and/or warranted that Allstate had internal policies, practices, philosophies and/or mandates that were consistent with its "Good Hands" advertising campaign, and that Allstate would thus place the interests of the insured first (in contrast to exposing insureds for its own benefit). Such conduct, including by way of active concealment of the negative of such purported facts, further created a likelihood of confusion and misunderstanding.

195. Upon information and belief, Ricci knew or should have known that this was not the case.

196. Ricci thus furthermore actively concealed this knowledge and information from the Carusos.

197. The purported information and facts at issue were material, and induced justifiable reliance, proximately resulting in significant damages and harm.

198. As a direct and proximate result of Ricci's conduct, Ryan Caruso has become personally liable for the excess verdict in the underlying litigation and has suffered harm arising from the effects of that verdict and obligation.

WHEREFORE, plaintiff Patrick L. Hennessy demands judgment in an amount in excess of the arbitration limits for all properly available damages under each and any of the claims set forth herein, including without limitation, as authorized under the law governing each claim, compensatory, consequential and other damages, as well as the damages provided for pursuant to

53

42 Pa.C.S.A. §8371 and the common law, including without limitation punitive damages, costs including attorney's fees, prejudgment interest, post-judgment interest, and such further relief as the Court may direct.

ROSS FELLER CASEY, LLP

By:     /s/ Matthew A. Casey
        MATTHEW A. CASEY, ESQUIRE
        IDDO HAREL, ESQUIRE
        *Attorneys for Plaintiff*

Dated: *October 14, 2013*

Case ID: 131001095

## VERIFICATION

Iddo Harel, Esquire hereby verifies that the within Civil Action Complaint is based upon his investigation, knowledge, information and belief. The Plaintiff is presently outside of the jurisdiction of the court and his verifications cannot be obtained prior to the filing of this pleading, but will be substituted within the time permitted by the rules. This verification is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

*/s/ Iddo Harel*
IDDO HAREL, ESQUIRE

*Dated:* *October 14, 2013*

Case ID: 131001095



Filed and Attested by
PROTHONOTARY
14 NOV 2013 04:07 pm
MURPHY

# *Exhibit A*

## ASSIGNMENT AGREEMENT

WHEREAS a verdict in the amount of $19,145,904.17 was rendered against Ryan Caruso on May 23, 2013, with delay damages and interest at the rate of 6% per annum until such time as the verdict is fully satisfied, in favor of Patrick Hennessy ("Plaintiff/Assignee" or "Assignee");

WHEREAS the insurance carriers and related parties set forth herein (the "Allstate Parties") have improperly and unlawfully failed to properly cause coverage, insurance and/or indemnification to be provided under the insurance policy(ies) applicable to Frank D. Caruso, Rosetta L. Caruso, and Ryan Caruso (collectively "Assignors") with regard to the underlying action by Patrick Hennessy and the resultant verdict, and have otherwise failed to properly perform their obligations and responsibilities to Assignors;

WHEREAS the purpose of this agreement is to enable Plaintiff/Assignee to pursue and vindicate all of the Assignors' claims and remedies against the Allstate Parties, and to seek to collect the full and complete amount of the verdict, delay damages, interest, and other amounts from the Allstate Parties;

WHEREAS despite the fact that Ryan Caruso remains legally obligated with regard to the verdict, delay damages and interest, Plaintiff/Assignee has agreed (as detailed below) to fully, completely and irrevocably indemnify and hold harmless the Assignors with regard to any and all claims of any kind by the Allstate Parties;

**NOW THEREFORE**, in consideration of the foregoing, the mutual agreements set forth in this Agreement, and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1.   For and in consideration of Plaintiff's covenants to indemnify Assignors (as set forth herein) and to forebear from immediate collection, enforcement, garnishment and/or execution proceedings against Ryan Caruso ("Defendant"), as a consequence of the $19,145,904.17 verdict rendered against Ryan Caruso on May 23, 2013, with delay damages and interest at the rate of 6% per annum until such time as the verdict is fully satisfied, and for other good and valuable consideration, the adequacy of which is hereby acknowledged, the Assignors on behalf of ourselves, our heirs, successors and assigns, hereby absolutely and unconditionally sell, grant, transfer, assign and set over to Plaintiff/Assignee, his, heirs, successors and assigns, any and all rights, interest, claims, causes of action and/or potential causes of action of any nature whatsoever, in law or in equity, including any and all contractual and extra-contractual claims, actions for common law and statutory bad faith under 42 Pa. C.S.A. §8371, actions for declaratory judgment, breach of fiduciary duty, breach of duty of good faith and fair dealing, punitive damages, Unfair Trade Practices and Consumer Protection Law, negligence, breach of contract, fraud, misrepresentation, omission, legal malpractice and any other claims or causes of action of any nature whatsoever, in law or in equity, which Defendant/Assignors have and/or may have against Allstate Insurance Company, Allstate Fire and

Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and their parent company(ies), affiliates, subsidiaries, insurers, and/or attorneys, and/or any other insurer or entity that may provide coverage to, or be required to indemnify Assignors and/or the heirs, representatives, executors, administrators, attorneys, successors and assigns of the foregoing, arising out of or related to: the above-referenced verdict as a result of the July 26, 2009, accident; Assignors' insurance policy with any of the foregoing entities as a result of the July 26, 2009, accident; the insurer/attorney duties in connection with the claims at issue in the legal action brought by Plaintiffs against Defendants in the Court of Common Pleas of Philadelphia County, January Term, 2011, at Docket No. 2454; and/or the handling of the defense and/or refusal to properly settle and/or indemnify Assignors with respect to all or part of the verdict rendered in the above-captioned matter, which resulted in the creation of liability on the part of Assignors with regard to the aforesaid verdict of $19,145,904.17 (plus interest and delay damages).

2.     Assignors shall fully cooperate in any action brought by Plaintiffs/Assignees pursuant to this Assignment, including that Defendant/Assignors will use their best efforts to provide documents, information and truthful testimony pertinent to the action.

3.     Assignor Ryan Caruso remains legally obligated to Plaintiffs/Assignees in and for the verdict, interest and delay damages. However, Plaintiff/Assignee agrees to defend, indemnify, save and hold the Carusos harmless from any and all claims against the Carusos by the Allstate Parties

arising out of the rights, claims and causes of action assigned herein, including but not limited to any and all damages, losses, liabilities and claims including attorneys' fees and costs arising out of or in any manner related to any action taken by Hennessy against Allstate.

4. Assignors warrant that they have not assigned or transferred the rights, claims, and causes of action which are the subject to this Agreement to any other person or entity.

5. Assignors waive the attorney-client privilege with insurer defense counsel, Rosalyn Mattingly, Esquire, and the Law Firm of Tawanda Turner-Hawkins and Daniel Divis, Esquire, and the law firm of Gerolamo, McNulty, Divis & Lewbart. The attorney-client privilege is not waived as to any other counsel.

6. The law of the State of Pennsylvania governs the enforcement and interpretation of this Agreement, notwithstanding conflicts of law principles.

7. The Parties agree that, if necessary, they will execute such additional documents as may reasonably be required to effectuate the intent of this Agreement.

8. This Agreement may be signed in counterparts and by facsimile signature with a copy of the signed original provided to the Parties' respective counsel by mail.

9. The Parties acknowledge that they have read and understood this Agreement and that they have had their respective legal counsel review this Agreement.

Assignors and Assignee have executed this Assignment Agreement as of the date set forth below.

Dated: _9/18_ , 2013.

By: _[signature]_
On behalf of Defendant/Assignor
Ryan Caruso

By _[signature]_
On behalf of Assignor
Frank D. Caruso

By: _[signature]_
On behalf of Assignor
Rosetta L. Caruso

By: _[signature]_
On behalf of Assignee
Patrick L. Hennessy


Sworn and subscribed to
before me this _18th_ day
of _September_ , 20_13_.

_[signature]_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Toni Diane Tolliver, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 12, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES



Filed and Attested by
PROTHONOTARY
14 OCT 2013 04:07 pm
M. MURPHY

*Exhibit B*

Case ID: 131001095



**Allstate.**
You're in good hands.

CLAIM#    0144178159

To Whom It May Concern:

I, _Mary Perl_ , employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of _7/26/09_ . The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_Mary Perl_
Claim Support

State of Texas, County of Dallas

On this _17th_ day of _April_ 2013, before me personally

appeared _Mary Perl_ to me known to be the person who

executed the foregoing instrument and acknowledged that he/she executed the same

as a free act and deed.

_Jennifer Nicole Robert_
(Notary Public

JENNIFER NICOLE ROBERTS
Notary Public, State of Texas
My Commission Expires
June 20, 2016

Case ID: 131001095

# GUNTHER START PAGE

*FOR FINISHING EQUIPMENT JOB*
## PAFLA0

# AUTO DEC SET MAILING PACKAGE
## PENNSYLVANIA
## FLAT
## STD RUN
## April 16, 2013

*Insert Station 1:*    *None*
*Insert Station 2:*    *None*
*Mailing Envelope:*   *G3661*
*Operator Message:*  *None*

*Reprint TimeStamp   2013-04-16-12.22.44.31*



*S037PLA000130416001*

Case ID: 131001095

*Hank Ricci Jr*
*937 New Rodgers Rd*
*Levittown PA 19056*

**Your Quick Insurance Check**

✓ Verify the vehicles and drivers listed on the Policy Declarations and ID cards.

✓ Check the vehicle Identification number (VIN) listed on those documents; its accuracy could affect your premium.

✓ Now you can pay your premium even before your bill is issued - visit allstate.com or call 1-800-Allstate®.

Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

Solid insurance coverage is an essential building block of your financial security. That's why I'm delighted you've chosen Allstate to help protect you on the road.

**What's inside.**
Your new auto policy and Financial Responsibility Identification cards are enclosed in this mailing. Also inside are your Policy Declarations—which describes the coverage choices you've made and lists the discounts you're receiving—and other documents about your auto insurance. Your bill will be sent to you soon in a separate mailing.

**Your next steps.**
- Please take the time to carefully check your Policy Declarations to make sure you're comfortable with the choices you've made. Get in touch with me right away if there's anything you'd like to change.
- Keep an eye out for your bill. It will list any payment options available to you and other information. (If you're paying your premium using the Allstate Easy Pay Plan, you won't be sent a bill, but a statement detailing your withdrawal schedule for the policy period. And if you haven't already applied for this convenient payment method, you might want to give me a call to learn more about it.)
- Review the enclosed Financial Responsibility Identification cards for accuracy. The page with your cards attached provides more information—please read it thoroughly. These cards replace any temporary cards you may have received. New cards are sent with each policy renewal offer, which occurs every six months.
- Carefully read all of the enclosed materials, and store these documents with your other important papers.

*(over)*

AUTO *0101037090051107000393101* Information as of   June 11, 2000   00000028415515   010   027   PA



NA384

Case ID: 131001095

Service how and when you want it.

If you need assistance, please don't hesitate to call me. You can reach me at (215) 752-6100. You can also take advantage of many services online, such as making a payment or viewing policy information, by registering at the Allstate Customer Care Center on *allstate.com* . And for 24-hour-a-day, 7-day-a-week service and information, just call 1-800-ALLSTATE® (1-800-255-7828).

Insurance is not only protection for today, it's a cornerstone of your financial security. Thanks for choosing Allstate to help protect your assets.

Welcome.

Hank Ricci Jr
Your Allstate Agent

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

## Your Savings and Opportunities

| Your discount savings for this policy period is: | Your premium for this policy period is: |
|---|---|
| $1,655.74 | $3,411.19 |
| (For an itemized list of your discounts, refer to your Policy Declarations) | This amount reflects the discount savings shown on left. |

### Allstate Offers You Innovative Choices

We'd like to introduce you to Allstate® Your Choice Auto Insurance, a different kind of car insurance that can reward you like never before. Now, with a Gold or Platinum Protection package you can get a range of innovative features, including:

- An immediate $100 off your collision coverage deductible.
- A safe driving bonus of up to 5% which can be applied toward your next renewal premium.
- Enhanced accident forgiveness — your rates won't go up just because of an accident.
- If your new car gets totaled, Allstate can help replace it with a brand new car.

Your Choice Auto bundles together the kind of features you want most in car insurance. You simply choose the package that you like best. And you get these great features on top of what you already get from Allstate, such as quality coverage and 24/7 claim service. Consider whether one of the following optional Your Choice Auto packages is right for you:

Platinum Protection package

- Safe Driving Deductible Reward

- A Safe Driving Bonus

- Enhanced Accident Forgiveness for Multiple Accidents

Gold Protection package

- Safe Driving Deductible Reward

- Enhanced Accident Forgiveness (covers one accident every three years)

If you're looking to lower your premium, consider the Allstate Value Plan, our save money now plan. This option requires you to use the Allstate Easy Pay Plan, a convenient and time-saving service for automatically deducting your insurance payments from your checking or savings account. Also, any accidents occurring while the Allstate Value Plan is part of your policy will *not* be eligible for any accident waiver program, nor will any time spent in the Allstate Value Plan apply towards qualification for such a program.

New Car Expanded Protection coverage is available for an additional premium to customers who have added either our Gold Protection package or the Platinum Protection package to their policy. With this coverage, if your

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Insured new car is totaled, Allstate can help replace it with a brand new car. It's a good value if you want extra protection for your new car.

You can add a Your Choice Auto package to your policy right away. You don't need to wait for your current insurance to expire. Call your Allstate representative for a quote today!

## Discounts and Other Savings Opportunities

There are a variety of ways to save money on your Allstate auto insurance. Below are just a few of the discounts and savings options that may be available in your area. Please contact your Allstate representative for more information about these and other savings opportunities.

**Good Student Discount**
Did you know that if the young driver on your policy is an unmarried student under the age of 25 and meets certain academic criteria, you could be eligible to receive our Good Student Discount?

**Multiple Policy Discount**
Customers who currently insure their home, condo, mobile home or apartment through Allstate may be eligible for our Multiple Policy Discount.

**New Car Discount**
You may be able to add to the thrill of purchasing a brand new car by finding out if it qualifies for our New Car Discount.

**Accident Waiver Program**
For eligible long-term customers, there's an Accident Waiver Program that can help prevent the application of an accident surcharge due to an accident, and, in certain cases, enable you to keep your discounts too.

**Allstate Easy Pay Plan Discount**
You may also qualify for a premium discount by having your insurance payments automatically deducted from your bank account through the Allstate Easy Pay Plan. And you'll be able to select a convenient day of the month for your premium withdrawal — either a monthly installment payment or a single Pay in Full option. And you'll avoid the hassle of writing checks and worrying about payments getting lost in the mail. Just contact your Allstate representative, or go to the Customer Care Center at *allstate.com* to apply. If you're already enrolled in the Allstate Easy Pay Plan, the discount has been applied to your policy.

X71551

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

# Auto Policy Declarations

## Summary

**NAMEO INSURED(S)**
Frank O and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

**YOUR ALLSTATE AGENT IS**
Hank Ricci Jr
(215) 752-6100

937 New Rodgers Rd
Levittown PA 19056

**YOUR BILL**
will arrive in a separate
mailing if you haven't paid
your premium in full.

**POLICY NUMBER**
9 28 415515 06/15

**POLICY PERIOD**
June 15, 2009 to Dec. 15, 2009 at 12:01 a.m. standard time

**DRIVER(S) LISTED**
Frank          Rosetta
Ryan           Christopher
Matthew

**DRIVER(S) EXCLUDED**
None

| VEHICLES COVERED | VEHICLE ID NUMBER | LIENHOLDER |
|---|---|---|
| 1. 06 Honda Accord | 1HGCM66576A038742 | Sun Federal Credit Union |
| 2. 05 Honda Odyssey | 5FNRL38615B060516 | Fifth Third Bank (Retail) |
| 3. 05 Subaru Legacy | 4S3BL616456201412 | Sun Federal Credit Union |
| 4. 97 Honda Accord | 1HGCD5631VA112454 | None |

## Total Premium

| | |
|---|---|
| Premium for 06 Honda Accord | $904.38 |
| Premium for 05 Honda Odyssey | $1,004.28 |
| Premium for 05 Subaru Legacy | $924.10 |
| Premium for 97 Honda Accord | $578.43 |
| TOTAL | $3,411.19 |

✓  *Your total premium reflects a combined discount of $1,655.74*
✓  *Your total premium reflects a combined surcharge of $67.39*
*Your Policy Effective Date is June 15, 2009*

IN ACCORDANCE WITH SECTION 1725 OF THE MOTOR VEHICLE FINANCIAL RESPONSIBILITY LAW, THIS IS TO INFORM YOU THAT COLLISION DAMAGE TO
A RENTAL VEHICLE WILL BE COVERED IF: 1) THE RENTAL VEHICLE IS A FOUR WHEEL PRIVATE PASSENGER AUTOMOBILE OR A UTILITY AUTOMOBILE, AND
2) AT LEAST ONE PREMIUM FOR AUTO COLLISION COVERAGE APPEARS ON YOUR POLICY DECLARATIONS. COVERAGE WILL BE SUBJECT TO
DEDUCTIBLES AND TO POLICY TERMS AND CONDITIONS, INCLUDING ANY APPLICABLE ENDORSEMENTS.

Please see Supplement to Policy Declarations for accident and violation surcharge information.

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number: 9 28 415515 06/15     Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

COVERAGE FOR VEHICLE # 1
## 2006 Honda Accord

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance -- Limited Tort | | | | |
| • Bodily Injury | $250,000 | each person | Not Applicable | $232.86 |
| | $500,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | Not Applicable | $82.31 |
| Medical Expenses | $5,000 | each person | Not Applicable | $63.54 |
| Funeral Expenses | $2,500 | each person | Not Applicable | $0.28 |
| Income Loss | | | | |
| Each person up to | $5,000 | maximum benefit | Not Applicable | $9.89 |
| Subject to | $1,000 | monthly maximum | | |
| Accidental Death | $10,000 | each person | Not Applicable | $1.12 |
| Uninsured Motorists Insurance | $100,000 | each person | Not Applicable | $69.87 |
| Limited Tort / Stacked Limits | $300,000 | each accident | | |
| Auto Collision Insurance | Actual Cash Value | | $1,000 | $328.52 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $85.13 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $7.50 |
| Rental Reimbursement Coverage | up to $30    per day for | | Not Applicable | $23.36 |
| | a maximum of 30 days | | | |
| Total Premium for 06 Honda Accord | | | | $904.38 |

## DISCOUNTS   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Anti-theft | $9.46 | Passive Restraint | $32.06 |
| Multiple Policy | $89.15 | Antilock Brakes | $71.52 |
| Allstate Easy Pay Plan | $45.91 | Future Effective Date | $89.14 |

## RATING INFORMATION
Owns Residence:    Yes
 This vehicle is driven over 7,500 miles per year, 0-3 miles to work/school, married driver age 58

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15     Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

COVERAGE FOR VEHICLE # 2
## 2005 Honda Odyssey

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance -- Limited Tort | | | | |
| • Bodily Injury | $250,000 | each person | Not Applicable | $311.41 |
| | $500,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | Not Applicable | $97.38 |
| Medical Expenses | $5,000 | each person | Not Applicable | $53.87 |
| Funeral Expenses | $2,500 | each person | Not Applicable | $0.28 |
| Income Loss | | | | |
| Each person up to | $5,000 | maximum benefit | Not Applicable | $8.96 |
| Subject to | $1,000 | monthly maximum | | |
| Accidental Death | $10,000 | each person | Not Applicable | $1.12 |
| Uninsured Motorists Insurance | $100,000 | each person | Not Applicable | $69.69 |
| Limited Tort / Stacked Limits | $300,000 | each accident | | |
| Auto Collision Insurance | Actual Cash Value | | $1,000 | $327.30 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $91.49 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $7.50 |
| Rental Reimbursement Coverage | up to $30    per day for | | Not Applicable | $35.28 |
| | a maximum of 30 days | | | |
| Total Premium for 05 Honda Odyssey | | | | $1,004.28 |

## DISCOUNTS   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Student | $157.12 | Anti-theft | $10.17 |
| Passive Restraint | $27.52 | Multiple Policy | $98.92 |
| Antilock Brakes | $81.77 | Allstate Easy Pay Plan | $50.52 |
| Future Effective Date | $98.93 | | |

## SURCHARGES   Your premium for this vehicle reflects the following surcharges:
Minor Violation Surcharge        $41.66

## RATING INFORMATION
Owns Residence:    Yes
This vehicle is driven over 7,500 miles per year, 0-3 miles to work/school

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number: 9 28 416516 06/15      Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

COVERAGE FOR VEHICLE # 3
## 2005 Subaru Legacy

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance -- Limited Tort | | | | |
| • Bodily Injury | $250,000 | each person | Not Applicable | $245.97 |
| | $500,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | Not Applicable | $94.31 |
| Medical Expenses | $5,000 | each person | Not Applicable | $60.43 |
| Funeral Expenses | $2,500 | each person | Not Applicable | $0.28 |
| Income Loss | | | | |
| Each person up to | $5,000 | maximum benefit | Not Applicable | $9.87 |
| Subject to | $1,000 | monthly maximum | | |
| Accidental Death | $10,000 | each person | Not Applicable | $1.12 |
| Uninsured Motorists Insurance | $100,000 | each person | Not Applicable | $69.69 |
| Limited Tort / Stacked Limits | $300,000 | each accident | | |
| Auto Collision Insurance | Actual Cash Value | | $1,000 | $306.02 |
| Auto Comprehensive Insurance | Actual Cash Value | | $500 | $93.63 |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $7.50 |
| Rental Reimbursement Coverage | up to $30 | per day for | Not Applicable | $35.28 |
| | a maximum of 30 days | | | |
| Total Premium for 05 Subaru Legacy | | | | $924.10 |

## DISCOUNTS   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Student | $142.97 | Anti-theft | $10.41 |
| Passive Restraint | $30.72 | Multiple Policy | $90.02 |
| Antilock Brakes | $71.81 | Allstate Easy Pay Plan | $46.31 |
| Future Effective Date | $90.02 | | |

## RATING INFORMATION
Owns Residence:   Yes
This vehicle is driven over 7,500 miles per year, 0-3 miles to work/school

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

COVERAGE FOR VEHICLE # 4

## 1997 Honda Accord

| COVERAGE | LIMITS | | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| Automobile Liability Insurance -- Limited Tort | | | | |
| • Bodily Injury | $250,000 | each person | Not Applicable | $301.28 |
|  | $500,000 | each occurrence | | |
| • Property Damage | $100,000 | each occurrence | Not Applicable | $116.86 |
| Medical Expenses | $5,000 | each person | Not Applicable | $70.40 |
| Funeral Expenses | $2,500 | each person | Not Applicable | $0.28 |
| Income Loss | | | | |
| Each person up to | $5,000 | maximum benefit | Not Applicable | $11.30 |
| Subject to | $1,000 | monthly maximum | | |
| Accidental Death | $10,000 | each person | Not Applicable | $1.12 |
| Uninsured Motorists Insurance | $100,000 | each person | Not Applicable | $69.69 |
| Limited Tort / Stacked Limits | $300,000 | each accident | | |
| Towing and Labor Costs Coverage | $50 | each disablement | Not Applicable | $7.50 |
| Total Premium for 97 Honda Accord | | | | $578.43 |

**DISCOUNTS**   Your premium for this vehicle reflects the following discounts:

| | | | |
|---|---|---|---|
| Good Student | $88.19 | Passive Restraint | $35.63 |
| Multiple Policy | $55.53 | Antilock Brakes | $46.44 |
| Allstate Easy Pay Plan | $29.97 | Future Effective Date | $55.53 |

**SURCHARGES**   Your premium for this vehicle reflects the following surcharges:

Chargeable Accident       $25.73

## RATING INFORMATION

Owns Residence:   Yes
This vehicle is driven over 7,500 miles per year, 0-3 miles to work/school

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

## *Your Policy Documents*

Your auto policy consists of this Policy Declarations and the documents listed below.  Please keep them together.
- Pennsylvania AFCIC Auto Policy form AFA3           - PA Auto Amendatory Endorsement form AFA31-1

## *Important Payment and Coverage Information*

Your rate is lower because you are insuring multiple cars.

You have rejected Underinsured Motorists Insurance.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate.

Frederick F. Cripe
President

Mary J. McGinn
Secretary

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 0 28 415515 06/15    Your Agent:  Hank Ricci Jr  (215) 762-6100
Policy Effective Date: June 15, 2009

# Supplement to Policy Declarations

Violation(s) with the following conviction date(s) may have resulted in a surcharge. Please see the vehicle page(s) under "Surcharge" for the amount.

| | | | |
|---|---|---|---|
| 06/24/08 | Speeding | 03/06/08 | Speeding |

Accident(s) on the following date(s) may have resulted in a surcharge. Please see the vehicle page(s) under "Surcharges" for the amount.

06/02/07    Prior Allstate claim.

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15    Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

# Important Notice

## *Allstate's Privacy Policy*

At Allstate, we value you as a customer and share your concerns about privacy. To help you understand how we treat the nonpublic personal information ("customer information") that we obtain from you or other sources in the course of providing you with products and services, this notice describes our use and protection of that information.

Whether you're doing business with us through your local agent or broker, our Customer Information Center, or allstate.com, we want you to know that Allstate respects your privacy and protects your information.

- We do not sell customer information.
- We do not share your customer information with persons, companies, or organizations outside of Allstate that would use that information to contact you about their own products and services.
- We expect persons or organizations that provide services on our behalf to keep customer information confidential and to use it only to provide the services we've asked them to perform.
- Within Allstate, we communicate to our employees regarding the need to protect customer information, and we've established physical, electronic, and procedural safeguards to protect customer information.

Below we've provided answers to questions that might be on your mind regarding privacy. You may be wondering...

**What do we do with your customer information?**
Allstate does not sell your customer information, or medical information, to anyone. Nor do we share it with companies or organizations outside of Allstate that would use that information to contact you about their own products and services. If that practice were ever to change, we would, of course, offer you the ability to opt out of this type of information sharing, and we would offer you the opt-out with time for you to respond before the change in our practice took place.

Your agent or broker may use customer information to help you with your overall insurance program. We may also communicate with you about products, features, and options you have expressed an interest in or that we believe may be of interest to you. We may, without authorization but only as permitted or required by law, provide customer information to persons or organizations both inside and outside of Allstate to fulfill a transaction you have requested, service your policy, market our products to you, investigate or handle claims, detect or prevent fraud, participate in insurance support organizations, or comply with lawful requests from regulatory and law enforcement authorities. These persons or organizations may include: our affiliated companies, companies that perform marketing services on our behalf, other financial institutions with which we have a joint marketing agreement for the sale of our own products, and your agent or broker.

**What kind of customer information do we have, and where did we get it?**
Much of the customer information that we have about you comes directly from you. When submitting your application or request for insurance or other products and services we offer, or requesting an insurance quote, you may give us information such as your name, address, and Social Security number. We keep information about your transactions with our affiliates, others or us —for example, the types of products and services you purchase from us, premiums, account balances, and payment history.

We also may collect information from outside sources, including consumer reporting agencies and health care providers. This information may include loss information reports, motor vehicle reports, credit reports, and medical information.

AUTO.*0100337090611070002353107*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

**How do we protect your customer information?**
When we share customer information with companies working on Allstate's behalf, we expect those companies to use that information only to provide the service we have asked them to perform. Within Allstate, customer information is available to those individuals who may need to use it to fulfill and service the needs of Allstate customers. We communicate the need to protect customer information to all employees and agents, especially those individuals who have access to it. Plus, we've established physical, electronic, and procedural safeguards to protect customer information.

Finally, should your relationship with Allstate end, your customer information will remain protected in accordance with our privacy practices as outlined in this Important Notice.

**How can you find out what information we have about you?**
You may request to either see, or obtain from us by mail, the customer information about you in our records. If you believe that information is incomplete or inaccurate, you may request that we make any necessary corrections, additions or deletions to the disputed customer information. To fulfill your request, we may make arrangements with an insurance support organization or a consumer reporting agency to copy and disclose customer information to you on our behalf. You may also request a more complete description of the entities to which we disclose customer information, or the circumstances that might warrant such disclosures. Please send any of the requests listed above in writing to: Allstate Insurance Company, Customer Privacy Inquiries, P.O. Box 11904, Roanoke, VA 24022.

**If you are an Internet user...**
Our website, allstate.com, provides information about Allstate, our products, and the agencies and brokers that represent us. You may also perform certain transactions on the website. When accessing allstate.com, please be sure to read the Privacy Statement that appears there.

To learn more, the allstate.com Privacy Statement provides important information relating to your use of the website, including, for example, information regarding: 1) our use of online collecting devices known as "cookies"; 2) our collection of information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site; 3) who should use our web site; 4) the security of information over the Internet and 5) links and co-branded sites.

We hope you have found this Important Notice helpful. If you have any questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-Allstate.

X66702-1v3

This notice is being provided on behalf of the following companies:

| | |
|---|---|
| Allstate County Mutual Insurance Company | Allstate Fire and Casualty Insurance Company |
| Allstate Indemnity Company | Allstate Insurance Company |
| Allstate Investment Management Company | Allstate Motor Club, Inc. |
| Allstate New Jersey Insurance Company | Allstate Property and Casualty Insurance Company |
| Allstate Texas Lloyd's | Allstate Texas Lloyd's, Inc. |
| Forestview Mortgage Insurance Company | General Underwriters Agency, Inc. |
| Allstate New Jersey Property and Casualty Insurance Company | Roadway Protection Auto Club, Inc. |

(ed. 09/2006)

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15     Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

# Important Notice

## Information About Credit Reports and Your Insurance

### The Connection Between Credit History and Premium

We determine premiums primarily from the information you provide on your insurance application. But other factors, such as credit information, also play an important role. In fact, certain credit report information has proved an effective predictor of insurance losses. It also allows insurance companies to keep costs competitive by helping make it possible for customers who are less likely to experience losses to pay less for their insurance.

With this goal in mind, and as permitted by law, we ordered credit report information about you and your spouse.

Based in whole or in part on the information provided to us by the consumer reporting agency listed below, we are unable to offer you a lower rate:
· based on the credit information available to us.

### You May Request A Free Credit Report

Section 612 of the Fair Credit Reporting Act entitles you to a free copy of your consumer report if you request it within 60 days of receiving this notice (even if the report did not contain sufficient information regarding credit status). You also have the right, under Section 611 of the Fair Credit Reporting Act, to dispute with the consumer reporting agency the accuracy or completeness of any information in the report furnished by the agency.

If you'd like a free copy of your credit report, be sure to make your request within 60 days. You can contact the consumer reporting agency at: TransUnion National Disclosure Center, 2 Baldwin Place, PO Box 1000, Chester, PA 19022, Phone: (888) 503-0048. Or log on to www.transunion.com.

But please keep in mind that the consumer reporting agency did not make the decision to take this adverse action and will not be able to provide you with any specific reasons regarding why we made this decision about your premium. If you have any questions about our rating practices or your insurance in general, please feel free to contact your insurance representative.

And keep in mind that changes to your name and address within the past two years can affect the completeness of your credit file. Please contact your insurance representative to confirm that we have your most current information.

X67392v3

(ed. 02/07)

AUTO *010003709061107000353108*

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 08/15     Your Agent:   Hank Ricci Jr  (215) 752-5100
Policy Effective Date: June 15, 2009

# Important Notice

## Important Notice About Consumer Reports

As permitted by law, we obtained consumer report information about you and, if applicable, another insured person named on your policy. Based in whole or in part on the information provided to us by the consumer reporting agency listed below, we could not offer you a lower premium.

The report(s) used to make this decision are as follows:
Motor Vehicle; Loss Information; Current Carrier Database.

Section 612 of the Fair Credit Reporting Act entitles you to a free copy of your report(s). You may request a free copy of your report(s) provided to us by the consumer reporting agency. You also have the right, under Section 611 of the Fair Credit Reporting Act, to dispute with the consumer reporting agency the accuracy or completeness of any information in the consumer report(s) furnished by the agency.

To take advantage of these rights, be sure to request a copy of your report(s) within 60 days. Please keep in mind that the consumer reporting agency did not make the decision to take this action and will not be able to provide you with any specific reasons regarding our decision.

Any changes to your name or address within the past two years can affect the completeness of your report(s). Please feel free to contact your insurance representative to confirm that we have this information.

You may contact the consumer reporting agency at:

ChoicePoint Insurance Consumer Center
PO Box 105108
Atlanta, GA 30348-5108
Phone: (800) 456-6004
www.choicetrust.com

Acxiom RM Tools, Inc
301 Industrial Blvd
P.O. Box 2000
Conway, AR 72033-2000
Phone: (800) 922-9466

If you have any questions regarding this notice or your policy in general, please contact your insurance representative.

X67346-1

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15     Your Agent:   Hank Ricci Jr  (215) 752-6100

Policy Effective Date: June 15, 2009

# Important Notice

## *Please notify us of extraordinary circumstances that negatively impacted your credit history information.*

Please contact Allstate if you believe that any of the events set forth below resulted in extraordinary circumstances that may have negatively impacted your credit history information.

a) Divorce
b) Death of a Spouse or Member of the Same Household
c) Involuntary Unemployment
d) Catastrophic Medical Expense
e) Care of Adult Dependent
f) Identity Theft
g) Long-term Injury, Illness or Disability
h) Care of a Dependent Grandchild
i) Domestic violence
j) Add any additional state-specific events as required by law.

Please contact Allstate at 1-877-304-2644 if you believe your credit history information may have been negatively impacted by extraordinary circumstances. Allstate will send you an Extraordinary Circumstances Appeal Form that you will be asked to complete and return to Allstate along with documentation that supports your appeal. Once your Extraordinary Circumstances Appeal Form and supporting documentation are received, Allstate will be able to determine whether or not you qualify for a lower premium. In any case, you will be notified of the outcome of our review.

Please note that if you wish to pursue this additional review, please contact Allstate within 90 days of the date your policy begins as shown in the policy declarations.

X72269

AUTO *0100037090611070200353109*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15     Your Agent:   Hank Dicci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

# Important Notice

## *Please Review the Vehicle Information in Your Policy Declarations*

Thank you for choosing Allstate.

We want to remind you to please review the Policy Declarations included in this mailing to confirm that the vehicle information listed in the Declarations is correct.

We obtained some of the information used to provide you with a quote and issue your policy (or policies) from a third-party. So we ask that you please verify the accuracy of all of the information in this mailing, including vehicle identification number (VIN), as this information — including the VIN — affects your rates. If you believe any of the enclosed information is not correct, we urge you to call us right away with the correct information.

We recommend that you store all of these documents with your other important papers.

Feel free to contact your Allstate representative if you have any questions about this information or about your insurance coverage, in general.

X71956

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 475515 06/15    Your Agent:    Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 16, 2009

# Important Notice

## *Important Information About Your Auto Policy*

The enclosed Policy Declarations lists important information about your policy, such as your address, the vehicles you've insured, the vehicle identification numbers (VIN) assigned to your insured vehicles, the drivers insured, and the coverages and coverage limits you've chosen. Your Policy Declarations also lists any discounts and surcharges applied to your policy.

Because much of the information found on your Policy Declarations is used to help us determine your premium, please be sure to review your Policy Declarations carefully each time you receive one. You may want to add coverage, delete coverage or change your coverage limits — or you may want to change the information concerning the vehicles or drivers your policy insures.

Another thing to keep in mind is that you may now qualify for discounts that you previously were not eligible to receive. For instance, in many states, Allstate offers discounts for:

- drivers who are age 55 and older who are no longer working;
- young drivers, including students under the age of 25;
- drivers who have completed approved driver training courses; and
- drivers who also insure their homes with Allstate.

Please contact your Allstate representative for additional information about discount qualifications, as well as other discounts that may be available.

## *Making changes to your policy*

If you need to make a change to any of the information listed on your Policy Declarations, please notify your Allstate representative of the change as soon as possible. With a few exceptions, any changes will be effective as of the date you notify us.

If you have any questions about this notice, or if you need to update any of the information listed on the enclosed Policy Declarations, please contact your Allstate agent or our Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

X67094

AUTO *0100037090611070000353110*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15    Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

# Important Notice

## State-Required Notices Regarding Your Auto, Motorcycle, Off-Road Vehicle or Motor Home Insurance

**Tort Options Available With Auto, Motorcycle, Off-Road Vehicle or Motor Home Insurance**
This notice briefly describes the tort options available to you with your auto, motorcycle, off-road vehicle or motor home policy. The laws of the Commonwealth of Pennsylvania require that you be given the right to choose · either of the following two tort options:

- Limited Tort Option—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of serious injury, as set forth in this policy, or unless one of several other exceptions noted in this policy applies. Please note that the Limited Tort Option is not available for motorcycles, motor-driven cycles, motorized pedal cycles, off-road vehicles or like-type vehicles.

- Full Tort Option—This form of insurance allows you to maintain a unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option indicated on the enclosed Policy Declarations, you must notify your agent, broker, or company, and complete the appropriate form.

**Discounts Available With Auto or Motor Home Insurance**
Pennsylvania law requires that we inform you of the availability of the following three discounts:

- Passive Restraint Discount—If your insured motor vehicle is equipped with air bags or passive seat belts, you may qualify for a premium discount on certain coverages. Passive seat belts are those that fasten without any action by the driver or front-seat passenger.

- Anti-Theft Device Discount—You may qualify for a premium discount on your policy's comprehensive coverage if your insured motor vehicle is equipped with a device that would help to prevent your car from being stolen, such as certain types of car alarms.

- Defensive Driver Discount—If you're age 55 or older and have successfully completed a Motor Vehicle Driver Improvement Course approved by the Pennsylvania Department of Transportation, you may qualify for a 5 percent discount on some coverages. In order to be eligible, you must have voluntarily enrolled in the course.

The three discounts described above are not available for motorcycles or off-road vehicles.

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

We offer many other money-saving discounts to qualified policyholders. Any discounts for which you have qualified will be listed on the enclosed Policy Declarations. For more information about any of the discounts we offer, please contact your agent, broker, or company.

## Coverages Available With Auto, Motorcycle, Off-Road Vehicle or Motor Home Insurance

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse, or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1)  Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2)  Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3)  Accidental death benefits, up to at least $25,000.

(4)  Funeral benefits, $2,500.

(5)  As an alternative to paragraphs (1), (2), (3), and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6)  Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident, or at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit limits than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

NOTE: The benefits mentioned in paragraphs (1) through (5) in the above IMPORTANT NOTICE are not available for motorcycles, motor-driven cycles, motorized pedalcycles, off-road vehicles, or like type vehicles. However, the uninsured, underinsured and bodily injury liability coverages mentioned in paragraph (6) are available to motorcycles, off-road vehicles, and similar vehicles.

If you have any questions about these notices or the information provided, please contact your agent, broker, or company.

X5004-6

AUTO *0100037090611070000353111*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

# Important Notice

## *What You Should Know about Accident Surcharges*

Thank you for being a valued Allstate customer. We truly appreciate your business and the opportunity to serve you.

To help you better understand accident surcharges and how we apply them to auto policies, the State of Pennsylvania requires us to send you this notice, which covers the following subjects:

- What is an Accident Surcharge?
- How Your Driving Record Affects Your Premium
- Chargeable Auto Accidents
    - Initial Rating Period
        - Exceptions
    - Subsequent Rating Periods
        - Exceptions
- Surcharge Percentages

We encourage you to take a moment to review the following important information. Please feel free to contact your Allstate representative with any questions about this notice or about any aspect of your policy.

What is an Accident Surcharge?
An accident surcharge is an additional amount added to your premium when you've had a "chargeable" accident. The criteria for what is a "chargeable" accident differs depending on whether an accident occurs during your initial rating period or during a subsequent rating period. (See additional information below.)

How Your Driving Record Affects Your Premium
Under the Good Driver Plan, if you have an accident-free driving record, you are receiving a lower rate than if you had one or more "chargeable" auto accidents in the past three years. On the other hand, if we, or any other insurer, make a claim payment arising out of an at-fault accident, this will result in a premium surcharge.

"Chargeable" Auto Accidents

Accidents During the Initial Rating Period
An accident is chargeable if it occurred within the 36 months of the day your policy went into effect and involved a private passenger or utility automobile while it was owned or being driven by the applicant or spouse or any other individual currently residing in the same household who will operate automobiles covered under the policy. In addition, for an accident to be chargeable, one or more of the following must be true:

- The accident resulted in damage to property, excluding property owned by, or in the care, custody or control of, the operator, and the amount of the damages was at least $1,350 in excess of any deductible; or
- In the case of a single car accident, the accident resulted in damage to any property and the amount of the damage was at least $1,350 in excess of any deductible; or
- The accident resulted in bodily injury and the amount of the damage was $1,350 or more; or
- The accident resulted in death.

Page 1

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 416515 06/15       Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

### Exceptions
An accident shall not be chargeable if the applicant demonstrates that:

- The automobile was lawfully parked; or
- The owner or operator has been reimbursed for 50% or more of his or her property damage loss by, or on behalf of, another person responsible for the accident, or has obtained judgment against such other person for 50% or more of his or her property damage loss; or
- The automobile was struck in the rear by another vehicle and the operator has not been convicted of a moving traffic violation in connection with the accident; or
- The automobile was struck by a " hit and run" driver, provided that the accident was so reported to the proper authorities within 24 hours; or
- The operator was not convicted of a moving traffic violation in connection with the accident, but the driver of another vehicle involved in the accident was convicted of a moving traffic violation; or
- The accident was caused by collision with a bird or other animal; or
- The accident involved physical damage, limited to and caused by flying gravel, missiles, or falling objects; or
- The accident occurred when the insured was using the motor vehicle in response to an emergency if the insured was a paid or voluntary member of a police or fire department, first-aid squad, or a law enforcement agency at the time of the accident. This exception does not include an accident occurring after the motor vehicle ceases to be used in response to the emergency; or
- The accident resulted in a first party medical claim only.

### Accidents During Subsequent Rating Periods (applicable only on policy anniversary)

*For Accidents Occurring on or After August 29, 2005 and Prior to July 1, 2008*
An accident is chargeable for any subsequent rating period if the date of occurrence falls within the 36 months ending 45 days prior to expiration of the current premium period. For this purpose, if we determine the operator to be more than 50% at fault, the payment date is the first date on which the sum of our payments for a single accident under the Bodily Injury, Property Damage, and Collision coverages of the policy is $1,150 in excess of any deductible.  In determining the sum of such payments, claim adjustment expense, bail bond expense, and medical first aid expense shall be excluded. If the owner or operator recovers, or if Allstate through subrogation recovers 50% or more of the insured's property damage loss or if the insured has a judgment which declares him or her to be or otherwise demonstrates that he or she is 50% or less at fault, the accident will not be chargeable and any surcharges resulting from that accident will be removed and/or refunded.

*For Accidents Occurring on or After July 1, 2008*
An accident is chargeable for any subsequent rating period if the date of occurrence falls within the 36 months ending 45 days prior to the expiration of the current premium period. For this purpose, if we determine the operator to be more than 50% at fault, the payment date is the first date on which the sum of our payments for a single accident under the Bodily Injury, Property Damage, and Collision coverages of the policy is $1,350 in excess of any deductible. In determining the sum of such payments, claim adjustment expense, bail bond expense, and medical first aid expense shall be excluded. If the owner or operator recovers, or if Allstate through subrogation recovers 50% or more of the insured's property damage loss or if the insured has a judgment which declares him or her to be or otherwise demonstrates that he or she is 50% or less at fault, the accident will not be chargeable and any surcharges resulting from that accident will be removed and/or refunded.

### Exceptions
If any of the following are applicable, the accident will not be chargeable, and any surcharges resulting from that accident will be removed and/or refunded:

AUTO *0100037090611070000353112*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

- The owner or operator recovers 50% or more of the insured's property damage loss; or
- Allstate through subrogation recovers 50% or more of the insured's property damage loss; or
- The insured has a judgment which declares him or her to be, or otherwise demonstrates that he or she is, 50% or less at fault; or
- The automobile was lawfully parked; or
- The automobile was struck in the rear by another vehicle and the operator has not been convicted of a moving traffic violation in connection with the accident; or
- The automobile was struck by a "hit and run" driver, provided that the accident was reported to the proper authorities within 4 hours; or
- The operator was not convicted of a moving traffic violation in connection with the accident, but the driver of another vehicle involved in the accident was convicted of a moving traffic violation; or
- The accident was caused by collision with a bird or another animal; or
- The accident involved physical damage, limited to and caused by flying gravel, missiles or falling object; or
- The accident occurred when the insured was using the motor vehicle in response to an emergency if the insured was a paid or voluntary member of a police or fire department, first-aid squad, or law enforcement agency at the time of the accident. This exception does not include an accident occurring after the motor vehicle ceases to be used in response to an emergency; or
- The accident resulted in a first party medical claim only.

## Surcharge Percentages

Listed below are the ranges for surcharge percentage amounts for Bodily Injury Liability, Property Damage Liability and Collision Coverages:

|  | 1 accident | 2 accidents |
| --- | --- | --- |
| Bodily Injury Liability | 6-38% | 21-114% |
| Property Damage Liability | 8-20% | 29-71% |
| Collision Coverage | 11-23% | 32-81% |

If you have had more than two chargeable auto accidents in the past three years, add 5% for each additional accident to the above two-accident surcharge amounts.

Chargeable accidents result in surcharges applied to Bodily Injury Liability, Property Damage Liability, and Collision Coverage (if afforded) regardless of whether a claim was made or paid under any or all of these coverages.

## What Are Your Options?

You have the right to ask us for the reason(s) behind any increase in the premium for your policy caused in whole or in part by an auto accident involving you or any operator of your insured auto. Just contact your Allstate representative or call 1-800-ALLSTATE, and we will provide you with that information.

## Have Questions? Please Contact Us

If you have any questions about accident surcharges, or about your auto coverage in general, please contact your Allstate representative or call 1-800-ALLSTATE.

X67894-1

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15      Your Agent:  Hank Ricci Jr. (215) 752-5100
Policy Effective Date: June 15, 2009

# Important Notice

## *This Is Information Concerning Uninsured Motorists Insurance*

This Notice does not change your policy. Its purpose is to call your attention to a provision already in your policy's uninsured motorist coverage. This provision affects when an insured person under the policy can recover uninsured motorist coverage benefits if the insured person alleges that an unidentified or hit- and-run vehicle caused the insured person injury. Specifically, the provision states:

AN UNINSURED AUTO IS:

3.  A hit-and-run motor vehicle which causes bodily injury to an insured person as the result of a motor vehicle accident. The identity of either the operator or owner must be unknown. The accident must be reported to the police or proper governmental authority as soon as practicable. We must be notified within 30 days.

    If the insured person was occupying the vehicle at the time of the accident, we have a right to inspect it. If the hit-and-run motor vehicle caused the injury without physical contact with the insured person or the vehicle the insured person was occupying, the facts of the accident must be verified by a disinterested witness.

Accordingly, if an insured person under the policy seeks uninsured motorist coverage benefits based on a claim that an unidentified or hit-and-run vehicle caused a motor vehicle accident, but there was no physical contact with the unidentified or hit-and-run vehicle, there must be at least one independent witness to corroborate the insured person's claim. If there is no such independent corroboration, a coverage claim in these circumstances will be denied.

If you have any questions about this notice, please contact your Allstate agent or our Customer Information Center at 1-800- ALLSTATE (1-800-255-7828).

X67225

AUTO *0100037090611070003551113*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15     Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

# Important Notice

The company listed below uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high quality service. These agencies provide numerous services to customers on the company's behalf. Agencies are paid a commission by the company for selling and servicing the company's insurance policies and may be eligible to receive additional compensation and rewards based on performance.

Allstate Fire and Casualty Insurance Company

X72006

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company Auto Policy

PENNSYLVANIA

Policy: 9 28 415515 06/15

Effective: June 15, 2009

Issued to:
Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

By your Allstate agent:
Hank Ricci Jr
937 New Rodgers Rd
Levittown PA 19056



AUTO *11000370906110700033531114*

AFA3

TABLE OF CONTENTS

IN ACCORDANCE WITH SECTION 1725 OF THE MOTOR VEHICLE FINANCIAL RESPONSIBILITY LAW, THIS IS TO INFORM YOU THAT COLLISION DAMAGE TO A RENTAL VEHICLE WILL BE COVERED IF: 1) THE RENTAL VEHICLE IS A FOUR WHEEL PRIVATE PASSENGER AUTOMOBILE OR A UTILITY AUTOMOBILE, AND 2) AT LEAST ONE PREMIUM FOR COLLISION COVERAGE (DD) APPEARS ON YOUR POLICY DECLARATIONS.

COVERAGE WILL BE SUBJECT TO DEDUCTIBLES AND TO POLICY TERMS AND CONDITIONS, INCLUDING ANY APPLICABLE ENDORSEMENTS

GENERAL PROVISIONS
Insuring Agreement ........................................2
When and Where the Policy Applies ..............2
Definitions ....................................................2
Changes
    Premium Changes .................................2
    Coverage Changes ...............................3
Transfer ........................................................3
Cancellation .................................................3
Non-Renewal ...............................................3
Conditional Reinstatement...........................3
Charge for Insufficient Funds........................4
Conformity to State Statutes.........................4
What Law Will Apply .....................................4
Where Lawsuits May Be Brought...................4
Action Against Allstate..................................4
Arbitration.....................................................4

PART 1
AUTOMOBILE LIABILITY INSURANCE
COVERAGES AA AND BB
Insuring Agreement ......................................5
Additional Payments Allstate Will Make .........5
Insured Persons ...........................................5
Insured Autos ...............................................6
Definitions ....................................................6
Exclusions—What is not covered .................6
Financial Responsibility ...............................7
Limits of Liability ..........................................7
If There Is Other Insurance ..........................8
Assistance and Cooperation Of
    The Insured ............................................8
Action Against Allstate ..................................8
Bankruptcy Or Insolvency ............................9
What To Do In Case Of An Auto Accident
    Or Claim .................................................9

PART 2
FIRST PARTY BENEFITS COVERAGE
COVERAGES CC, CF, VW, VM, CE
Insuring Agreement ......................................9
Definitions ....................................................9
Exclusions ..................................................10
Policy Period; Territory ...............................11
Limits Of Liability ........................................11
Priorities Of Policies ...................................12
Action Against Allstate ................................12
Notice to Allstate ........................................12
Proof Of Claim; Medical Reports.................12
Customary Charges For Treatment .............13
Non-Duplication Of Benefits .......................13
Other Insurance .........................................13

PART 3
UNINSURED MOTORISTS INSURANCE
COVERAGE SS
Insuring Agreement ....................................13
Insured Persons .........................................13
Definitions ..................................................14
Exclusions—What is not covered ................15
Limits of Liability .........................................15
Non-Duplication of Benefits ........................16
If There Is Other Insurance ........................17
Proof of Claim; Medical Reports ..................17
Assistance and Cooperation of the Insured ....17
Trust Agreement .........................................17
Payment of Loss by Allstate ........................18
Action Against Allstate .................................18
If We Cannot Agree ....................................18
UNDERINSURED MOTORISTS INSURANCE
COVERAGE SU
Insuring Agreement ....................................19
Insured Persons .........................................19
Definitions ..................................................19
Exclusions—What is not covered ................20

Case ID: 131001095

Limits of Liability..........................................20
Non-Duplication of Benefits ............................22
If There Is Other Insurance .............................22
Proof of Claim; Medical Reports .....................22
Assistance and Cooperation of the Insured .....23
Trust Agreement ...........................................23
Payment of Loss by Allstate ...........................23
Action Against Allstate ..................................23
If We Cannot Agree .......................................23

PART 4
PROTECTION AGAINST LOSS TO THE AUTO
COVERAGES DD, HE, HF, HG, HH, JJ, UU,
ZA, ZZ
Insuring Agreements For Each Coverage ........24
Additional Payments Allstate Will Make ..........25
Insured Autos ...............................................26
Definitions ...................................................26
Exclusions—What is not covered ..................27
Right to Appraisal .........................................28
Payment of Loss By Allstate ...........................28
Limits of Liability...........................................28
If There Is Other Insurance .............................28
Action Against Allstate ..................................29
Subrogation Rights .......................................29
Loss Payable Clause .....................................29
What You Must Do If There Is A Loss .............29

# Allstate Fire and Casualty Insurance Company

The Company Named in the Policy Declarations
A Stock Company
Home Office: Northbrook, Illinois

## GENERAL PROVISIONS

### Insuring Agreement
The coverages of this policy apply only when a specific premium is indicated for them on the Policy Declarations. If more than one auto is insured, a coverage premium will be shown for each auto. Allstate, relying on the information you have given us, makes the following agreements with you.

### When and Where the Policy Applies
During the policy period, your policy applies to losses to the auto, accidents and occurrences within the United States of America, its territories or possessions or Canada, or between their ports.

### Definitions
1.  "Allstate", "We", "Us" or "Our" means the company named on the Policy Declarations of the policy.

2.  "Auto" means a land motor vehicle designed for use principally on public roads.

3.  "You" or "Your" means the policyholder named on the Policy Declarations and that policyholder's resident spouse.

### Changes
### Premium Changes
The premium for each auto is based on the information Allstate has received from you or other sources. You agree to cooperate with us in determining if this information is correct, if it is complete, and if it changes during the policy period. You agree that if this information changes or is incorrect or incomplete, we may adjust your premium accordingly during the policy period. Changes which result in a premium adjustment are

Page 2



Case ID: 131001095

contained in our rules. These include, but are not limited to:

1. autos insured by the policy, including changes in use.

2. drivers residing in your household, their ages or marital status.

3. coverages or coverage limits.

4. rating territory.

5. discount eligibility.

Any calculation or adjustment of your premium will be made using the rules, rates and forms in effect, and on file if required, for our use in your state.

### Coverage Changes

When Allstate broadens a coverage during the policy period without additional charge, you have the new feature if you have the coverage to which it applies. The new feature applies on the date the coverage change is effective in your state. Otherwise, the policy can be changed only by endorsement. Any change in your coverage will be made using the rules, rates and forms in effect, and on file if required, for our use in your state.

### Transfer

This policy can't be transferred to another person without our written consent. However, if you die this policy will provide coverage until the end of the policy period for your legal representative while acting as such and persons covered on the date of your death.

### Cancellation

You may cancel this policy by writing and telling us at what future date you wish to stop coverage.

Allstate may cancel part or all of this policy by mailing notice to you at your last known address. If we cancel because you didn't pay the premium, the date of cancellation will be at least 15 days after the date of mailing notice.

If we cancel for any other reason within the first 59 days of the original policy period, the date of cancellation will be at least 10 days after mailing the notice. Otherwise, we will give you 60 days notice.

Mailing the notice will be proof of notice. A refund, if due, will be proportional to the time your policy has been in effect, but cancellation will be effective even though the refund is not made immediately.

After your original policy has been in effect 60 days, Allstate won't cancel your policy prior to the next anniversary of the original effective date unless:

1. The premium isn't paid when due; or

2. You had your driver's license suspended or revoked; or

3. You concealed a material fact, or made a material misrepresentation of fact, which if known to us would have caused us not to issue the policy.

Our right to cancel this policy is subject to the provisions of Pennsylvania Consolidated Statutes Section 1008.3 et seq.

Any unearned premium amounts under $2.00 will be refunded only upon your request.

### Non-Renewal

We have the right to nonrenew this policy only at each anniversary of the original effective date. If we don't intend to renew the policy, we will mail you notice at least 60 days before the next anniversary date. Our right to nonrenew this policy is subject to the provisions of Pennsylvania Consolidated Statutes Section 1008.3 et seq.

### Conditional Reinstatement

If we mail a cancellation notice because you didn't pay the required premium when due and you then tender payment by check, draft, or other remittance which is not honored upon presentation, your policy will terminate on the date and time shown on the cancellation notice and any notice we issue which waives the cancellation or reinstates coverage is void. This means that Allstate will not be liable under

Page 3

this policy for claims or damages after the date and time indicated on the cancellation notice.

## Charge for Insufficient Funds
If at any time, your payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account, you will be charged a fee.

## Conformity to State Statutes
When any policy provision is in conflict with the law of the state in which the policy was issued, the law of the state applies.

## What Law Will Apply
This policy is issued in accordance with the laws of Pennsylvania and covers property or risks principally located in Pennsylvania. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Pennsylvania.

If a covered loss to the auto, a covered auto accident, or any other occurrence for which coverage applies under this policy happens outside Pennsylvania, claims or disputes regarding that covered loss to the auto, covered auto accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the auto, covered auto accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in Pennsylvania. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy or involved in any other way with this policy, shall be brought, heard, and decided only in a state or federal court located in Pennsylvania, provided that such persons are subject to or consent to suit in the courts specified in the paragraph.

If a covered loss to the auto, a covered auto accident, or any other occurrence for which coverage applies under this policy happens outside Pennsylvania, lawsuits regarding that covered loss to the auto, covered auto accident, or other covered occurrence may also be brought in the judicial district where that covered loss to the auto, covered auto accident, or other covered occurrence happened.

Nothing in this provision, Where Lawsuits May Be Brought, shall impair any party's right to remove a state court lawsuit to a federal court.

## Action Against Allstate
No one may bring an action against us unless:

1.  there is full compliance with all policy terms; and

2.  the action is commenced within one year of the date the cause of action accrues.

However, if an action is in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a particular coverage that is shown on the Policy Declarations, such action must be commenced within the time period specified in the Action Against Allstate provision of that particular coverage. If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

## Arbitration
Any claim or dispute in any way related to this policy, by a person insured under this policy against us or us against a person insured under this policy, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:
1.  no arbitrator shall have the authority to award punitive damages or attorney's fees;

2.  neither of the parties shall be entitled to arbitrate any claims or disputes in a

Page 4

Case ID: 131001095

representative capacity or as a member of a class; and

3. no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

This provision shall not apply to claims or disputes to which the Part 3, Uninsured and Underinsured Motorist Insurance —Coverages SS and SU, if We Cannot Agree provisions apply.

## PART 1
## AUTOMOBILE LIABILITY INSURANCE
## BODILY INJURY LIABILITY —COVERAGE AA
## PROPERTY DAMAGE — COVERAGE BB

### Insuring Agreement
Allstate will pay damages an insured person is legally obligated to pay because of:
1. bodily injury sustained by any person, and

2. damage to or destruction of property.

Under these coverages, your policy protects an insured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of the insured auto.

We will defend an insured person sued for damages which are covered by this policy, even if the suit is groundless, false or fraudulent. We will defend the insured person at our own expense. We will choose the counsel. We may settle any claim or suit if we believe it is proper. We will not defend an insured person sued for damages which are not covered by this policy.

### Additional Payments Allstate Will Make
When we defend an insured person under this part, we will pay:

1. up to $100 per day for loss of wages or salary if we ask that person to attend hearings or trials to defend against a bodily injury suit. We won't pay for loss of other income. We will pay other reasonable expenses incurred at our request.

2. court costs for defense.

3. interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy. Interest will be paid only on damages which do not exceed our limits of liability.

4. all premiums on appeal bonds and on bonds to release attachments, but not in excess of our limit of liability. We have no obligation to apply for or furnish these bonds.

We will repay an insured person for:
1. the cost of any bail bonds required due to an auto accident or traffic law violation involving the use of the insured auto. Payment won't exceed $300 per bond. We have no obligation to apply for or furnish a bond.

2. any expense incurred for first aid to others at the time of an auto accident involving the insured auto.

### Insured Persons
These persons are insured under Coverage AA and Coverage BB:
1. While using an insured auto:
   a) You,
   b) Any resident relative, and
   c) Any other licensed driver using it with your permission.

2. While using a non-owned auto:
   a) You, and
   b) Any resident relative using a four wheel private passenger auto or utility auto.

   The use of a non-owned auto must be with the owner's permission.

3. Any other person or organization liable for the use of an insured auto if the auto is not owned or hired by this person or organization provided the use is by a person insured under 1. or 2. above.

Case ID: 131001095

## Insured Autos

1. Any auto described on the Policy Declarations. This includes any four wheel private passenger auto or utility auto you replace it with.

2. An additional four wheel private passenger auto or utility auto you become the owner of during the policy period. This auto will be covered if we insure all other private passenger autos or utility autos you own. You must notify us within 30 days of acquiring the auto and pay any additional premium.

3. A substitute four wheel private passenger auto or utility auto, not owned by you or a resident relative being temporarily used with the permission of the owner while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.

4. A non-owned auto used by you or a resident relative with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person.

5. A trailer while attached to an insured auto. The trailer must be designed for use with a private passenger auto or utility auto. This trailer can't be used for business purposes with other than a private passenger auto or utility auto.

## Definitions

1. "Allstate", "We", "Us" or "Our" means the company named on the Policy Declarations of the policy.

2. "Auto" means a land motor vehicle designed for use principally upon public roads and which is not principally used for commercial purposes other than farming.

3. "Bodily Injury" means bodily injury, sickness, disease or death.

4. "Resident" means a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children while temporarily away

from home will be considered residents if they intend to resume residing in your household.

5. "Utility Auto" means an auto with a gross weight not exceeding 9,000 pounds. This auto must be of the pick-up body, sedan delivery or panel truck type and must not be principally used for commercial purposes other than farming.

6. "You" or "Your" means the resident policyholder named on the Policy Declarations and that policyholder's resident spouse.

7. "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

8. "Serious Injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

## Exclusions — What is not covered

Allstate will not pay for those damages which an insured person is legally obligated to pay because of:

1. bodily injury or property damage arising out of the use of your insured auto while hired by or rented to others for a charge, or any auto an insured person is driving while available for hire by the public.

   This exclusion does not apply to:
   a) shared expense car pools.
   b) the occasional rental of your insured motor home or travel-trailer to others for personal use if a rental premium is shown on the Policy Declarations for this coverage.

2. bodily injury or property damage arising out of auto business operations such as repairing, servicing, testing, washing, parking, storing, or selling autos.

   However, coverage does apply to you, resident relatives, partners or employees of the partnership of you or a resident relative when using your insured auto.

Case ID: 131001095

3. bodily injury or property damage arising out of the use of a non-owned auto in any business or occupation of an insured person. However, this exclusion does not apply while you, your chauffeur or domestic servant are using a private passenger auto or trailer.

4. bodily injury to an employee of any insured person arising in the course of employment. This exclusion does not apply to your domestic employee who is not required to be covered by a worker's compensation law or similar law.

5. bodily injury to a co-worker injured in the course of employment. This exclusion does not apply to you.

6. damage to or destruction of property an insured person owns, transports, is in charge of, or rents. However, a private residence or a garage rented by that person is covered.

7. bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

8. bodily injury or property damage which would also be covered under nuclear energy liability insurance. This applies even if the limits of that insurance are exhausted.

9. bodily injury or property damage arising out of the participation in any prearranged, organized, or spontaneous:
   a) racing contest;
   b) speed contest; or
   c) use of an auto at a track or course designed or used for racing or high performance driving;
   or in practice or preparation for any contest or use of this type.

## Financial Responsibility

When this policy is certified as proof under any Motor Vehicle Financial Responsibility law, the insurance under this part shall comply with the provisions of such law. This liability coverage will comply with the

extent of liability coverage and limits required by the law.

## Limits of Liability

1. Limited Tort Insurance
   If the Policy Declarations indicate you elected Limited Tort Insurance for Coverage AA, you or any resident relative may seek compensation for economic loss sustained due to bodily injury in a covered motor vehicle accident. You or any resident relative are precluded from maintaining an action for any noneconomic loss unless the injury sustained is a serious injury or the at-fault person:
   a) is convicted of, or accepts Accelerated Rehabilitative Disposition for, driving under the influence of alcohol or a controlled substance in the accident; or
   b) is operating a motor vehicle registered in another state; or
   c) intends to injure himself or another person; or
   d) has not maintained financial responsibility.

   You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles. Full tort rights will be retained by you or any resident relative for claims involving a motor vehicle which has a defect caused by, or not corrected by, an act or omission in the course of such a business, other than a defect in a motor vehicle which is operated by such business.

   You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

2. Full Tort Insurance
   If the Policy Declarations indicate you elected Full Tort Insurance for Coverage AA, you or any resident relative may seek compensation for noneconomic loss and economic loss

Page 7

Case ID: 131001095

sustained in a covered motor vehicle accident caused by another person.

3. The limits shown on the Policy Declarations are the maximum we will pay for any single motor vehicle accident. The limit stated for "each person" for bodily injury applies to damages arising out of bodily injury sustained by one person in any one occurrence, including damages sustained by anyone else as a result of that bodily injury. Subject to the limit for each person, the occurrence limit is our total limit of liability for legal damages for bodily injury sustained by two or more persons in any one occurrence. For property damage, the limit applies to legal damages arising from each occurrence.

The liability limits apply to each insured auto as stated on the Policy Declarations. The insuring of more than one person or auto under this policy will not increase our liability limits beyond the amount shown for any one auto, even though a separate premium is charged for each auto. The limits also won't be increased if you have other auto insurance policies that apply.

An auto and attached trailer are considered one auto. Also, an auto and a mounted camper unit, topper, cap or canopy are considered one auto.

If a single "each occurrence" limit is stated on the Policy Declarations for Automobile Liability Insurance, this limit will be the maximum amount of Allstate's liability for bodily injury and property damage arising out of any one occurrence.

## If There Is Other Insurance

If an insured person is using a substitute private passenger auto or non-owned auto, our liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.

## Assistance and Cooperation of the Insured

An insured person must assist us in making settlements, securing evidence, obtaining witnesses and in conducting suits. This includes disclosing all facts, and attending hearings and trials. That person must also help us recover from anyone who may be jointly responsible.

We can't be obligated if an insured person voluntarily makes any payments or takes other actions except as specified in this policy.

## Action Against Allstate

No insured person may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 1—Automobile Liability Insurance, unless there is full compliance with all policy terms and such action is commenced no later than the last of the following to occur:

1. two years after the date of the accident;

2. one year after entry of final judgment or other court order terminating a lawsuit against the insured to determine the insured's liability or the amount of the insured's liability arising out of the accident; or

3. one year after we agree to a settlement; or

4. if we have denied coverage and the insured person has thereafter settled with the claimant without any lawsuit being filed to determine the insured's liability or the amount of the insured's liability arising out of the accident, within one year after the denial of coverage.

If the insured person is subjected to claims arising out of the same accident by more than one person claiming bodily injury or property damage, the time for the insured person to bring an action against us shall be determined separately as to the coverage sought or provided with respect to the claims of each of those claiming against the insured person.

If liability has been determined by judgment after trial, or by written agreement among the insured, the other person, and us, then whoever obtains this

Page 8



AUTO *1100037090611070000353118*

Case ID: 131001095

judgment or agreement against an insured person may sue us up to the limits of this policy. However, no one has the right to join us in a suit to determine legal responsibility of an insured person.

## Bankruptcy Or Insolvency
The bankruptcy or insolvency of an insured person won't relieve us of any obligation.

## What To Do In Case Of An Auto Accident Or Claim
If an insured person has an auto accident or information that a claim may be made against that person, we must be informed promptly of all details. If an insured person is sued as a result of an auto accident, we must be informed immediately so we can provide defense.

## PART 2
## FIRST PARTY BENEFITS COVERAGE
## COVERAGES CC, CF, VW, VM, CE

**Coverage CC — Medical Expenses**
**Coverage CF — Funeral Expenses**
**Coverage VW — Income Loss**
**Coverage VM — Accidental Death**
**Coverage CE — Combination Package**
In accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, we will pay First Party Benefits for:
1. a) medical expenses (Coverage CC),
   b) income loss (Coverage VW), and
   c) funeral expenses (Coverage CF)

   arising from bodily injury to an eligible person resulting from the maintenance or use of a motor vehicle as a vehicle.

2. accidental death (Coverage VM) arising from bodily injury to the named insured or relative resulting from the maintenance or use of a motor vehicle as a vehicle.

Only the First Party Benefits shown as applicable in the Policy Declarations will apply.

## Definitions
1. "We", "Us" or "Our" mean the Company providing this insurance.

2. "Accidental death" means the death of the named insured or relative if death occurs within 24 months from the date of the accident. The death benefit shall be paid to the executor or administrator of the estate of the named insured or relative.

3. "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

4. "Catastrophic Loss Trust Fund" means the Fund established under the Pa. Motor Vehicle Financial Responsibility Law (75 Pa. C.S. Ch. 17 F.).

5. "Eligible person" means:
   a) the named insured or any relative;
   b) any other person who sustains bodily injury
      (1) while occupying the insured motor vehicle, or
      (2) while a non-occupant of a motor vehicle if injured as a result of an accident in Pennsylvania involving the insured motor vehicle. An unoccupied parked insured motor vehicle is not a motor vehicle involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

6. "Funeral expenses" means reasonable expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of the deceased eligible person. The expenses must be incurred as a result of the death of the eligible person and within 24 months from the date of the accident.

7. "Income loss" means eighty (80%) percent of gross income actually lost by an eligible person. Income loss includes reasonable expenses actually incurred for hiring:

Case ID: 131001095

a) a substitute to perform the work a self-employed eligible person would have performed except for the bodily injury, or

b) special help,

thereby enabling a person to work, thereby reducing loss of gross income.

Income loss does not include:

a) loss of expected income for any period following the death of an eligible person, or

b) expenses incurred for services performed following the death of an eligible person, or

c) any loss of income during the first five (5) working days the eligible person did not work after the accident because of the bodily injury. These five (5) working days do not have to be consecutive.

8. "Insured motor vehicle" means a motor vehicle:

a) to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged, and

b) for which the named insured maintains First Party Benefits as required under the Pennsylvania Motor Vehicle Financial Responsibility Law.

9. "Medical expenses" means reasonable and necessary charges incurred for:

a) medical treatment, including but not limited to:
   (1) medical, hospital, surgical, nursing and dental services;
   (2) medications, medical supplies and prosthetic devices; and
   (3) ambulance;

b) medical and rehabilitative services, including but not limited to:
   (1) medical care;
   (2) licensed physical therapy, vocational rehabilitation and occupational therapy;
   (3) osteopathic, chiropractic, psychiatric and psychological services; and
   (4) optometric services, speech pathology and audiology;

c) nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

Payment of medical expenses incurred after 18 months from the date of the accident causing bodily injury shall be made only if within 18 months from the date of the accident it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

10. "Motor vehicle" means any vehicle which is self-propelled except one which is propelled

a) solely by human power,

b) by electric power obtained from overhead trolley wires, or

c) upon rails.

11. "Named insured" means the person or organization named in the Policy Declarations including the spouse if a resident in the same household.

12. "Occupying" means in or upon, entering into or alighting from.

13. "Relative" means, if a resident in the same household as the named insured:

a) the spouse of the named insured,

b) any person related to the named insured by blood, marriage or adoption, including a minor in the custody of the named insured, or such related person,

whether or not temporarily residing elsewhere.

Exclusions

This coverage does not apply to bodily injury to:

1. any person who, at the time of the accident,

AUTO "1100037090611070000353119"

Case ID: 131001095

a)  is the owner of one or more registered motor vehicles for which Financial Responsibility is not provided; or

b)  is occupying or when struck by a motor vehicle owned by that person for which Financial Responsibility is not provided.

2.  any person while occupying a motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under Title 75 or a recreational vehicle not intended for highway use;

3.  any person other than the named insured or any relative, who knowingly converts a motor vehicle if the bodily injury arises out of the maintenance or use of the converted vehicle;

4.  any person when the conduct of that person contributed to the bodily injury sustained by that person, while
a)  intentionally injuring or attempting to intentionally injure himself or another,
b)  committing a felony, or
c)  seeking to elude lawful apprehension or arrest by a law enforcement official;

5.  any person engaged in the business of repairing, servicing, or otherwise maintaining motor vehicles if the bodily injury arises out of that business unless the conduct occurs off the business premises;

6.  any person not occupying a motor vehicle, other than the named insured or any relative, if the accident occurs outside the Commonwealth of Pennsylvania;

7.  any person while maintaining or using a motor vehicle while located for use as a residence or premises;

8.  any person due to war, whether or not declared, civil war, insurrection, revolution or rebellion or any accompanying acts or conditions; and

9.  any person caused by nuclear radioactivity or explosion;

10.  any person arising out of the participation in any prearranged, organized, or spontaneous:
a)  racing contest;
b)  speed contest; or
c)  use of an auto at a track or course designed or used for racing or high performance driving;
or in practice or preparation for any contest or use of this type.

## Policy Period; Territory

This coverage applies only to accidents which occur on or after October 1, 1984 during the policy period and within the United States of America, its territories and possessions or Canada.

## Limits Of Liability

1.  Our liability for benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident is limited to the amount shown in the Policy Declarations; or

2.  If the Policy Declarations shows that Coverage CE—Combination Package applies, we will pay:

| Benefit | Limit |
|---|---|
| a)  Medical Expenses | Subject to Aggregate Limit |
| b)  Income Loss | Subject to Aggregate Limit |
| c)  Funeral Expenses | Subject to amount shown in the Policy Declarations |
| d)  Accidental Death | Subject to amount shown in the Policy Declarations |

The Aggregate Limit is shown in the Policy Declarations. The Aggregate Limit is the total amount payable for all benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident for expenses incurred within three years from the date of the accident. The limits shown in the Policy Declarations for Funeral Expenses and Accidental Death are included within the Aggregate Limit for Coverage CE and not in addition to the Aggregate Limit.

Page 11

Case ID: 131001095

Benefits shall not be increased for any eligible person by adding together the limits of liability:
a)  under this policy because there are multiple motor vehicles covered under this policy, or
b)  under multiple motor vehicle policies covering an eligible person for the same loss.

Any amount payable by us under the terms of this coverage:
a)  for medical expenses greater than $100,000 shall be excess over any amount paid or payable under the Catastrophic Loss Trust Fund, and
b)  for First Party Benefits shall be excess over all benefits that an eligible person receives or is entitled to receive under any workers' compensation law or similar law.

## Priorities Of Policies

We will pay First Party Benefits in accordance with the following order of priority. We will not pay if there is another insurer at a higher level of priority. The priority order is:

First — The insurer providing benefits to the eligible person as a named insured.

Second — The insurer providing benefits to the eligible person as a relative who is not a named insured under another policy providing coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law.

Third — The insurer of the motor vehicle which the eligible person is occupying at the time of the accident.

Fourth — The insurer providing benefits on any motor vehicle involved in the accident if the eligible person is not:

a)  occupying a motor vehicle, and
b)  provided coverage under any other policy.

The first category listed above is the highest level of priority and the fourth category listed above is the lowest level of priority.

If two or more policies have equal priority:
a)  the insurer against which the claim is first made shall process and pay the claim as if wholly responsible.
b)  the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

For the purposes of determining priorities, an unoccupied parked motor vehicle is not a motor vehicle involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

## Action Against Allstate

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 2 — First Party Benefits Coverage, unless there is full compliance with all policy terms and such action is commenced within one year of the accidental death or one year after the date the medical expenses, income loss, or funeral expenses for which coverage is sought were actually incurred by an insured person.

## Notice to Allstate

If an accident occurs, written notice adequately identifying the eligible person and reasonably accessible facts concerning the time, place and circumstances of the accident shall be given as soon as practicable by or on behalf of each eligible person to us or any of our authorized agents.

## Proof of Claim; Medical Reports

As soon as practicable the eligible person, or someone on his behalf, shall give us written proof of claim, under oath if required, fully describing the nature and extent of bodily injury, treatment and rehabilitation received and contemplated and other

Page 12



information to assist us in determining the amount due and payable.

Proof of claim shall be made upon forms furnished by us unless we fail to supply such forms within 15 days after receiving notice of claim.

The eligible person shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the costs of such examinations.

The eligible person (or, in the event of such person's incapacity or death, his legal representative) shall, if we request, sign papers, to enable us to obtain medical reports and copies of records. A copy of such medical report will be forwarded to such eligible person upon his written request.

If benefits for income loss are claimed, the eligible person presenting such claim shall authorize us to obtain details of all earnings paid to him by an employer or earned by him since the time of the injury or during the year immediately preceding the date of the accident.

## Customary Charges for Treatment
The amount we will pay a person or institution providing treatment, accommodations, products or services to an eligible person for an injury covered by medical expense benefits shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

## Non-Duplication of Benefits
No eligible person shall recover duplicate benefits for the same elements of loss under this or any other similar automobile insurance including self-insurance.

## Other Insurance
If the eligible person is the named insured, a relative, or the occupant of an insured motor vehicle, we shall not be liable for a greater proportion of any loss than this policy's limit of liability bears to the sum of all limits of liability of all applicable insurance and self-insurance. The maximum recovery shall not exceed the amount

payable under the insurance or self-insurance providing the highest dollar limit.

If the eligible person is not the named insured, a relative, or the occupant of an insured motor vehicle, our share shall be based on the number of motor vehicles involved in the accident.

## PART 3
## UNINSURED MOTORISTS INSURANCE COVERAGE SS

If a limit of liability is shown on your Policy Declarations for Uninsured Motorists Insurance — Coverage SS, we will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Bodily injury must be caused by accident and arise out of ownership, maintenance, or use of an uninsured auto. We will not pay any punitive or exemplary damages. No judgment for damages arising out of a suit brought against the owner or operator of an uninsured auto is binding on us.

## Insured Persons
These persons are insured under Coverage SS:
1. You and any resident relative,

2. Any other person while in, on, getting into or out of your insured auto with your permission, and

3. Any other person who is legally entitled to recover because of bodily injury to you, a resident relative, or an occupant of your insured auto with your permission.

## An Insured auto is a motor vehicle:
1. Described on the Policy Declarations. This includes the motor vehicle you replace it with.

2. You acquire ownership of during the policy period. This additional motor vehicle will be covered if Allstate insures all other private passenger motor vehicles you own. You must, however, notify Allstate within 30 days after

Case ID: 131001095

you acquire the motor vehicle and pay any additional premium.

3. Not owned by you or a resident relative if being temporarily used while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed. The motor vehicle must be used with the owner's permission. It can't be furnished for the regular use of you or any resident relative.

4. Not owned by you or a resident relative, being operated by you with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person.

5. Not made available for public hire by an insured person.

## An uninsured auto is:

1. A motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident.

2. A motor vehicle for which the insurer denies coverage, becomes insolvent, or is involved in insolvency proceedings.

3. A hit-and-run motor vehicle which causes bodily injury to an insured person as the result of a motor vehicle accident. The identity of either the operator or owner must be unknown. The accident must be reported to the police or proper governmental authority as soon as practicable. We must be notified within 30 days.

   If the insured person was occupying the vehicle at the time of the accident, we have a right to inspect it. If the hit-and-run motor vehicle caused the injury without physical contact with the insured person or the vehicle the insured person was occupying, the facts of the accident must be verified by a disinterested witness.

## An uninsured auto is not:

1. An underinsured auto.

2. A motor vehicle insured for bodily injury liability under Part 1 of this policy.

3. A motor vehicle owned by any federal, state or local government or agency.

4. A motor vehicle owned by, furnished or available for the regular use of you or any resident relative.

5. A motor vehicle that is lawfully self-insured.

## Definitions

1. "Allstate," "We," "Us" or "Our" means the company named on the Policy Declarations of the policy.

2. "Bodily Injury" means bodily injury, sickness, disease or death.

3. "Motor Vehicle" means a land motor vehicle or attached trailer other than:
   a) a vehicle or other equipment designed for use principally off public roads, or
   b) a vehicle operated on rails or crawler-treads, or
   c) a vehicle when used as a residence or premises.

4. "Noneconomic Loss" means pain and suffering and other nonmonetary detriment.

5. "Resident" means a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children temporarily living away from home will be considered residents if they intend to resume residing in your household.

6. "Serious Injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

7. "You" or "Your" means the resident policyholder named on the Policy Declarations and that policyholder's resident spouse.

AUTO *11D0037090611070003353121*

Case ID: 131001095

## Exclusions – What is not covered

Allstate will not pay any damages an insured person is legally entitled to recover because of:

1. bodily injury to any person who makes a settlement without our written consent, if such agreement adversely affects our rights.

2. bodily injury, if the payment would directly or indirectly benefit any workers compensation or disability benefits insurer, including a self-insurer.

3. bodily injury while in, on, getting into or out of, or when struck by an uninsured motor vehicle owned by you or a resident relative.

4. bodily injury arising out of the participation in any prearranged, organized, or spontaneous:
   a) racing contest;
   b) speed contest; or
   c) use of an auto at a track or course designed or used for racing or high performance driving;
   or in practice or preparation for any contest or use of this type.

5. bodily injury to anyone while in, on, getting into or out of or when struck by a motor vehicle owned or leased by you or a resident relative which is not insured for Uninsured Motorists Coverage under this policy.

6. bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a non-owned motor vehicle not insured for Uninsured Motorists Coverage under this policy if that non-owned motor vehicle is available for the regular use of you or a resident relative.

## Limits of Liability

1. Limited Tort Insurance
   If the Policy Declarations indicate you elected Limited Tort insurance for Coverage SS, you or any resident relative may seek compensation for economic loss sustained due to bodily injury in a covered motor vehicle accident. You or any resident relative are precluded from maintaining an action for any noneconomic loss unless the injury sustained is a serious injury or the at-fault person:
   a) is convicted of, or accepts Accelerated Rehabilitative Disposition for, driving under the influence of alcohol or a controlled substance in the accident; or
   b) is operating a motor vehicle registered in another state; or
   c) intends to injure himself or another person.

   You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles. Full tort rights will be retained by you or any resident relative for claims involving a motor vehicle which has a defect caused by, or not corrected by, an act or omission in the course of such a business, other than a defect in a motor vehicle which is operated by such business.

   You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

   Whenever the at-fault person has not maintained financial responsibility, you or a resident relative cannot maintain an action for noneconomic loss for bodily injury unless one of the above conditions are met.

2. Full Tort Insurance
   If the Policy Declarations indicate you elected Full Tort insurance for Coverage SS, you or any resident relative may seek compensation for noneconomic loss and economic loss sustained in a covered motor vehicle accident caused by another person.

3. When limits of two or more insured autos may be stacked:
   If the Policy Declarations indicate you elected to stack limits for two or more insured autos

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

together under Coverage SS, the following Limits of Liability apply.

The Coverage SS limit shown on the Policy Declarations for:
a) "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as result of that bodily injury.

When the limits of two or more insured autos are stacked, our maximum limit of liability for damages to you or a resident relative in any one accident is the sum of the "each person" limits for each insured auto shown on the Policy Declarations.

b) "each accident" is the maximum that we will pay for damages arising out of bodily injury to two or more persons in any one motor vehicle accident.

When the limits of two or more insured autos are stacked, subject to the limit for "each person", our maximum limit of liability for damages to two or more persons in any one accident is the sum of the "each accident" limits for each insured auto shown on the Policy Declarations.

4. When the limits of two or more insured autos may not be stacked:
If the Policy Declarations indicate you did not elect to stack limits for two or more insured autos together under Coverage SS, the following Limits of Liability apply.

The Coverage SS limit shown on the Policy Declarations for:
a) "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.
b) "each accident" is the maximum that we will pay for damages arising out of bodily

injury to two or more persons in any one motor vehicle accident.

These limits are the maximum Allstate will pay for any one motor vehicle accident regardless of the number of:
a) claims made;
b) vehicles or persons shown on the Policy Declarations; or
c) vehicles involved in the accident.

5. If bodily injury is sustained in a motor vehicle accident by any person other than you or a resident relative, our maximum limit of liability is the limit of liability shown on the Policy Declarations applicable to the vehicle the insured person was occupying at the time of the motor vehicle accident. This is the most we will pay regardless of the number of:
a) claims made;
b) vehicles or persons shown on the Policy Declarations; or
c) vehicles involved in the motor vehicle accident;

whether the Policy Declarations indicate stacking or non-stacking of limits. The Coverage SS—Uninsured Motorists Insurance limits apply to each insured motor vehicle as shown on the Policy Declarations.

6. Subject to the above limits of liability, damages but not limits payable will be reduced by:
a) All amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy.
b) All amounts paid or payable under any Personal Injury Protection, any First Party Benefits Coverage, any automobile medical payments coverage and any other sources of benefits specified under Section 1722 of Title 75 of the Pennsylvania Consolidated Statutes.

### Non-Duplication of Benefits
No injured person will recover duplicate benefits for the same elements of loss under this or any other

AUTO "1 100037090611076003553122"

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

uninsured motorists coverage including approved plans of self-insurance or First Party Benefits Coverage.

### If There Is Other Insurance

1. **When the limits of two or more insured autos may be stacked:**
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after all other collectible insurance has been exhausted.

If more than one policy applies to the motor vehicle accident on a primary basis, we will bear our proportionate share, as it applies to the total limits available, up to the full limits of liability for this coverage under this policy.

2. **When limits of two or more insured autos may not be stacked:**
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after all other collectible insurance has been exhausted.

If more than one policy applies to the motor vehicle accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorists benefits. We will bear our proportionate share, as it applies to the total limits available, up to the full limits of liability for this coverage under this policy. This applies no matter how many autos or auto policies may be involved whether written by Allstate or not.

### Proof of Claim; Medical Reports

As soon as possible, you or any other person making claim must give us written proof of claim including all details reasonably required by us to determine the amounts payable.

The injured person may be required to take physical examinations by physicians selected by us, as often as we reasonably require. The injured person or his representative must authorize us to obtain medical reports and copies of records.

### Assistance and Cooperation of the Insured

We may require the insured person to take proper action to preserve all rights to recover damages from anyone responsible for the bodily injury. An insured person must assist us in securing evidence, obtaining witnesses and in conducting suits. This includes submitting to signed statements and disclosing all facts.

### Trust Agreement

When we pay any person under this coverage:

1. We are not entitled to repayment until after the person we have paid under this coverage has been compensated for all damages that person was legally entitled to recover. We are entitled to repayment of amounts paid by us and related collection expenses out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer.

2. All rights of recovery against any responsible party or insurer must be maintained and preserved for our benefit.

3. If we ask, injured persons must take appropriate action in their names to recover damages from any responsible party or insurer. We will select the attorney and pay all related costs and fees. We will not ask the injured person to sue the insured or any insolvent insurer or any insurer involved in insolvency proceedings.

Case ID: 131001095

## Payment of Loss by Allstate

Any amount due is payable to the injured person, to the parent or guardian of an injured minor, or to the spouse of any injured person who dies. However, we may pay any person lawfully entitled to recover the damages.

## Action Against Allstate

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 3 —Uninsured Motorists Insurance, unless there is full compliance with all policy terms and, except as provided below, such action is commenced within two years after the date of the accident.

If an insured person commences a timely action against the owner or operator of an uninsured auto to recover damages for loss arising out of the accident and gives us written notice of such action within 30 days after such action is commenced, an action against us related to the existence or amount of coverage, or the amount of loss for which coverage is sought, may be brought more than two years after the date of the accident, but in no event later than the earliest of the following to occur:

1. one year after entry of a final judgment or other court order terminating such lawsuit against the owner or operator of an uninsured auto; or

2. one year after we deny coverage.

If any insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

## If We Cannot Agree

If the insured person and we do not agree:
1. on that person's right to receive damages, or

2. on the amount of those damages,

then upon the written request of either party the disagreement will be settled by arbitration as provided under the Pennsylvania Uniform Arbitration Act of 1927. The arbitrators will not have the power to decide any dispute regarding the nature or amount of coverage provided by the policy or claims for damages outside the terms of the policy including bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees or interest.

Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the Policy Declarations is located. The arbitrators will be selected as follows: You select one arbitrator and we select another. The two arbitrators will select a third. If they can't agree on a third arbitrator within 30 days, the Judge of the Court of Record in the county in which your address shown on the Policy Declarations is located will appoint the third arbitrator.

You will pay the arbitrator you select. We will pay the one we select. The expense of the third arbitrator and all other expenses will be shared equally. A decision agreed to by two of the three arbitrators will be binding and may be entered as a judgment in a proper court.

We do not agree to arbitrate any claims for bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees or interest.

No one may pursue arbitration under Part 3 — Uninsured Motorists Insurance unless there is full compliance with all policy terms. No one may pursue arbitration under Part 3—Uninsured Motorists Insurance unless the demand for arbitration is made within two years after the date of the accident or, if later, within one year after the insurer of the owner or operator of an uninsured vehicle denies coverage or is declared insolvent by the responsible regulator.

However, if an insured person commences a timely action against the owner or operator of an uninsured vehicle to recover damages for loss arising out of the accident and gives us written notice of such action within 30 days after such action is commenced, the insured person or we may demand arbitration more than two years after the date of the accident, but in no event later than one year after entry of a final judgment or other court order terminating such lawsuit against the owner or operator of an uninsured auto.

AUTO *11D003709081107G0G353123*

Case ID: 131001095

Neither of the parties shall be entitled to arbitrate any claims in a representative capacity or as a member of a class. No arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims in arbitration.

## UNDERINSURED MOTORISTS INSURANCE COVERAGE SU

If a limit of liability is shown on your Policy Declarations for Underinsured Motorists Insurance — Coverage SU, we will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured auto. Bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured auto. We will not pay any punitive or exemplary damages.

No judgment for damages arising out of a suit brought against the owner or operator of an underinsured auto is binding on us unless:
1. We received reasonable notice of the pendency of the suit resulting in the judgment; and

2. We had a reasonable opportunity to protect our interests in the suit.

### Insured Persons
These persons are insured under Coverage SU:
1. You and any resident relative,

2. Any other person while in, on, getting into or out of your insured auto with your permission, and

3. Any other person who is legally entitled to recover because of bodily injury to you, a resident relative, or an occupant of your insured auto with your permission.

### An insured auto is a motor vehicle:
1. Described on the Policy Declarations. This includes the motor vehicle you replace it with.

2. You acquire ownership of during the policy period. This additional motor vehicle will be covered if Allstate insures all other private passenger motor vehicles you own. You must, however, notify Allstate within 30 days after you acquire the motor vehicle and pay any additional premium.

3. Not owned by you or a resident relative if being temporarily used while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed. The motor vehicle must be used with the owner's permission. It can't be furnished for the regular use of you or any resident relative.

4. Not owned by you or a resident relative being operated by you with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person.

5. Not made available for public hire by an insured person.

### An underinsured auto is:
A motor vehicle which has bodily injury liability protection in effect at the time of the accident, but its limit for bodily injury liability is less than the damages the insured person is legally entitled to recover.

### An underinsured auto is not:
1. An uninsured auto.

2. A motor vehicle insured for bodily injury liability under Part 1 of this policy.

3. A motor vehicle owned by the United States.

4. A motor vehicle owned by, or furnished or available for the regular use of you or any resident relative.

### Definitions
1. "Allstate," "We," "Us" or "Our" means the company named on the Policy Declarations of the policy.

2. "Bodily injury" means bodily injury, sickness, disease or death.

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

3. "Motor Vehicle" means a land motor vehicle or attached trailer other than:
   a) a vehicle or other equipment designed for use principally off public roads, or
   b) a vehicle operated on rails or crawler-treads, or
   c) a vehicle when used as a residence or premises.

4. "Noneconomic Loss" means pain and suffering and other nonmonetary detriment.

5. "Resident" means a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children temporarily living away from home will be considered residents if they intend to resume residing in your household.

6. "Serious Injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

7. "You" or "Your" means the resident policyholder named on the Policy Declarations and that policyholder's resident spouse.

## Exclusions – What is not covered

Allstate will not pay any damages an insured person is legally entitled to recover because of:

1. bodily injury to any person who makes a settlement without our written consent, if such agreement adversely affects our rights.

2. bodily injury, if the payment would directly or indirectly benefit any workers compensation or disability benefits insurer, including a self-insurer.

3. bodily injury while in, on, getting into or out of, or when struck by an underinsured motor vehicle owned by you or a resident relative.

4. bodily injury arising out of the participation in any prearranged, organized, or spontaneous:
   a) racing contest;
   b) speed contest; or

c) use of an auto at a track or course designed or used for racing or high performance driving;
or in practice or preparation for any contest or use of this type.

5. bodily injury to anyone while in, on, getting into or out of or when struck by a motor vehicle owned or leased by you or a resident relative which is not insured for Underinsured Motorists Coverage under this policy.

6. bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a non-owned motor vehicle not insured for Underinsured Motorists Coverage under this policy if that non-owned motor vehicle is available for the regular use of you or a resident relative.

## Limits of Liability

1. Limited Tort Insurance
   If the Policy Declarations indicate you elected Limited Tort insurance for Coverage SU, you or any resident relative may seek compensation for economic loss sustained due to bodily injury in a covered motor vehicle accident. You or any resident relative are precluded from maintaining an action for any noneconomic loss unless the injury sustained is a serious injury or the at-fault person:
   a) is convicted of, or accepts Accelerated Rehabilitative Disposition for, driving under the influence of alcohol or a controlled substance in the accident; or
   b) is operating a motor vehicle registered in another state; or
   c) intends to injure himself or another person.

   You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles. Full tort rights will be retained by you or any resident relative for claims involving a motor vehicle which has a defect caused by, or not corrected by, an act or

Page 20



Case ID: 131001095

omission in the course of such a business, other than a defect in a motor vehicle which is operated by such business.

You or any resident relative otherwise bound by the Limited Tort option shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

Whenever the at-fault person has not maintained financial responsibility, you or a resident relative cannot maintain an action for noneconomic loss for bodily injury unless one of the above conditions are met.

2.  **Full Tort Insurance**
    If the Policy Declarations indicate you elected Full Tort Insurance for Coverage SU, you or any resident relative may seek compensation for noneconomic loss and economic loss sustained in a covered motor vehicle accident caused by another person.

3.  **When limits of two or more insured autos may be stacked:**
    If the Policy Declarations indicate you elected to stack limits for two or more insured autos together under Coverage SU, the following Limits of Liability apply.

    The Coverage SU limit shown on the Policy Declarations for:
    a)  "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as result of that bodily injury.

    When the limits of two or more insured autos are stacked, our maximum limit of liability for damages to you or a resident relative in any one accident is the sum of the "each person" limits for each insured auto shown on the Policy Declarations.

    b)  "each accident" is the maximum that we will pay for damages arising out of bodily

injury to two or more persons in any one motor vehicle accident.

When the limits of two or more insured autos are stacked, subject to the limit for "each person", our maximum limit of liability for damages to two or more persons in any one accident is the sum of the "each accident" limits for each insured auto shown on the Policy Declarations.

4.  **When the limits of two or more insured autos may not be stacked:**
    If the Policy Declarations indicate you did not elect to stack limits for two or more insured autos together under Coverage SU, the following Limits of Liability apply.

    The Coverage SU limit shown on the Policy Declarations for:
    a)  "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.
    b)  "each accident" is the maximum that we will pay for damages arising out of bodily injury to two or more persons in any one motor vehicle accident.

    These limits are the maximum Allstate will pay for any one motor vehicle accident regardless of the number of:
    a)  claims made;
    b)  vehicles or persons stated on the Policy Declarations; or
    c)  vehicles involved in the accident.

5.  If bodily injury is sustained in a motor vehicle accident by any person other than you or a resident relative, our maximum limit of liability is the limit of liability shown on the Policy Declarations applicable to the vehicle the insured person was occupying at the time of the motor vehicle accident. This is the most we will pay regardless of the number of:
    a)  claims made;

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

b) vehicles or persons shown on the Policy Declarations; or
c) vehicles involved in the motor vehicle accident,

whether the Policy Declarations indicate stacking or non-stacking of limits. The Coverage SU—Underinsured Motorists Insurance limits apply to each insured motor vehicle as shown on the Policy Declarations.

6. We are not obligated to make any payment for bodily injury under this coverage which arises out of the use of an underinsured auto until after the limits of liability for all motor vehicle liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

7. Subject to the above limits of liability, damages but not limits payable will be reduced by:
a) all amounts paid by the owner or operator of the underinsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy.
b) all amounts paid or payable under any Personal Injury Protection, any First Party Benefits Coverage, any automobile medical payments coverage and any other sources of benefits specified under Section 1722 of Title 75 of the Pennsylvania Consolidated Statutes.

## Non-Duplication of Benefits

No injured person will recover duplicate benefits for the same elements of loss under this or any other underinsured motorists coverage including approved plans of self-insurance or First Party Benefits Coverage.

## If There Is Other Insurance

1. When the limits of two or more insured autos may be stacked:
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to

recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after all other collectible insurance has been exhausted.

If more than one policy applies to the accident on a primary basis, we will bear our proportionate share, as it applies to the total limits available, up to the full limits of liability for this coverage under this policy.

2. When limits of two or more insured autos may not be stacked:
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will pay up to your policy limit, but only after all other collectible insurance has been exhausted.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for underinsured motorists benefits. We will bear our proportionate share, as it applies to the total limits available, up to the full limits of liability for this coverage under this policy. This applies no matter how many autos or auto policies may be involved whether written by Allstate or not.

## Proof of Claim; Medical Reports

As soon as possible, you or any other person making claim must give us written proof of claim including all details reasonably required by us to determine the amounts payable.

The injured person may be required to take physical examinations by physicians selected by us, as often as we reasonably require. The injured person or his representative must authorize us to obtain medical reports and copies of records.

AUTO *11000370905110700035312S*

Case ID: 131001095

## Assistance and Cooperation of the Insured

We may require the insured person to take proper action to preserve all rights to recover damages from anyone responsible for the bodily injury. An insured person must assist us in securing evidence, obtaining witnesses and in conducting suits. This includes submitting to signed statements and disclosing all facts.

## Trust Agreement

When we pay any person under this coverage:

1. We are not entitled to repayment until after the person we have paid under this coverage has been compensated for all damages that person was legally entitled to recover. We are entitled to repayment of amounts paid by us and related collection expenses out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer.

2. All rights of recovery against any responsible party or insurer must be maintained and preserved for our benefit.

3. If we ask, injured persons must take appropriate action in their names to recover damages from any responsible party or insurer. We will select the attorney and pay all related costs and fees. We will not ask the injured person to sue the insured of any insolvent insurer or any insurer involved in insolvency proceedings.

## Payment of Loss by Allstate

Any amount due is payable to the injured person, to the parent or guardian of an injured minor, or to the spouse of any injured person who dies. However, we may pay any person lawfully entitled to recover the damages.

## Actions Against Allstate

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 3 —Underinsured Motorists Insurance, unless there is full compliance with all policy terms and, except as provided below, such action is

commenced within two years after the date of the accident.

If an insured person commences a timely action against the owner or operator of an underinsured auto to recover damages for loss arising out of the accident and gives us written notice of such action within 30 days after such action is commenced, an action against us related to the existence or amount of coverage, or the amount of loss for which coverage is sought, may be brought more than two years after the date of the accident, but in no event later than the earliest of the following to occur:

1. one year after entry of a final judgment or other court order terminating such lawsuit against the owner or operator of an underinsured auto; or

2. one year after we deny coverage.

If any insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

## If We Cannot Agree

If the insured person and we do not agree:

1. on that person's right to receive damages, or

2. on the amount of those damages,

then upon the written request of either party the disagreement will be settled by arbitration as provided under the Pennsylvania Uniform Arbitration Act of 1927. The arbitrators will not have the power to decide any dispute regarding the nature or amount of coverage provided by the policy or claims for damages outside the terms of the policy including bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees or interest.

Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the Policy Declarations is located. The arbitrators will be selected as follows: You select one arbitrator and we select another. The two arbitrators will select a third. If they can't agree on a third arbitrator within 30 days, the Judge of the Court of Record in the county in which your address shown

Page 23

## Allstate Fire and Casualty Insurance Company

on the Policy Declarations is located will appoint the third arbitrator.

You will pay the arbitrator you select. We will pay the one we select. The expense of the third arbitrator and all other expenses will be shared equally. A decision agreed to by two of the three arbitrators will be binding and may be entered as a judgment in a proper court.

We do not agree to arbitrate any claims for bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees or interest.

No one may pursue arbitration under Part 3 — Underinsured Motorists Insurance unless there is full compliance with all policy terms. No one may pursue arbitration under Part 3 — Underinsured Motorists Insurance unless the demand for arbitration is made within two years after the date of the accident or, if later, within one year after the insurer of the owner or operator of an underinsured vehicle denies coverage or is declared insolvent by the responsible regulator.

However, if an insured person commences a timely action against the owner or operator of an underinsured vehicle to recover damages for loss arising out of the accident and gives us written notice of such action within 30 days after such action is commenced, the insured person or we may demand arbitration more than two years after the date of the accident, but in no event later than one year after entry of a final judgment or other court order terminating such lawsuit against the owner or operator of an underinsured auto.

Neither of the parties shall be entitled to arbitrate any claims in a representative capacity or as a member of a class. No arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims in arbitration.

## PART 4

## PROTECTION AGAINST LOSS TO THE AUTO COVERAGES DD, HE, HF, HG, HH, JJ , UU, ZA, ZZ

The following coverages apply when indicated on the Policy Declarations. Additional payments, autos

insured, definitions, exclusions, and other information applicable to all these coverages appear beginning on page 25.

## COVERAGE DD
## Auto Collision Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto (including insured loss to an attached trailer) from a collision with another object or by upset of that auto or trailer. The deductible amount won't be subtracted from the loss payment in collisions involving your insured auto and another auto insured by us.

## COVERAGE HH
## Auto Comprehensive Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

The deductible amount will not be subtracted from the loss payment when the loss is caused by a peril listed under COVERAGE HE.

By agreement between you and Allstate, the deductible will not be subtracted from a glass loss if repaired rather than replaced.

## COVERAGE HE
## Auto Fire, Lightning and Transportation Insurance

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto due to:
1. fire or lightning.

2. smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the auto is located.

3. stranding, sinking, burning, collision or derailment of any conveyance in or upon

AUTO *11009370906110700035312 6*

Case ID: 131001095

which the auto is being transported on land or on water.

## COVERAGE HF
### Auto Theft Insurance
Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto caused by theft or larceny.

## COVERAGE HG
### Auto Fire, Lightning, Transportation and Theft Insurance
Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto caused by any peril listed under COVERAGE HE or COVERAGE HF above.

## COVERAGE JJ
### Towing and Labor Costs
Allstate will pay costs for labor done at the initial place of disablement of your insured auto or a non-owned auto. We will also pay for towing made necessary by the disablement. The total limit of our liability for each loss is shown on the Policy Declarations.

## COVERAGE UU
### Rental Reimbursement Coverage
If you have collision or comprehensive coverage under this policy and the loss involves either coverage, Allstate will repay you for your cost of renting an auto from a rental agency or garage. We will not pay more than the dollar amount per day shown on the Policy Declarations. We won't pay mileage charges.

If your insured auto is stolen, payment for transportation expenses will be made under the terms of paragraph 3, under " Additional Payments Allstate Will Make". However, the limits for this coverage will apply if they exceed the limits stated under "Additional Payments Allstate Will Make".

If your insured auto is disabled by collision or comprehensive loss, coverage starts the day of the loss. If it is drivable, coverage starts the day the auto is taken to the garage for repairs.

Coverage ends when whichever of the following occurs first:
1. if the auto is disabled by a collision or comprehensive loss, completion of repairs or replacement of the auto;

2. if the auto is stolen, when we offer settlement or your auto is returned to use; or

3. thirty full days of coverage.

## COVERAGE ZA
### Sound System Coverage
Allstate will pay for loss to a sound system permanently installed in your auto by bolts, brackets or other means, its antennas or other apparatus in or on your auto used specifically with that system.

Coverage ZA applies only if comprehensive insurance is in effect under this policy. This coverage makes sound systems, and antennas and other apparatus used specifically with them, insured property under the terms of both collision and comprehensive insurance. The limit of our liability is shown on the Policy Declarations.

## COVERAGE ZZ
### Tape Coverage
Allstate will pay for loss to any tapes or similar items used with auto sound systems. Coverage applies to property you or a resident relative own that is in or on your insured auto at the time of loss. The total limit of our liability for each loss is shown on the Policy Declarations.

This coverage applies only if you have comprehensive insurance under this policy. Coverage ZZ makes tapes or similar items insured property under your comprehensive insurance.

### Additional Payments Allstate Will Make
1. Allstate will pay up to $200 for loss of clothing and personal luggage, including its contents, belonging to you or a resident relative while it is in or upon your insured auto. This provision does not apply if the insured auto is a travel-trailer.

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

This coverage applies only when:
a) the loss is caused by collision and you have purchased collision insurance.
b) the entire auto is stolen, and you have purchased comprehensive insurance.
c) physical damage is done to the auto and to the clothing and luggage caused by earthquake, explosion, falling objects, fire, lightning, or flood and you have purchased comprehensive insurance.

2. Allstate will repay you up to $10 for the cost of transportation from the place of theft of your insured auto or disablement of the auto to your destination, if
a) the entire auto is stolen and you have comprehensive insurance under this policy.
b) the auto is disabled by a collision or comprehensive loss, and you have the coverage under this policy applicable to the loss.

This provision does not apply if the insured auto is a travel-trailer.

3. If you have comprehensive insurance under this policy, Allstate will repay you up to $10 a day but not more than $300 for each loss for the cost of transportation when the entire auto is stolen. This coverage begins 48 hours after you report the theft to us, and ends when we offer settlement or your auto is returned to use.

4. If you have purchased collision or comprehensive insurance under this policy, Allstate will pay general average and salvage charges imposed when your insured auto is being transported.

### Insured Autos
1. Any auto described on the Policy Declarations. This includes the four wheel private passenger auto or utility auto you replace it with if you notify Allstate within 30 days of the replacement and pay the additional premium. Coverage will not continue after 30 days if we are not notified of the replacement auto.

2. An additional four wheel private passenger auto or utility auto you become the owner of during the policy period. This auto will be covered if Allstate insures all other private passenger autos or utility autos you own. You must, however, tell us within 30 days of acquiring the auto. You must pay any additional premium. Coverage will not continue after 30 days if we are not notified of the additional auto.

3. A substitute four wheel private passenger auto or utility auto, not owned by you or a resident relative, temporarily used with the permission of the owner while your insured auto is being serviced or repaired, or if your insured auto is stolen or destroyed.

4. A non-owned four wheel private passenger auto or utility auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of you or any resident relative.

5. A trailer while attached to an insured auto. This trailer must be designed for use with a private passenger auto. This trailer can't be used for business purposes with other than a private passenger auto or utility auto. Home, office store, display, or passenger trailers, travel-trailers or camper units are not covered unless described on the Policy Declarations.

### Definitions
1. "Allstate", "We", "Us" or "Our" means the company named on the Policy Declarations of the policy.

2. "Auto" means a land motor vehicle designed for use principally on public roads and which is not principally used for commercial purposes other than farming.

3. "Camper Unit" means a demountable unit designed to be used as temporary living quarters, including all equipment and accessories built into and forming a permanent



AUTO *11000370906110700020531127*

part of the unit. A camper unit does not include:

a) caps, tops or canopies designed for use as protection of the cargo area of a utility auto; or

b) radio or television antennas, awnings, cabanas, or equipment designed to create additional off-highway living facilities.

4. "Motor Home" means a self-propelled vehicle equipped, designed or used as a living quarters.

5. "Resident" means a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household.

6. "Sound System" means any device within the insured auto designed for:

a) voice or video transmission, or for voice, video or radar signal reception; or

b) recording or playing back recorded material; or

c) supplying power to cellular or similar telephone equipment,

and which is installed in a location other than the one designed by the auto's manufacturer for that device.

7. "Travel-trailer" means a trailer of the house, cabin or camping type equipped or used as a living quarters.

8. "Utility Auto" means an auto with a gross vehicle weight not exceeding 9,000 pounds. This auto must be of the pick-up body, sedan delivery or panel truck type and must not be principally used for commercial purposes other than farming.

9. "You" or "Your" means the resident policyholder named on the Policy Declarations and that policyholder's resident spouse.

## Exclusions—What is not covered
These coverages don't apply to:

1. loss caused intentionally by or at the direction of an insured person.

2. any auto used for the transportation of people or property for a fee. This exclusion does not apply to shared-expense car pools.

3. any damage or loss resulting from any act of war, insurrection, rebellion or revolution.

4. loss to any non-owned auto used in auto business operations such as repairing, servicing, testing, washing, parking, storing or selling of autos.

5. loss due to radioactive contamination.

6. damage resulting from wear and tear, freezing, mechanical or electrical breakdown unless the damage is the burning of wiring used to connect electrical components, or the result of other loss covered by this policy.

7. tires unless stolen or damaged by fire, malicious mischief or vandalism. Coverage is provided if the damage to tires occurs at the same time and from the same cause as other loss covered by this policy.

8. loss to any sound system within your auto.

Coverage under this Part also will not apply to any apparatus in or on the auto designed for use with that system.

This exclusion will not apply if you have purchased Coverage ZA.

9. loss to any tapes or similar items, unless you have Coverage ZZ under this policy.

10. loss to a camper unit whether or not mounted. This exclusion will not apply if the camper unit is described on the Policy Declarations.

11. loss to appliances, furniture, equipment and accessories that are not built into or that do

Case ID: 131001095

## Allstate Fire and Casualty Insurance Company

not form a permanent part of a motor home or a travel-trailer.

12. loss to your motor home or your travel-trailer while rented to anyone else unless a specific premium is shown on the Policy Declarations for the rented vehicle.

13. loss or damage arising out of the participation in any prearranged, organized, or spontaneous:
   a) racing contest;
   b) speed contest; or
   c) use of an auto at a track or course designed or used for racing or high performance driving;
   
   or in practice or preparation for any contest or use of this type.

### Right To Appraisal
Both you and Allstate have a right to demand an appraisal of the loss. Each will appoint and pay a qualified appraiser. Other appraisal expenses will be shared equally. The two appraisers, or a judge of a court of record will choose an umpire. Each appraiser will state the actual cash value and the amount of loss. If they disagree, they'll submit their differences to the umpire. A written decision by any two of these three persons will determine the amount of the loss.

### Payment Of Loss By Allstate
Allstate may pay for the loss in money, or may repair or replace the damaged or stolen property. We may, at any time before the loss is paid or the property is replaced, return at our own expense any stolen property, either to you or at our option to the address shown on the Policy Declarations, with payment for any resulting damage. We may take all or part of the property at the agreed or appraised value. We may settle any claim or loss either with you or the owner of the property.

### Limits of Liability
Allstate's limit of liability is the least of:

1. the actual cash value of the property or damaged part of the property at the time of loss, which may include a deduction for depreciation; or

2. the cost to repair the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations; or

3. $500, if the loss is to a covered trailer not described on the Policy Declarations.

Any applicable deductible amount is then subtracted.

If Allstate, at its option, elects to pay for the cost to repair or replace the property or part, Allstate's liability does not include any decrease in the property's value, however measured, resulting from the loss and/or repair or replacement. If repair or replacement results in the betterment of the property or part, you may be responsible, subject to applicable state laws and regulations, for the amount of the betterment.

An auto and attached trailer are considered separate autos, and you must pay the deductible, if any, on each. Only one deductible will apply to an auto with a mounted camper unit. If unmounted, a separated deductible will apply to the auto and camper unit.

When more than one coverage is applicable to the loss, you may recover under the broadest coverage but not both. However, any Sound System Coverage deductible will always apply.

### If There Is Other Insurance
If there is other insurance covering the loss at the time of the accident, we will pay only our share of any damages. Our share is determined by adding the limits of this insurance to the limit of all other insurance that applies on the same basis and finding the percentage of the total that our limits represent.

When this insurance covers a substitute auto or non-owned auto, we will pay only after all other collectible insurance has been exhausted.

When this insurance covers a replacement auto or additional auto, this policy won't apply if you have other collectible insurance.

Case ID: 131001095

When more than one coverage is applicable to the loss, you may recover under the broadest coverage but not both. However, any Coverage ZA deductible will always apply.

## Action Against Allstate

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 4—Protection Against Loss to The Auto, unless there is full compliance with all policy terms and such action is commenced within one year after the date of loss.

## Subrogation Rights

When we pay, your rights of recovery from anyone else become ours up to the amount we have paid. You must protect these rights and help us enforce them.

## Loss Payable Clause

If a Lienholder and/or Lessor is shown on the Policy Declarations, we may pay loss or damage under this policy to you and the Lienholder and/or Lessor as its interest may appear, except:

1.  Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of you.

2.  When the vehicle(s) is intentionally damaged, destroyed or concealed by or at the direction of you or any owner.

3.  When you or any owner makes fraudulent statement(s) or engages in fraudulent conduct in connection with any accident or loss for which coverage is sought.

The Lienholder and/or Lessor must notify us of any change in ownership or hazard that is known.

If you or any owner fails to render proof of loss within the time granted in the policy, the Lienholder and/or Lessor must do so within sixty days in the form and manner described in the policy. The Lienholder and/or Lessor are subject to the provisions of the policy relating to appraisal, time of payment and bringing suit.

We may cancel this policy according to its terms. We will notify the Lienholder and/or Lessor at least ten days prior to the date of cancellation that the cancellation is effective as to the interest of the Lienholder and/or Lessor.

Whenever we pay the Lienholder and/or Lessor any sum for loss or damage under this policy, we will be subrogated to the extent of payment to the rights of the party to whom payment was made. However, these subrogation provisions must in no way impair the rights of the Lienholder and/or Lessor to recover the full amount of its claim from the insured.

The Lienholder and/or Lessor has no greater rights under the provisions of the policy than the insured.

## What You Must Do If There Is A Loss

1.  As soon as possible, any person making claim must give us written proof of loss. It must include all details reasonably required by us. We have the right to inspect the damaged property. We may require any person making claim to file with us a sworn proof of loss. We may also require that person to submit to examinations under oath.

2.  Protect the auto from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect the auto, further loss is not covered.

3.  Report all theft losses promptly to the police.

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

In witness whereof, Allstate has caused this
policy to be signed by its Secretary and its
President at Northbrook, Illinois, and, if required
by state law, this policy shall not be binding
unless countersigned on the declarations page
by an authorized agent of Allstate.


Secretary


President, Personal Lines

Case ID: 131001095

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/16     Your Agent:   Hank Ricci Jr  (215) 762-6100
Policy Effective Date: June 15, 2009

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Pennsylvania
## Auto Amendatory Endorsement — AFA31-1

I.   In General Provisions, the following provision is added:

**Loss Reduction and Other Items**
From time to time and in our sole discretion, we may provide you, or allow others to provide you, with:

1.   items, memberships, special offers, merchandise, services, classes, seminars or other things of value designed to help you or other persons insured under this policy manage the risks you or they face, including, but not limited to, loss reduction or safety-related items; or

2.   items, memberships, special offers, merchandise, services, classes, seminars or things of any other type that we think may be of value to you or someone else insured under this policy.

These items, memberships, special offers, merchandise, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

II.   In Part 2, First Party Benefits Coverage, the Action Against Allstate provision is replaced by the following:

**Action Against Allstate**
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 2 — First Party Benefits Coverage, unless there is full compliance with all policy terms. If benefits have not been paid, such action must be commenced within four years after the date of the accident. If benefits have been paid, such action must be commenced within four years after the date of the last payment.

III.   In Part 3, Uninsured Motorists Insurance and Underinsured Motorists Insurance, the following changes are made:

A.   In Uninsured Motorists Insurance, under An uninsured auto is not, item 3 is deleted.

B.   In Uninsured Motorists Insurance, the Action Against Allstate provision is replaced by the following:

**Action Against Allstate**
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 3 — Uninsured Motorists Insurance, unless there is full compliance with all policy terms and such action is commenced within four years after the date of the accident.

AUTO *11000370900611070003531130*

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

Policy Number : 9 28 415515 06/15      Your Agent:   Hank Ricci Jr  (215) 752-6100
Policy Effective Date: June 15, 2009

If any insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

C.   In Uninsured Motorists Insurance, the If We Cannot Agree provision is replaced by the following:

### If We Cannot Agree
If the insured person and we do not agree on that person's right to receive damages or on the amount, then upon mutual consent, the disagreement will be settled by arbitration. Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the Policy Declarations is located. If the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction. Any and all lawsuits related in any way to this coverage shall be brought, heard, and decided in the county in which your address shown on the Policy Declarations is located. The following issues may be arbitrated:

1.   whether an insured person is legally entitled to recover damages from the owner or operator of an uninsured auto because of bodily injury to the insured person; or

2.   the amount of damages to which an insured person is legally entitled due to bodily injury, subject to the limits of liability as determined by the terms and conditions of this policy.

The arbitrators will not have the power to decide any dispute regarding the nature or the amount of the coverage provided by the policy or claims for damages outside the terms of the policy, including, but not limited to, claims for bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees and/or interest. Neither of the parties shall be entitled to arbitrate any claims in a representative capacity or as a member of a class. No arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims in arbitration. Arbitration will take place under the rules of the Pennsylvania Uniform Arbitration Act of 1927 or as agreed to by the parties. All expenses of the arbitration will be shared equally. However, attorney fees and fees paid to medical and other expert witnesses are not considered arbitration expenses. These costs will be paid by the party incurring them.

No one may pursue arbitration under Part 3—Uninsured Motorists Insurance unless there is full compliance with all policy terms. No one may pursue arbitration under Part 3—Uninsured Motorists Insurance unless the demand for arbitration is made within four years after the date of the accident.

D.   In Underinsured Motorists Insurance, under An underinsured auto is not, item 3 is deleted.

E.   In Underinsured Motorists Insurance, the Action Against Allstate provision is replaced by the following:

### Action Against Allstate
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 3—Underinsured Motorists Insurance, unless there is full compliance with all policy terms and such action is commenced within four years after the date of the accident.

If any insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

Case ID: 131001095

# Allstate Fire and Casualty Insurance Company

F.   In Underinsured Motorists Insurance, the If We Cannot Agree provision is replaced by the following:

**If We Cannot Agree**
If the insured person and we do not agree on that person's right to receive damages or on the amount, then upon mutual consent, the disagreement will be settled by arbitration. Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the Policy Declarations is located. If the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction. Any and all lawsuits related in any way to this coverage shall be brought, heard, and decided in the county in which your address shown on the Policy Declarations is located. The following issues may be arbitrated:

1.   whether an insured person is legally entitled to recover damages from the owner or operator of an underinsured auto because of bodily injury to the insured person; or

2.   the amount of damages to which an insured person is legally entitled due to bodily injury, subject to the limits of liability as determined by the terms and conditions of this policy.

The arbitrators will not have the power to decide any dispute regarding the nature or the amount of the coverage provided by the policy or claims for damages outside the terms of the policy, including, but not limited to, claims for bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees and/or interest. Neither of the parties shall be entitled to arbitrate any claims in a representative capacity or as a member of a class. No arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims in arbitration. Arbitration will take place under the rules of the Pennsylvania Uniform Arbitration Act of 1927 or as agreed to by the parties. All expenses of the arbitration will be shared equally. However, attorney fees and fees paid to medical and other expert witnesses are not considered arbitration expenses. These costs will be paid by the party incurring them.

No one may pursue arbitration under Part 3—Underinsured Motorists Insurance unless there is full compliance with all policy terms. No one may pursue arbitration under Part 3—Underinsured Motorists Insurance unless the demand for arbitration is made within four years after the date of the accident.

IV.   In Part 4, Protection Against Loss To The Auto, the Action Against Allstate provision is replaced by the following:

**Action Against Allstate**
No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 4—Protection Against Loss to The Auto, unless there is full compliance with all policy terms and such action is commenced within one year after the date of loss.

All other policy terms and conditions apply.

AUTO *51000370905118700053131*


Case ID: 131001095

Case ID: 131001095

# GUNTHER END PAGE

*FOR FINISHING EQUIPMENT JOB*
## PAFLA0

# AUTO DEC SET MAILING PACKAGE
## PENNSYLVANIA
## FLAT
## STD RUN
## April 16, 2013

| | |
|---|---|
| *New Biz Pages* | *31* |
| *Renewal Pages* | |
| *Endorsement Pages* | |
| *Total Flat Pages* | *31* |

*Reprint TimeStamp    2013-04-16-12.22.44.31*


*Z037FLA000130416999*

Case ID: 131001095



*S037FLA000130416001*

# GUNTHER START PAGE

*FOR FINISHING EQUIPMENT JOB*
## PAFLA0

# AUTO DEC SET MAILING PACKAGE
##     PENNSYLVANIA
##     FLAT
##     STD RUN
##     April 16, 2013

*Insert Station 1:*     *None*
*Insert Station 2:*     *None*
*Mailing Envelope:*     *G3661*
*Operator Message:*     *None*

*Reprint TimeStamp    2013-04-16-12.22.44.31*

Case ID: 131001095

Case ID: 131001095



# Allstate
# Automobile
# Insurance

## A Quick
## Guide to
## This Package

**•IDENTIFICATION CARD**
Your identification card
must be carried for
production upon demand.
We suggest that you
carry this card in your
vehicle.

**•POLICY DECLARATIONS**
The Policy Declarations
section contains
detailed information
about your policy such
as drivers, vehicles,
coverages, limits, and
premiums.

**•POLICY**
This booklet is a legal
contract between you and
Allstate. It lists the
terms and conditions of
your insurance coverage.
Please read your policy
carefully.

**•IMPORTANT NOTICE**
The Important Notice
section provides you
with explanations about
insurance issues or any
other policy information
that we think may be
helpful to you.

If you haven't paid your
premium in full, your
bill will be sent in a
separate mailing.

IDPA

IMPORTANT NOTICE Regarding your Financial Responsibility Insurance Identification Card.
Allstate is required by Pennsylvania law to send you an ID card. The card shows that an
insurance policy has been issued for the vehicle(s) described satisfying the financial
responsibility requirements of the law.
If you lose the card, contact your insurance company or agent for a replacement.
The ID card information may be used for vehicle registration and replacing license plates.
If your liability policy is not in effect, the ID card is no longer valid.
You are required to maintain financial responsibility on your vehicle. It is against Pennsylvania
law to use the ID card fraudulently such as using the ID card as proof
of financial responsibility after the insurance policy is terminated.

## Pennsylvania
## Financial Responsibility
## Identification Card

### Allstate Fire and Casualty Insurance Company

NAIC #29688

Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 9 28 415515 06/15 | 06 Honda Accord |

| EFFECTIVE DATE | VEHICLE ID NUMBER |
|---|---|
| 06/15/09 | 1HGCM66576A038742 |

NOT VALID MORE THAN SIX MONTHS FROM
EFFECTIVE DATE

AUTHORIZED REPRESENTATIVE

*Joseph J. Richardson Jr.*

EXPIRATION DATE
12/15/09

This card must be shown to any Law Enforcement Officer upon request.

## Pennsylvania
## Financial Responsibility
## Identification Card

### Allstate Fire and Casualty Insurance Company

NAIC #29688

Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

| POLICY NUMBER | YEAR / MAKE / MODEL |
|---|---|
| 9 28 415515 06/15 | 05 Honda Odyssey |

| EFFECTIVE DATE | VEHICLE ID NUMBER |
|---|---|
| 06/15/09 | 5FNRL38615B060516 |

NOT VALID MORE THAN SIX MONTHS FROM
EFFECTIVE DATE

AUTHORIZED REPRESENTATIVE

*Joseph J. Richardson Jr.*

EXPIRATION DATE
12/15/09

This card must be shown to any Law Enforcement Officer upon request.

Case ID: 131001095

THIS CARD MUST BE CARRIED FOR PRODUCTION UPON DEMAND. IT IS SUGGESTED THAT YOU CARRY THIS CARD IN THE INSURED VEHICLE.

WARNING: Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this state without the required financial responsibility may have his registration suspended or revoked.

NOTE: THIS CARD IS REQUIRED WHEN:
(a) You are involved in an auto accident.
(b) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
(c) You are stopped for violating any provision of 75 Pa. C.S. (relating to the Vehicle Code) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege which has been previously suspended or revoked.

If you have an accident or loss:

- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work and home) and license plate numbers of all persons involved including passengers and witnesses.
- Call 1-800-ALLSTATE[a] (1-800-255-7828), logon to *allstate.com* or contact your Allstate agent as soon as possible.

> Hank Ricci Jr
> (215) 752-6100
> 937 New Rodgers Rd
> Levittown PA 19056

THIS CARD MUST BE CARRIED FOR PRODUCTION UPON DEMAND. IT IS SUGGESTED THAT YOU CARRY THIS CARD IN THE INSURED VEHICLE.

WARNING: Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this state without the required financial responsibility may have his registration suspended or revoked.

NOTE: THIS CARD IS REQUIRED WHEN:
(a) You are involved in an auto accident.
(b) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
(c) You are stopped for violating any provision of 75 Pa. C.S. (relating to the Vehicle Code) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege which has been previously suspended or revoked.

If you have an accident or loss:

- Get medical attention if needed.
- Notify the police immediately.
- Obtain names, addresses, phone numbers (work and home) and license plate numbers of all persons involved including passengers and witnesses.
- Call 1-800-ALLSTATE[a] (1-800-255-7828), logon to *allstate.com* or contact your Allstate agent as soon as possible.

> Hank Ricci Jr
> (215) 752-6100
> 937 New Rodgers Rd
> Levittown PA 19056

Case ID: 131001095

AUTO *370906110700003502D2* Information as of   June 11, 2009



# Allstate Automobile Insurance

IMPORTANT NOTICE Regarding your Financial Responsibility Insurance Identification Card.
Allstate is required by Pennsylvania law to send you an ID card. The card shows that an insurance policy has been issued for the vehicle(s) described satisfying the financial responsibility requirements of the law.
If you lose the card, contact your insurance company or agent for a replacement.
The ID card information may be used for vehicle registration and replacing license plates.
If your liability policy is not in effect, the ID card is no longer valid.
You are required to maintain financial responsibility on your vehicle. It is against Pennsylvania law to use the ID card fraudulently such as: using the ID card as proof of financial responsibility after the insurance policy is terminated.

---

## Pennsylvania Financial Responsibility Identification Card

### Allstate Fire and Casualty Insurance Company

NAIC #29688

Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

POLICY NUMBER
9 28 415515 06/15

YEAR / MAKE / MODEL
05  Subaru Legacy

EFFECTIVE DATE
06/15/09

VEHICLE ID NUMBER
4S3BL616456201412

NOT VALID MORE THAN SIX MONTHS FROM EFFECTIVE DATE

AUTHORIZED REPRESENTATIVE
*Joseph J. Richardson Jr.*

EXPIRATION DATE
12/15/09

This card must be shown to any Law Enforcement Officer upon request.

---

## Pennsylvania Financial Responsibility Identification Card

### Allstate Fire and Casualty Insurance Company

NAIC #29688

Frank D and Rosetta L
Caruso
1039 Newport Mews Dr
Bensalem PA 19020-3948

POLICY NUMBER
9 28 415515 06/15

YEAR / MAKE / MODEL
97  Honda Accord

EFFECTIVE DATE
06/15/09

VEHICLE ID NUMBER
1HGCD5631VA112454

NOT VALID MORE THAN SIX MONTHS FROM EFFECTIVE DATE

AUTHORIZED REPRESENTATIVE
*Joseph J. Richardson Jr.*

EXPIRATION DATE
12/15/09

This card must be shown to any Law Enforcement Officer upon request.

IDPA

Case ID: 131001095

THIS CARD MUST BE CARRIED FOR PRODUCTION UPON DEMAND. IT IS SUGGESTED THAT YOU CARRY THIS CARD IN THE INSURED VEHICLE.

WARNING: Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this state without the required financial responsibility may have his registration suspended or revoked.

NOTE: THIS CARD IS REQUIRED WHEN:
(a) You are involved in an auto accident.
(b) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
(c) You are stopped for violating any provision of 75 Pa. C.S. (relating to the Vehicle Code) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege which has been previously suspended or revoked.

## If you have an accident or loss:

* Get medical attention if needed.
* Notify the police immediately.
* Obtain names, addresses, phone numbers (work and home) and license plate numbers of all persons involved including passengers and witnesses.
* Call 1-800-ALLSTATE® (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Hank Ricci Jr
(215) 752-6100
937 New Rodgers Rd
Levittown PA 19056

THIS CARD MUST BE CARRIED FOR PRODUCTION UPON DEMAND. IT IS SUGGESTED THAT YOU CARRY THIS CARD IN THE INSURED VEHICLE.

WARNING: Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this state without the required financial responsibility may have his registration suspended or revoked.

NOTE: THIS CARD IS REQUIRED WHEN:
(a) You are involved in an auto accident.
(b) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
(c) You are stopped for violating any provision of 75 Pa. C.S. (relating to the Vehicle Code) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege which has been previously suspended or revoked.

## If you have an accident or loss:

* Get medical attention if needed.
* Notify the police immediately.
* Obtain names, addresses, phone numbers (work and home) and license plate numbers of all persons involved including passengers and witnesses.
* Call 1-800-ALLSTATE® (1-800-255-7828), logon to allstate.com or contact your Allstate agent as soon as possible.

Hank Ricci Jr
(215) 752-6100
937 New Rodgers Rd
Levittown PA 19056

Case ID: 131001095



# GUNTHER END PAGE

*FOR FINISHING EQUIPMENT JOB*

## PAFLA0

# AUTO DEC SET MAILING PACKAGE
## PENNSYLVANIA
## FLAT
## STD RUN
## April 16, 2013

| | |
|---|---|
| *New Biz Pages* | *2* |
| *Renewal Pages* | |
| *Endorsement Pages* | |
| *Total Flat Pages* | *2* |

*Reprint TimeStamp   2013-04-16-12.22.44.31*

Case ID: 131001095



Filed and Attested by
PROTHONOTARY
14 OCT 2013 04:07 pm
MURPHY

# *Exhibit C*

ROSS FELLER CASEY, LLP
ATTORNEYS AT LAW
ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3450
PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000
FAX: 215-574-3080

September 17, 2009

Ms. Cassandra Lowe
Allstate Insurance Company
6345 Flank Drive, Suite 1000
Harrisburg, PA 17112

> **Re:** **Our Client- Patrick Hennessy**
> **Your Insured-Shawn Robertson**
> **Your Claim #0144178159**
> **D/A - July 26, 2009**

Dear Ms. Lowe:

Please be advised that this office represents Patrick Hennessy with regard to personal injuries sustained in the above captioned accident. I would appreciate it if you would provide me with a copy of your insured's declaration page at your earliest convenience. All future communications regarding this matter should be directed to this office.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

ROBERTA GOLDEN

RG/gaa

Case ID: 131001095

# Exhibit D

Case ID: 131001095

**ROSS FELLER CASEY, LLP**

ATTORNEYS AT LAW

ONE LIBERTY PLACE

1650 MARKET STREET, SUITE 3450

PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000

FAX: 215-574-3080

September 23, 2009

Mr. Terry Davis
Allstate Insurance Company
P.O. Box 440519
Kennesaw, Georgia 30160

> Re:  **Our Client- Patrick Hennessy**
> **Your Insured-Frank and Rosetta Caruso**
> **Your Claim #0144178159**
> **D/A - July 26, 2009**

Dear Mr. Davis:

    Please be advised that this office represents Patrick Hennessy with regard to personal injuries sustained in the above captioned accident. I would appreciate it if you would provide me with a copy of your insured's declaration page at your earliest convenience. All future communications regarding this matter should be directed to this office.

    If you have any questions, please do not hesitate to contact me.

Very truly yours,

ROBERTA GOLDEN

RG/gau

Case ID: 131001095

# *Exhibit E*

Case ID: 131001095



**Allstate.**
*You're in good hands.*

HARRISBURG MCO
6345 PLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

November 27, 2009

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat 8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

Thank you for continuing to work with Allstate Fire and Casualty Insurance Company on this claim.

Currently:

* Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 7561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

Case ID: 31001095

# Exhibit F

Case ID: 131001095

**ROSS FELLER CASEY, LLP**
ATTORNEYS AT LAW
ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3450
PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000
FAX: 215-574-3080

December 3, 2009

Mr. Kevin Broadhead
Allstate Insurance Company
6345 Flank Drive, Suite 1000
Harrisburg, PA 17112

      Re:    **Our Client- Patrick Hennessy**
                  **Your Insured-Frank and Rosetta Caruso**
                  **Your Claim #0144178159**
                  **D/A - July 26, 2009**

Dear Mr. Broadhead:

    Pursuant to your request, enclosed please find the following medical records:

1. Aria Health-Torresdale Campus, 7/26 to 8/17/09;
2. Hospital of the University of Pennsylvania, 8/17 to 9/2/09;
3. Presbyterian Hospital, 10/5 to 10/6/09;
4. Raphael Gabay, D.O.;
5. Penn Therapy and Fitness.

                Very truly yours,

                ROBERTA GOLDEN

RG/gaa

Enclosures

Case ID: 131001095

*Exhibit G*

Case ID: 131001095



|||||||||||||||||||||||||||||||||||||||||||||||||||||||||

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

January 11, 2010

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

Thank you for continuing to work with Allstate Fire and Casualty Insurance Company on this claim.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 7561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

*Exhibit H*

Case ID: 131001095



**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

February 24, 2010

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat 8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

Thank you for continuing to work with Allstate Fire and Casualty Insurance Company on this claim.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 7561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

GENU009

0144178159 B36

600002010022241R000101478360100102289

Case ID: 131001095

# Exhibit I

Case ID: 131001095

ROSS FELLER CASEY, LLP

ATTORNEYS AT LAW
ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3450
PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000
FAX: 215-574-3080

March 2 ,2010

<u>VIA CERTIFIED, R.R.R. MAIL</u>
Mr. Kevin Broadhead
Allstate Insurance Company
6345 Flank Drive, Suite 1000
Harrisburg, PA 17112

Re:  **Our Client- Patrick Hennessy**
**Your Insured-Frank and Rosetta Caruso**
**Your Claim #0144178159**
<u>**D/A - July 26, 2009**</u>

Dear Mr. Broadhead:

I am writing further to our phone conversation of February 24, 2010. As you are aware, I represent Patrick Hennessy. Mr. Hennessy was a passenger in a car owned by your insureds, Frank and Rosetta Caruso, and being driven by their son Ryan Caruso on July 26, 2009, when an accident occurred that resulted in Mr. Hennessy's severe injuries, ultimately including the loss of his leg. I have provided you with all information you have requested and all information necessary to permit Allstate to properly and reasonably evaluate this claim. You have not indicated a need for additional information to permit Allstate to complete its evaluation of this claim.

Despite my willingness to work amicably with you, you have been unwilling to advise me even of the policy limits or provide the declarations page of your clients' policy, which I first requested by letter of September 23, 2009. Regardless of your stated uncertainty as to whether Mr. Hennessy's injuries are tied to your insured's negligent conduct, Allstate is obliged to provide sufficient information about the policy so that Mr. Hennessy may evaluate the coverage. To the extent Allstate is claiming an exception to coverage, certainly you must recognize claimant's right to review the policy.

Allstate has, moreover, had more than sufficient time to formulate and advise of its coverage position; but it has yet to provide Mr. Hennessy with a decision regarding this claim. Allstate's failure to provide any information about the policy or reach a determination borders on

Case ID: 131001095

**Ross Feller Casey, LLP**

Page 2
March 2, 2010

actionable bad faith.

     Though you have refused to disclose the limits of the policy, my investigation reveals a policy limit of only $250,000. Assuming this amount, this matter is grossly underinsured and I would expect immediate tender of the policy. I therefore demand tender of the policy within the next 30 days. Should Allstate fail to act in good faith by tendering the policy, claimant will institute suit, obtain an excess judgment, and execute on the personal assets of your insureds. Obviously, this can be avoided by Allstate's reasonable evaluation of the claim and tender within the time above. Please be guided accordingly.

Very truly yours,

ROBERTA GOLDEN

RG/gaa



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .44 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.54 |

Sent To: Allstate Ins. Co.
Street, Apt. No.; or PO Box No. 6345 Flank Dr.
City, State, ZIP+4 Harrisburg PA 17112

PS Form 3800, August 2006

Case ID:  1001095

# Exhibit J



**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

March 11, 2010

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Patrick Hennessy

Dear Ms. Golden,

I confirm receipt of your March 2, 2010 correspondence. The medical documentation that you have previously supplied, notes that your client was uninjured in the rear end collision between Mr. Caruso's vehicle and Bruce Reikow's vehicle.

If you have additional documentation in support of your client's claim that you would like me to review, please forward it to me at your earliest convenience. If you would like to discuss this matter, please contact me at the number listed below.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

GENI001                   0144178159 B36



Case ID: 131001095

# *Exhibit K*

Case ID: 131001095



**Allstate**
You're in good hands.

HARRISBURG NCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

April 12, 2010

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
7561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

GENU009                                    0144178159 B36

Case ID: 121001095

*Exhibit L*

Case ID: 131001095

ROSS FELLER CASEY, LLP

ATTORNEYS AT LAW
ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3450
PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000
FAX: 215-574-3080

May 5, 2010

**VIA CERTIFIED, R.R.R. MAIL**
Mr. Kevin Broadhead
Allstate Insurance Company
6345 Flank Drive, Suite 1000
Harrisburg, PA 17112

   Re:  **Our Client- Patrick Hennessy**
      **Your Insured-Frank and Rosetta Caruso**
      **Your Claim #0144178159**
      <u>**D/A - July 26, 2009**</u>

Dear Mr. Broadhead:

   I am writing in response to your letter of March 11, 2010. Under Allstate's policy with the Carusos, Allstate is obligated to pay damages for bodily injury for which your insured is legally responsible because of an auto accident. Here, your insured, Ryan Caruso, caused a chain of events that resulted in Patrick Hennessy's injury. Specifically, your insured caused an auto accident that jeopardized both the insured and his passenger and resulted in the car's being inoperable in a traffic lane. It was while attempting to move the car to the side of the road that Mr. Hennessy sustained serious injury.

   Your position that Mr. Hennessy's being uninjured in the initial accident relieves your insured and Allstate of responsibility for this accident is baseless. No applicable exclusion in the policy supports this position. Mr. Hennessy's injury would not have occurred absent your insured's having caused the initial accident. Please let me know if you have advised your unit manager of the ludicrous position you have taken on Allstate's behalf in this matter.

   Allstate is presently in breach of its good faith obligations and we are not obligated to give Allstate more time to tender its policy limits in this woefully underinsured matter. I reiterate my demand on behalf of my client of tender of the full policy limits. I further demand tender within 10 days.

Case ID: 131001095

Ross Feller Casey, LLP

Page 2
May 5, 2010

I ask that you have your unit manager contact me to discuss this matter further to avoid a lawsuit that will be to the detriment of your insureds and will open Allstate to substantial bad faith liability.

Very truly yours,

ROBERTA GOLDEN

RG/gaa

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin Bradhead
Allstate Ins. Co
6345 Flank Dr, Suite 1000
Harrisburg, PA 17112

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Pat Davis                 ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Pat Davis                        5/10/10

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7010 0290 0002 7634 3606

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Postage        $        .44
Certified Fee           2.80
Return Receipt Fee      2.30
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees  $  5.54

Sent To  Kevin Bradhead Allstate Ins
Street, Apt. No.;  6345 Flank Dr
or PO Box No.
City, State, ZIP+4  Harrisburg, PA

PS Form 3800, August 2006      See Reverse for Instructions

7010 0290 0002 7634 3606

PHILA PA 19102 PENN CENTER
Postmark Here
USPS MAY 9 2010

Case ID: 131001095

# Exhibit M

Case ID: 131001095



**Allstate**
You're in good hands.

*HARRISBURG MCO*
*6345 FLANK DRIVE, SUITE 1000*
*HARRISBURG PA 17112*

ıllımlıllımlıllımlıllımlıllımlılılılı
ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

May 10, 2010

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 B36

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Patrick Hennessy

Dear Ms. Golden,

I confirm receipt of your May 5, 2010 correspondence. As I indicated in my March 11, 2010 correspondence, the medical records supplied by your office, appear to indicate that Mr. Hennessy was uninjured when the Reikow vehicle was rear ended by the Allstate insured.

At this time I am not in a position to extend a settlement offer, based upon the information you have provided. If you have additional documentation that you would like for me to consider, please forward it to me. I may be reached at 717-540-7561 if you have any questions or would like to further discuss this matter.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

GENI001

0144178159 B36



Case ID: 1131001095

*Exhibit N*

Case ID: 131001095



**Allstate**
You're in good hands.

HARRISBURG NCO
6345 PLANK DRIVE
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

February 17, 2011

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BJR

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
7552 and refer to the claim number listed above.

Sincerely,

*JOHN RUSSELL*

JOHN RUSSELL
800-726-8890 Ext. 7552
Allstate Fire and Casualty Insurance Company

GENU009 0144178159 BJR

Case ID: 101001095

# Exhibit O

Case ID: 131001095



ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 19103-7331

August 19, 2011

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SJR
LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS:

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 7552 and refer to the claim number listed above.

Sincerely,

*JOHN RUSSELL*

JOHN RUSSELL
800-726-8890 Ext. 7552
Allstate Fire and Casualty Insurance Company

# Exhibit P

Case ID: 131001095



**Allstate.**
You're in good hands.
*HARRISBURG NCO*
*6345 FLANK DRIVE, SUITE 1000*
*HARRISBURG PA 17033*

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

December 26, 2011

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPF
LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS:

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP:

We are writing to update you on the status of the claim listed above.

Currently:

* We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
3201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 3201
Allstate Fire and Casualty Insurance Company

0144178159 BPF

Case ID 31001095

# Exhibit Q

Case ID: 131001095



**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17033

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

July 20, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPF

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT: PATRICK HENNESSY

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
3201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 3201
Allstate Fire and Casualty Insurance Company

Case ID: 131001095

*Exhibit R*

Case ID: 131001095

**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17033

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

September 07, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPF

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat 8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):        PATRICK HENNESSY

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

*   We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 3201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 3201
Allstate Fire and Casualty Insurance Company

GENU009                    0144178159 BPF


Case ID: 001095

# *Exhibit S*

Case ID: I31001095



**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

September 11, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SKB

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

Your Client: Patrick Hennessy

Dear Ms. Holden,

Please be advised that I am now handling the above-referenced claim and take note that the last digits of the claim number are "SKB." Please send me all relevant medical and wage documentation to assist in the evaluation of this claim.

My involvement is limited to the potential UM/UIM claim. All first party medical bills and inquiries should be sent to our Medical Payment Office. Their address is P.O. Box 440519, Kennesaw GA 30160 and their telephone number is 1-866-575-4363.

If you have any questions or wish to discuss this case, please contact me at 717-540-7561

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 7561
Allstate Fire and Casualty Insurance Company

# Exhibit T

Case ID: 131001095



**Allstate.**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

October 01, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SKB

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat 8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):         PATRICK HENNESSY

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- Our medical and or wage investigation is continuing.

- Please send me medical documentation in support of the UM claim.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 5407561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 5407561
Allstate Fire and Casualty Insurance Company

GENU009                                   0144178159 SKB



Case ID: 491001095

*Exhibit U*

Case ID: 131001095



HARRISBURG NCO
6345 PLANK DRIVE, SUITE 1000
HARRISBURG PA 17033

**Allstate.**
You're in good hands.

|ₙ||ₗₗₗₗ|ₗ||ₗₗ|ₗ|ₗₗₗ|ₗₗ|ₗ|ₗₗ|ₗₗₗ|ₗₗₗₗ|ₗₗₗₗ|ₗₗₗ|ₗₗₗ|ₗₗₗ|ₗₗₗ|ₗₗₗ|ₗₗ|

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

October 19, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPF

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):           PATRICK HENNESSY

## Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 5403201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 5403201
Allstate Fire and Casualty Insurance Company

# Exhibit V

Case ID: 131001095



**Allstate.**
You're in good hands.

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

November 12, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SKB

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S): PATRICK HENNESSY

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
5407561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 5407561
Allstate Fire and Casualty Insurance Company

Case ID: 1001095

*Exhibit W*

Case ID: 131001095



**Allstate**
You're in good hands.

HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17033

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

December 05, 2012

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPP

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm, Sat
8:00 am - 2:00 pm

LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):        PATRICK HENNESSY

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
5403201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 5403201
Allstate Fire and Casualty Insurance Company

GENU009                          0144178159 BPF                    Case ID: 001095

*Exhibit X*

Case ID: 131001095



Allstate
You're in good hands.

HARRISBURG NCO
6345 PLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

February 05, 2013

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SKB
LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):        PATRICK HENNESSY

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS:

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext.
5407561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 5407561
Allstate Fire and Casualty Insurance Company

Case ID: 1001095

# Exhibit Y

Case ID: 131001095



HARRISBURG MCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17033

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

March 01, 2013

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 BPF
LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S):          PATRICK HENNESSY

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS:

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- We are waiting for the completion of the court action.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 300 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 5403201 and refer to the claim number listed above.

Sincerely,

*PAUL FRAVER*

PAUL FRAVER
800-726-8890 Ext. 5403201
Allstate Fire and Casualty Insurance Company

# Exhibit Z

Case ID: 131001095



**Allstate**
You're in good hands.

HARRIS) I NCO
6345 FLANK DRIVE, SUITE 1000
HARRISBURG PA 17112

ROSS FELLER & CASEY LLP
1650 MARKET ST STE 3450
PHILADELPHIA PA 191037331

March 21, 2013

INSURED: FRANK CARUSO
DATE OF LOSS: July 26, 2009
CLAIM NUMBER: 0144178159 SKB
LOCATION OF LOSS: Roosevelt Bl/Conwell St, Philadelphia, PA
CLAIMANT(S): PATRICK HENNESSY

PHONE NUMBER: 800-726-8890
FAX NUMBER: 717-540-7540
OFFICE HOURS:

Re: Your Client's Claim Status

Dear ROSS FELLER & CASEY LLP,

We are writing to update you on the status of the claim listed above.

Currently:

- Our medical and or wage investigation is continuing.

We will continue to update you on the status of the claim until it is resolved.

We expect this will be resolved in 200 days or sooner.

If you want to discuss any concerns or questions regarding the claim process, please feel free to call at 800-726-8890 Ext. 5407561 and refer to the claim number listed above.

Sincerely,

*KEVIN BROADHEAD*

KEVIN BROADHEAD
800-726-8890 Ext. 5407561
Allstate Fire and Casualty Insurance Company

*Exhibit AA*

Case ID: 131001095

# GEROLAMO McNULTY DIVIS & LEWBART

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
121 South Broad Street
Suite 1400
Philadelphia, Pennsylvania 19107

TELEPHONE (215) 790-8400
FAX (215) 790-8500
Email: law@gmdlfirm.com

Frank A. Gerolamo, III
Kevin R. McNulty
Daniel J. Divis *
Daniel T. Lewbart *
Kelly J. Fox*
Sheila Hannigan Williams*
Albert H. Yun*
Christina J. Kubiak*
John A. Dougherty*
Stephen T. Bissell*

* Also admitted in New Jersey

New Jersey Office
701 South White Horse Pike
Audubon, New Jersey 08106
Telephone (856) 848-2800
Fax (856) 848-3800

May 14, 2013

Matthew A. Casey, Esquire
Ross Feller Casey, LLP
1650 Market Street – Suite 3450
Philadelphia, PA 19103
**Via Fax: (215) 574-3080 &**
**Regular 1st Class Mail**

> RE:    Hennessy v. Robertson, et al
>        Phila. CCP, January Term, 2011 - No. 4451

Dear Mr. Casey:

I am herewith tendering my clients' policy limits of $250,000.00 to settle plaintiff's claims in the above matter. Would you please let me know if the tender of my client's policy limits settles Mr. Hennessy's claims against the Carusos?

As to your request to speak to my clients' personal counsel, I have been unable to speak to my clients despite attempts to do so. Should you have any questions, I may be reached directly at 215-790-5064.

Very truly yours,
GEROLAMO McNULTY DIVIS & LEWBART

BY: _____
       DANIEL J. DIVIS

DJD:as

*Exhibit BB*

Case ID: 131001095

ROSS FELLER CASEY, LLP
ATTORNEYS AT LAW
ONE LIBERTY PLACE
1650 MARKET STREET, SUITE 3450
PHILADELPHIA, PENNSYLVANIA 19103

215-574-2000
FAX: 215-574-3080

May 14, 2013

**VIA E-MAIL**
Daniel J. Divis, Esquire
**Gerolamo, McNulty, Divis & Lewbart**
121 S. Broad Street, Suite 1400
Philadelphia, PA 19107

Re:    Patrick Hennessy vs. Caruso, et al

Dear Mr. Divis:

I have your letter. Your offer is rejected. As the correspondence file in this case will confirm, and as Allstate's internal files and depositions following the Hennessy verdict will further illustrate, Allstate frivolously and unreasonably - - for years - - placed its interests ahead of the Carusos' interests. Despite having repeated opportunities to pay the Carusos' policy limits, Allstate forced the case through years of litigation. I told Allstate that if the policy was not paid back then I would not take it later and would proceed to verdict and judgment. For years, Allstate has known about the catastrophic damages involved and the clear nature of its insureds' liability, yet Allstate refused, despite repeated offers from the plaintiff, to pay even a dime of its policy.

Please have the Carusos' personal counsel call me. Furthermore, please be sure that Allstate preserves its entire file, including any computer entries, emails, memos, handwritten notes, phone message slips, voicemail messages, and otherwise any other document and/or thing related to this matter. Thank you.

Sincerely,

MATTHEW A. CASEY

MAC:djh

Case ID: 131001095

# Exhibit CC

----- Original Message -----
From: Matthew Casey
To: 'ddivis@gmdlfirm.com' <ddivis@gmdlfirm.com>
Sent: Thu May 16 15:41:04 2013
Subject: Hennessey

Dan:

I'll hold open my offer to accept 5 Million Dollars from Allstate in settlement of Mr. Hennessey's claims against the Carusos until the close of jury selection tomorrow. If and when the plaintiff settles with the malpractice defendants, which is being explored as we speak, I will not accept less than 10 Million Dollars from Allstate to settle the Carusos portion of the case. Please be guided accordingly. Matt Casey

*Exhibit A*

Case ID: 131001095

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |

- Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

Matthew Doresinski
Employee of Allstate

B. Received by (Printed Name)   C. Date of Delivery
                                OCT 03 2013

1. Article Addressed to:

Allstate Fire & Casualty Insurance Company
3075 Sanders Road H1A
Northbrook IL 60062

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

7013 1090 0002 2941 4742

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Case ID: 131001095

**ROSS FELLER CASEY, LLP**
By: Matthew A. Casey, Esquire
    Iddo Harel, Esquire
Attorney ID Nos.: 84443/209830
One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215) 574-2000

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **PATRICK L. HENNESSY** | : | COURT OF COMMON PLEAS |
| | : | *PHILADELPHIA COUNTY* |
| *Plaintiff* | : | |
| vs. | : | OCTOBER TERM, 2013 |
| | : | |
| **ALLSTATE INSURANCE COMPANY, et al** | : | NO. 01095 |
| | : | |
| *Defendants* | : | **JURY TRIAL DEMANDED** |

## AFFIDAVIT OF SERVICE

    I, IDDO HAREL, ESQUIRE, hereby certify that I caused true and correct copy of

Plaintiff's Complaint and First Set of Interrogatories and Request for Production of Documents to

be served on defendant Allstate Property & Casualty Insurance Company, 2775 Sanders Road,

Northbrook, IL 60062, via Certified Mail, Return Receipt Requested. Attached hereto as Exhibit

"A" is a copy of the signed Certified Return of Service.

**ROSS FELLER CASEY, LLP**

                           By:    */s/ Iddo Harel*
                                     IDDO HAREL

Sworn to and subscribed
before me this 11ᵗʰ day
of November, 2013

Notary Public
COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Toni Diane Tolliver, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires April 12, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Case ID: 131001095

# Exhibit A

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)  Matthew Derosinski  Employee of Allstate  C. Date of Delivery  OCT 18 2013<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br>*Matthew Derosinski* |
| 1. Article Addressed to:<br><br>Allstate Property & Casualty Insurance Company<br>2775 Sanders Road<br>Northbrook IL 60062 | 3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☑ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7013 1090 0002 2941 4735 |
| PS Form 3811, February 2004 Domestic Return Receipt | 102595-02-M-1540 |

Case ID: 131001095

# RETURN OF SERVICE

## DENNIS RICHMAN'S SERVICES FOR THE PROFESSIONAL INC.

1500 J.F.K. BOULEVARD • SUITE 1706 • PHILADELPHIA, PA 19102 • (215) 977-9393

| TO BE COMPLETED BY ATTORNEY (PLEASE ONE FORM FOR EACH DEFENDANT.) | COURT TERM AND NUMBER |
|---|---|
| PLAINTIFF/S/ Patrick L Hennessy | 13-10-1009 Filed and Attested by PROTHONOTARY 12 NOV 2013 03:58 pm J. OSTROWSKI |
| DEFENDANT/S/ Allstate Insurance Company, et al | |

SERVE AT { 
NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC.
Kevin Broadhead

ADDRESS (Street or RFD, Apartment No., City, Boro, Twp., State and ZIP Code)
145 N. Main Street, Mount Wolf, PA 17347

INDICATE TYPE OF PLEADING ☐ SUMMONS ☒ COMPLAINT ☒ Plaintiff's First Set of Interrogatories and Request

INDICATE UNUSUAL SERVICE: ☐ REG. MAIL ☒ DEPUTIZE ☐ POST ☐ OTHER for Production of Documents

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE

Now, ____October 17____ 20 13 , Regina Richman ____do hereby deputize the Sheriff of ____York____ County to execute this Writ and make return thereof according to law. The deputation being made at the request and risk of the plaintiff.

Process Server ____Regina Richman____

### TO BE COMPLETED BY PROCESS SERVER

Served and made known to _____, Defendant(s) on the _____ day of _____ 20 ____ , at ____ o'clock, ____M., at _____ , County of Phila. Commonwealth of Pennsylvania, in the manner described below:

- ☐ Defendant(s) personally served.
- ☐ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ☐ Adult in charge of Defendant's residence who refused to give name or relationship.
- ☐ Manager/Clerk of place of lodging in which Defendant(s) reside(s). _____
- ☐ Agent or person in charge of Defendant's office or usual place of business. _____
- ☐ _____ an officer of said Defendant company.
- ☐ Other _____

On the _____ day of _____ 20 ____ , at ____ o'clock, ____M.
Defendant not found because:

☐ Moved    ☐ Unknown    ☐ No Answer    ☐ Vacant    ☐ Other _____

Comments _____

NAME OF SERVER
I, _____ hereby affirms that the information contained in the Return of Service is true and correct. This affirmation is made subject to the penalties of 18 PA C.S. 4904 relating to unsworn falsification to authorities.
Sworn to and subscribed before me
this ____ day of ____ 20 ____

_____
(Signature)

| TO BE COMPLETED BY ATTORNEY | TO BE COMPLETED BY PROTHONOTARY |
|---|---|
| Name Matthew Casey, Esquire | |
| Address 1650 Market St., Ste. 3450, Philadelphia, PA 19103 | |
| Telephone Number 215-574-2000 | ATTEST _____ |
| Identification Number 84443 | PRO PROTHY |
| Represents: ☐ Plaintiff(s) ____ ☐ Defendant(s) ____ ☐ Other ____ | 77019    Case ID: 131001095 DATE |

# SHERIFF'S OFFICE OF YORK COUNTY



**Richard P Keuerleber**
*Sheriff*

**Reuben B Zeager**
*Chief Deputy, Operations*

**PETER J. MANGAN, ESQ.**
*Solicitor*

**Richard E Rice, II**
*Chief Deputy, Administration*

PATRICK L. HENNESSY
vs.
ALLSTATE INSURANCE COMPANY, et al (et al.)

**Case Number**
OCTOBER2013-001095

## SHERIFF'S RETURN OF SERVICE

10/25/2013   03:20 PM - DEPUTY TYLER STEPANCHICK, BEING DULY SWORN ACCORDING TO LAW, SERVED THE REQUESTED COMPLAINT IN CIVIL ACTION (CICA) AND PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS BY HANDING A TRUE COPY TO A PERSON REPRESENTING THEMSELVES TO BE NICOLE BROADHEAD, WIFE, WHO ACCEPTED AS "ADULT PERSON IN CHARGE" FOR KEVIN BROADHEAD AT 145 N. MAIN STREET, MOUNT WOLF, PA 17347.

TYLER STEPANCHICK, DEPUTY

SHERIFF COST: $32.04

SO ANSWERS,

November 06, 2013

RICHARD P KEUERLEBER, SHERIFF

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lisa L. Thorpe, Notary Public
City of York, York County
My Commission Expires Aug. 12, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**NOTARY**

Affirmed and subscribed to before me this

___6TH___ day of ___NOVEMBER___, ___2013___

(c) CountySuite Sheriff, Teleosoft, Inc.

Case ID: 131001095

# RETURN OF SERVICE

## DENNIS RICHMAN'S SERVICES FOR THE PROFESSIONAL INC.

### 1500 J.F.K. BOULEVARD • SUITE 1706 • PHILADELPHIA, PA 19102 • (215) 977-9393

| | |
|---|---|
| TO BE COMPLETED BY ATTORNEY<br>(PLEASE ONE FORM FOR EACH DEFENDANT.) | COURT TERM AND NUMBER<br><br>13-10-1095<br>*Filed and Attested by PROTHONOTARY 11 NOV 2013 03:56 pm J. OSTROWSKI* |
| PLAINTIFF/S/<br>Patrick L Hennessy | |
| DEFENDANT/S/<br>Allstate Insurance Company, et al | |

**SERVE** { NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC.
  John Russell

➤ **AT** ADDRESS (Street or RFD, Apartment No., City, Boro, Twp., State and ZIP Code)
  19 Foxwood Blvd., Mechanicsburg, PA 17050

INDICATE TYPE OF PLEADING ☐ SUMMONS ☒ COMPLAINT ☒ Plaintiff's First Set of Interrogatories and Request

INDICATE UNUSUAL SERVICE: ☐ REG. MAIL ☒ DEPUTIZE ☐ POST ☐ OTHER for Production of Documents

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE

Now, ___October 17___ 20 13 , Regina Richman do hereby
deputize the Sheriff of ___Cumberland___ County to execute this Writ and make return thereof
according to law. The deputation being made at the request and risk of the plaintiff.

Process Server _Regina Richman_

### TO BE COMPLETED BY PROCESS SERVER

Served and made known to_____, Defendant(s)
on the _____ day of _____ 20 _____, at _____ o'clock, _____ M.,
at _____ , County of Phila. Commonwealth of Pennsylvania, In
the manner described below:

☐ Defendant(s) personally served.
☐ Adult family member with whom said Defendant(s) reside(s). Relationship is_____
☐ Adult in charge of Defendant's residence who refused to give name or relationship.
☐ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
☐ Agent or person in charge of Defendant's office or usual place of business._____
☐ _____ an officer of said Defendant company.
☐ Other _____

On the _____ day of _____ 20 _____, at _____ o'clock, _____ M.
Defendant not found because:
☐ Moved ☐ Unknown ☐ No Answer ☐ Vacant ☐ Other_____
Comments_____
_____
_____

NAME OF SERVER
I, _____ hereby affirms that the information contained in the Return of Service is
true and correct. This affirmation is made subject to the penalties of 18 PA C.S. 4904 relating to unsworn falsification to authorities.
Sworn to and subscribed before me
this _____ day of _____ 20 _____

_____
(Signature)

| TO BE COMPLETED BY ATTORNEY | TO BE COMPLETED BY PROTHONOTARY |
|---|---|
| Name Matthew Casey, Esquire<br>Address 1650 Market St., Ste. 3450, Philadelphia, PA 19103<br>Telephone Number 215-574-2000<br>Identification Number 84443<br>Represents:<br>☐ Plaintiff(s) _____<br>☐ Defendant(s) _____<br>☐ Other _____ | ATTEST _____<br>*PRO PROTHY*<br><br>77021 DATE _____ Case ID: 131001095 |

# SHERIFF'S OFFICE OF CUMBERLAND COUNTY

**Ronny R Anderson**
*Sheriff*

**Jody S Smith**
*Chief Deputy*

**Richard W Stewart**
*Solicitor*



OFFICE OF THE SHERIFF

---

| | |
|---|---|
| Patrick L Hennessy<br>vs.<br>All State Insurance Company (et al.) | **Case Number**<br>2013-OCTOBER-1095 |

## SHERIFF'S RETURN OF SERVICE

10/28/2013    08:06 PM - Deputy Ryan Burgett, being duly sworn according to law, served the requested Complaint & Notice and Interrogatories by "personally" handing a true copy to a person representing themselves to be the Defendant, to wit: John Russell at 19 Foxwood Blvd., Silver Spring, Mechanicsburg, PA 17050.

RYAN BURGETT, DEPUTY

SHERIFF COST: $43.10

SO ANSWERS,

October 31, 2013

RONNY R ANDERSON, SHERIFF

NOTARIAL SEAL
CLAUDIA A. BREWBAKER, NOTARY PUBLIC
Carlisle Boro, Cumberland County
My Commission Expires April 4, 2017

NOTARY

Affirmed and subscribed to before me this
_____ day of _November_, _2013_

(c) CountySuite Sheriff, Teleosoft, Inc.

Case ID: 131001095

# RETURN OF SERVICE

## DENNIS RICHMAN'S SERVICES FOR THE PROFESSIONAL INC.

1500 J.F.K. BOULEVARD • SUITE 1706 • PHILADELPHIA, PA 19102 • (215) 977-9393

| TO BE COMPLETED BY ATTORNEY (PLEASE ONE FORM FOR EACH DEFENDANT.) | COURT TERM AND NUMBER |
|---|---|
| PLAINTIFF/S/<br>Patrick L Hennessy | Filed and Attested by PROTHONOTARY<br>13-10-100<br>31 OCT 2013 11:04 am |
| DEFENDANT/S/<br>Allstate Insurance Company, et al | |

**SERVE** { NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC.
Paul Fraver

**AT** → ADDRESS (Street or RFD, Apartment No., City, Boro, Twp., State and ZIP Code)
122 W. Granada Avenue, Hershey, PA 17033

INDICATE TYPE OF PLEADING ☐ SUMMONS ☒ COMPLAINT ☒ Plaintiff's First Set of Interrogatories and Request

INDICATE UNUSUAL SERVICE: ☐ REG. MAIL ☒ DEPUTIZE ☐ POST ☐ OTHER for Production of Documents

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE

Now, ____October 17____ 20 13 , I, Regina Richman ____do hereby deputize the Sheriff of ____Dauphin____ County to execute this Writ and make return thereof according to law. The deputation being made at the request and risk of the plaintiff.

Process Server _Regina Richman_

### TO BE COMPLETED BY PROCESS SERVER

Served and made known to_____, Defendant(s) on the _____ day of _____ 20 _____, at _____ o'clock, _____M., at _____, County of Phila. Commonwealth of Pennsylvania, in the manner described below:

- ☐ Defendant(s) personally served.
- ☐ Adult family member with whom said Defendant(s) reside(s). Relationship is_____
- ☐ Adult in charge of Defendant's residence who refused to give name or relationship.
- ☐ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ☐ Agent or person in charge of Defendant's office or usual place of business._____
- ☐ _____ an officer of said Defendant company.
- ☐ Other _____

On the _____ day of _____ 20 _____, at _____ o'clock, _____M.
Defendant not found because:

☐ Moved   ☐ Unknown   ☐ No Answer   ☐ Vacant   ☐ Other_____

Comments_____

NAME OF SERVER

I, _____ hereby affirms that the information contained in the Return of Service is true and correct. This affirmation is made subject to the penalties of 18 PA C.S. 4904 relating to unsworn falsification to authorities.

Sworn to and subscribed before me
this _____ day of _____ 20 _____

_____
(Signature)

| TO BE COMPLETED BY ATTORNEY | TO BE COMPLETED BY PROTHONOTARY |
|---|---|
| Name Matthew Casey, Esquire<br>Address 1650 Market St., Ste. 3450, Philadelphia, PA 19103<br>Telephone Number 215-574-2000<br>Identification Number 84443<br>Represents:<br>☐ Plaintiff(s)<br>☐ Defendant(s)<br>☐ Other | |



77018

CASE ID: 131001095

# Office of the Sheriff



Shelley Ruhl
Real Estate Deputy

Matthew L. Owens
Solicitor

Jack Duignan
Chief Deputy

Michael W. Rinehart
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Jack Lotwick
Sheriff

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania** | : | PATRICK L. HENNESSY |
| | | VS |
| **County of Dauphin** | : | PAUL FRAVER |

Sheriff's Return
No. 2013-T-2852
OTHER COUNTY NO. 131001095

And now: OCTOBER 25, 2013 at 11:34:00 AM served the within COMPLAINT, INTERROGATORIES REQUEST FOR PROD OF DOC upon PAUL FRAVER by personally handing to JENNIFER FRAVER * true attested copies of the original COMPLAINT, INTERROGATORIES REQUEST FOR PROD OF DOC and making known to him/her the contents thereof at 122 WEST GRANADA AVENUE HERSHEY PA 17033

* WIFE OF DEFENDANT AND ADULT PERSON IN CHARGE AT TIME OF SERVICE.

Sworn and subscribed to
before me this 28TH day of October, 2013

So Answers,

Sheriff of Dauphin County, Pa.

By

Deputy Sheriff
Deputy: W CONWAY
Sheriff's Costs: $49.25 10/24/2013

**COMMONWEALTH OF PENNSYLVANIA**

NOTARIAL SEAL
Karen M. Hoffman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires August 17, 2014

77018

Case ID: 131001095